# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| THE DEMOCRATIC PARTY OF THE VIRGIN ISLANDS, EDGAR PHILLIPS, GLEN J. SMITH, LUIS MORALES, and KEVIN A. RODRIQUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> THE ST. THOMAS-ST. JOHN BOARD OF ELECTIONS, THE JOINT BOARD OF ELECTIONS, SENATOR MYRON D. JACKSON IN HIS CAPACITY AS PRESIDENT OF THE 32ND LEGISLATURE, THE 32ND LEGISLATURE OF THE VIRGIN ISLANDS, THE GOVERNMENT OF THE U.S. VIRGIN ISLANDS <br><br> Defendants. | ST-17-CV-44 <br><br> **ACTION FOR DECLARATORY JUDGMENT & INJUNCTIVE RELIEF** |

## MOTION TO DISMISS

**COMES NOW,** Kye Walker, Esq., of the Walker Legal Group, on behalf of the 32nd Legislature of the Virgin Islands and Myron D. Jackson, in his official capacity as President of the 32nd Legislature (collectively, "the Legislature"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and hereby moves to dismiss this action on the ground that it presents non-justiciable political questions.

In his most recent attack against the 32nd Legislature, Mr. Rodriquez and the other Plaintiffs do not question the Legislature's sole authority to judge the elections and qualifications of its members, but rather challenges the procedures the Legislature employed to judge his qualifications and seek to enjoin the swearing-in of the victor of the



**The Walker Legal Group**
16AB Church St.
2nd Floor
Christiansted, St. Croix
USVI 00820
Tel: 340-773-0601
Fax: 888-231-0601
kye@thewalkerlegalgroup.com

Special Election by having the Special Election declared null and void. The Plaintiffs further request an order forcing the Legislature "to go back" and determine Mr. Rodriquez's eligibility. In doing so, Plaintiffs misstate and misrepresent the applicable language of the Revised Organic Act to suit Mr. Rodriquez's mission to be seated as a member of the Legislature at any cost and repeats arguments previously addressed and dismissed by various courts, including this Court and the Third Circuit Court of Appeals thereby warranting sanctions for abusing the Court's process and engaging in frivolous and vexatious litigation. The Legislature cites the following points and authorities in support of this motion.

## STANDARD

The Legislature brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6). When deciding a motion to dismiss, the United States Supreme Court has held:

> [w]hile a complaint attacked by a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted)(*cited in Stotesbury v. Pirate Duck Adventure, LLC*, CIV. NO. 11-00018, 2011 WL 3843927, at *2 (D.V.I. August 30, 2011); *see also, Phillips County v. Allegheny*, 55 F.3d 224, 234 (3d Cir. 2008)(explaining that a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Similarly, in *Ashcroft v. Iqbal,* the Supreme Court held, ". . . a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009).

In *Iqbal*, the Supreme Court highlighted two guiding principles for courts to consider when faced with a Rule 12(b)(6) motion to dismiss. First, the courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. Second, a complaint will survive a motion to dismiss only if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. 556 U.S. at 679; *see also, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

### FRIVOLOUS, UNSUBSTANTIATED AND CONCLUSORY ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

As a matter of convenience and in an effort to dispel the numerous misstatements of law and misrepresentations of fact contained in the Amended Complaint, the Legislature addresses each misstatement and misrepresentation below:

- Virgin Islands law states that prior to being sworn in as a senator a candidate must be certified by the V.I. Board of Elections (or its progeny). *Amended Complaint*, at p. 1.

    **This is a misstatement of law**. In an opinion dated July 3, 2017, the Virgin Islands Supreme Court held that Janelle K. Sarauw "has a clear and indisputable right to have the special election certified" and explained as follows:

> [h]owever, there is no provision in the Revised Organic Act or the Virgin Islands Code that makes issuance of a certificate of election by the Board of Elections a prerequisite to the Legislature seating a member, that gives the Board of Elections the jurisdiction to determine whether a seat in the Legislature is vacant, or that gives the Board of Elections the authority to decide whether a special election is necessary. Rather, such authority is vested -to varying degrees- with the Legislative, Executive, and Judicial Branches of the Government of the Virgin Islands.

*In re: Janelle K. Sarauw*, S. Ct. Civ. No. 2017-0060, at p. 6-7 and ftnt. 3 (V.I. July 3, 2017).

- It is important to note that the Revised Organic Act states that a vacancy is determined by the Legislature . . . the Legislature NEVER declared a vacancy, and the Governor jumped the gun by proclaiming a Special Election on April 8, 2017 . . . [t]herefore, the Special Election was illegal under the Revised Organic Act . . . must be declared null and void, as it contravened the process prescribed in the Revised Organic Act of 1954. *Amended Complaint*, at p. 2.

**This is a misstatement of law**. Specifically, with regards to a vacancy in the Legislature, the Revised Organic Act provides:

> The Legislature of the Virgin Islands shall by law provide the procedure for filling any vacancy in the office of member of the legislature.

The ROA provides for the Legislature to ***determine the procedure*** for filling the vacancy, ***not to determine whether a vacancy exists***. Pursuant to the authority conferred by Congress through the ROA, the Legislature enacted a procedure codified in 2 V.I.C. § 111, which provides in relevant part:

> (a) If prior to the one year immediately preceding the date of the next general election, a vacancy occurs in the office of a member of the Legislature, **the Governor shall call a special election** in said district, or at large, as the case may be, within thirty (30) days following the day on which the vacancy occurs. Said special election shall be held no later than sixty (60) days after the call, and the person elected shall hold office for the remainder of the unexpired term of his predecessor.

(emphasis added). The procedure for filling a vacancy as enacted by the Legislature does not require the Legislature itself to declare the vacancy, but rather confers that authority on the Governor of the Virgin Islands.

- There is some controversy as to whether this Court declared that there was a vacancy, or whether this Court identified that a vacancy can be declared by the Legislature as a means of addressing the issue of seating Senator-Elect Kevin A. Rodriquez. *Amended Complaint*, at p. 2.

    **This is a misrepresentation of fact**. There is no controversy as this Court's language was clear:

    > [s]ignificantly, the vacancy of a member of the Legislature created by the attendant circumstances, is not without remedy. Indeed, the ROA contemplated that there might be vacancies. To remedy that occurrence, Section 6(h) of the ROA provides: **"The Legislature of the Virgin Islands shall be law provide the procedures for filling any vacancy in the office of member of the legislature."** ROA § 6(h). **The Virgin Islands Legislature did so.** The Virgin Islands Code provides that, where the next election is more than a year away, if "a vacancy occurs in the office of a member of the Legislature, the Governor shall call a special election . . . within 30 days following the day on which the vacancy occurs." 2 V.I.C. § 111. **It is entirely within the province of the <u>executive</u> to do so if he chooses**.

    (emphasis added). There is no confusion and there is no controversy concerning this Court's February 7, 2017 opinion regarding the Legislature's delegation of authority to the Governor ie. the executive to call a special election to fill a vacancy in the office of a member of the Legislature.

- As a matter of fact, the ROA does not provide for the swearing of a successful candidate from a Special Election, during the first twelve (12) month of a legislative term, to fill a vacancy that occurred *after* the Special Election was held. *Amended Complaint*, at p. 3.

    **This is a misrepresentation of fact**. The vacancy did not occur after the Special Election was held, but rather on January 9, 2017 when the Chief Justice of the Virgin Islands Supreme Court administered the oath of office to fourteen members leaving vacant the fifteenth seat. Tellingly, the Governor's proclamation calling for a special election stated that, "[w]hereas the call for a special election mandated under Virgin Islands law must be made no later than February 8, 2017." **Legislature's Exhibit "5"**. Thirty days prior to February 8, 2017 was January 9, 2017, the day the 32nd Legislature convened and when the fifteenth seat first became vacant. While the Governor may have waited for this Court's memorandum opinion to exercise his authority as it was in his province to do so, he exercised the authority delegated to him by the Legislature within thirty days of

the first day of the 32nd Legislature. In other words, this Court's opinion did not start the clock on the calling for a Special Election, but rather the day the seat first became vacant when Mr. Rodriquez was not administered the oath on January 9, 2017 triggered the 30 day deadline.

- Plaintiff, KEVIN A. RODRIQUEZ . . . was found to be a bona fide resident by the V.I. Superior Court for purposes of satisfying the residency requirements of the Revised Organic Act by this honorable court. *Amended Complaint*, at p. 4.

    **This is a manipulation of fact and law**. In a precedential memorandum opinion described by this Honorable Court as "well-reasoned", the Virgin Islands Supreme Court vacated the Superior Court's opinion and reinstated the preliminary injunction enjoining Mr. Rodriquez from taking the oath of office after concluding that Mr. Rodriquez was judicially estopped from asserting he was a *bona fide* resident of the Virgin Islands during the three (3) years preceding his election. *Sarauw, et. al. v. Fawkes, et. al.*, S. Ct. Civ. No. 2017-0005, 2017 WL 77123 (V.I. January 8, 2017); *see also, Rodriquez v. 32nd Legislature, et. al.*, Civ. No. 2017-003, at ftnt. 7 (D.V.I. February 7, 2017)(describing the Virgin Islands Supreme Court's opinion as well-reasoned) and *see also, In re: Janelle K. Sarauw*, at *1 (stating and reiterating, "[t]his Court, in a January 8, 2017 opinion issued in a different case, enjoined Kevin Rodriquez, one of the certified winners of the November 8, 2016 general election to determine the seven representatives of the District of St. Thomas/St. John in the 32nd Legislature, from taking the oath of office **because he did not meet the qualifications set forth in section 6 of the Revised Organic Act of 1954**.")(emphasis added).

- The Defendant 32nd Legislature never presented Plaintiff with a bill of charges or a resolution outlining what it concluded poses a threat to Plaintiff's eligibility . . . denied Plaintiff his due process rights to question these witnesses . . . and conducted a trial (hearing) against a non-member of the Legislature -a provision not allowed in the Revised Organic Act. Had the Legislature sworn Plaintiff in, then it would have been within the legal parameters of the Legislature to rule on his membership. This failure to follow precedent in the Mapp v. Lawaetz case, as well as the Revised Organic Act, operated to deprive Plaintiff of his constitutional right of due process. *Amended Complaint*, at p. 5-6.

    **This is a misstatement of law and misrepresentation of the language of the ROA and the Third Circuit's opinion in *Mapp v. Lawaetz*.** The ROA contains no express language requiring the swearing in of a senator-elect prior to determining his qualifications to serve in the legislature nor does Mr. Rodriquez have any due process rights as a senator-elect, much less a senator-elect who is ineligible to serve in the Legislature due to want of meeting the residency requirement. Moreover, the *Mapp v. Lawaetz* case does not support the Plaintiff's claims nor any of his arguments.

First, the facts and circumstances of the *Mapp* case is wholly inapposite to the current case as Mapp's "ineligibility to sit in the legislature **was not discovered until after he was sworn in and became an incumbent**." *Legislature of the Virgin Islands v. Mapp*, Civ. No. 1989-129, 1989 WL 53841, at *1 (D.V.I. May 10, 1989)(emphasis added). After Mapp was removed from the Legislature, he challenged his removal, which challenge was ultimately reviewed by the Third Circuit Court of Appeals. In finding that Mapp's challenge was non-justiciable, the Third Circuit explained in relevant part:

> [w]e hold that Powell and Bond are inapposite **because the 18th Legislature's determination that Mapp did not meet the Revised Organic Act's express conditions of eligibility for office necessarily implies that he had no entitlement which could trigger a due process claim** under Board of Regents v. Roth, 408 U.S. 564 (1972).

*Mapp*, 882 F.2d at 54. In *Board of Regents v. Roth*, the United States Supreme Court made clear that the Fourteenth Amendment's procedural protections is a safeguard of interests that a person ***has already acquired*** in a specific benefit. Those safeguards would include a statement of charges and a hearing.

In this instance, however, having not been administered the oath of office, Mr. Rodriquez was not a member of the Legislature, unlike Mapp, and therefore never acquired the due process benefits afforded an incumbent of the Legislature. In other words, Mr. Rodriquez was not entitled to the initial due process safeguards that were afforded Mapp. Moreover, once the 32nd Legislature determined Mr. Rodriquez was ineligible for office it became even more clear that there "**was no entitlement which could trigger a due process claim**." *Id*. (emphasis added). Mr. Rodriquez had no due process right to a statement of charges or a hearing affording him an opportunity to respond, much less the right to cross-examine witnesses, which far exceeds any minimal due process requirements for which he argues he was entitled. *Hannah v. Larcher*, 80 S.Ct. 1502 (1960)(reviewing the investigative function of executive, legislative and judicial bodies and reasoning, "[s]ince the requirements of due process frequently vary with the type of proceeding involved . . . a frequently used type of investigative agency is the legislative committee . . . the procedures adopted by legislative investigating committees have varied over the course of years. Yet, the history of these committees clearly demonstrates that only infrequently have witnesses appearing before congressional committees been afforded the procedural rights normally associated with an adjudicative proceeding. In the vast majority of instances, congressional committees have not given witnesses detailed notice or an opportunity to confront, cross-examine and call other witnesses."); *see also, Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)("prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceeding does not apply."); *Bogardus v. Maloney*, CIV. NO. 03-1173, 2004

WL 2091477, at *2 (E.D.Pa. September 16, 2004)(discussing due process in state employment context as requiring only "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case . . . [t]he minimum procedures include an 'opportunity to respond'").

In addition, there is no provision in the ROA that required Mr. Rodriquez first be sworn in so that he may present his credentials for membership in the Legislature. The authority granted to the Legislature to be the sole judges of the elections and qualifications of its members is broad and "[s]ince he does not question the legislature's sole power to determine whether he did meet those requirements, he fails to demonstrate, on this record, any unlawful taking of an interest which would entitle him to due process protection." *Mapp*, at 54.

Finally, while Mr. Rodriquez was not entitled to due process, the 32nd Legislature, in an abundance of caution and as a courtesy to Mr. Rodriguez, afforded him due process by giving him notice and an opportunity to be heard. It notified him it would meet on June 27, 2017 to consider his credentials and qualifications to be seated as a member, invited him to appear with his attorney or any other representative to testify and to invite any witnesses who could provide information about his qualification. **Legislature's Exhibit "9"**. The Legislature also allowed Mr. Rodriquez to offer documents to support his claim that he was qualified and notified him that it would take testimony relevant to the issue of his qualifications from other witnesses and the general public. *Id.* Mr. Rodriquez, through his counsel, acknowledged receipt of the notice of the meeting and indicated several witnesses would appear to testify in support of Mr. Rodriquez and his qualifications. **Legislature's Exhibit "10"**. During the hearing itself, Mr. Rodriquez was given the opportunity to respond to all witnesses who testified. **Legislature Exhibit "15"**. As such, he was provided notice and an opportunity to be heard, which are basic due process protections for which he was not necessarily entitled.

- This Court should "order the Legislature to go back and determine the eligibility of Plaintiff . . . ". *Amended Complaint*, at p. 7.

  **This Court has already addressed this request and declined to violate the separation of powers between co-equal branches of government**. In its memorandum of opinion of February 7, 2017, this Court explained in painstaking detail:

  > [e]ven if Rodriquez were a member of the 32nd Legislature, his claim to injunctive relief is problematic. Rodriquez asks this Court to command a coordinate, coequal branch of government to undertake a task – seating Rodriquez—that is entirely and exclusively within the 32nd Legislature's control. In essence, Rodriquez invites this Court to cross a line that separates the coordinate branches. The Court will decline that invitation.

## ANALYSIS

All of Plaintiff's claims are non-justiciable political questions. With regards to non-justiciable political questions, this Court explained:

> [w]hen undertaking a justiciability analysis, federal courts must make two determinations. First, a court must evaluate the "general criteria of justiciability" by determining "whether the claim presented and the relief sought are of the type which admit of judicial resolution." In other words, "the court must determine whether 'the duty asserted can be judicially identified and its breach judicially defined, and whether the protection for the right asserted can be judicially molded.'" Second, the court must determine "whether the structure of the . . . [g]overnment renders the issue presented a 'political question'- - that is, a question which is not justiciable in federal court because of the separation of powers provided by the Constitution."

*Rodriquez v. 32nd Legislature, et. al.*, Civ. No. 2017-3, Memorandum Opinion dated February 7, 2017, at p. 22. In the same opinion, this Court opined that seating Rodriquez and judging his qualifications is entirely within the control of the Legislature. *Id.*, at p. 40. The Court further opined that calling a special election is entirely within the province of the Governor. *Id.*, at p. 58. Likewise, the Third Circuit stated plainly, "[o]nly the 32nd Legislature may judge whether Rodriquez satisfies the requirements set forth in § 6(b), including the residency requirement, and is thereby qualified to serve as one of its members and whether to administer the oath and seat Rodriquez." *Rodriquez v. 32nd Legislature, et. al.*, No. 17-158, at p. 15.

Similarly, in *Mapp v. Lawaetz*, the Third Circuit held that Mapp's challenge to the method adopted by the Legislature to reach the decision to remove him was non-justiciable because it "would result in judicial interference in the legislature's conduct of its own internal affairs. Absent express constitutional command, we believe the judiciary

should be wary of such action. In this sense, Mapp's contentions are non-justiciable." 882 F.2d at 54.

The Plaintiffs fail to state a claim that survives the political question doctrine. In fact, they pursue claims already addressed by this Court, the Third Circuit and the Supreme Court of the Virgin Islands. While the procedural posture of the arguments have changed now that the Legislature found Mr. Rodriquez ineligible to serve in the Legislature, the issues of non-justiciability remain the same.

**WHEREFORE**, and for the foregoing reasons, the 32nd Legislature of the Virgin Islands and Senate President, Myron D. Jackson, respectfully requests the Amended Complaint be dismissed in its entirety and the Legislature be awarded attorney fees and costs associated with filing the instant motion.

Respectfully Submitted,

THE WALKER LEGAL GROUP
*Attorney for Defendants Senator Myron D. Jackson and The 32nd Legislature Of The Virgin Islands,*

DATED: July 11, 2017        BY:  *s/ Kye Walker*
Kye Walker, Esq.
VI Bar No. 995
2201 Church Street,
Suite #16AB, 2nd Floor
Christiansted, St. Croix
U.S. Virgin Islands 00820-4611
Telephone: (340) 773-0601
Fax: (888) 231-0601
Email:  kye@thewalkerlegalgroup.com

# CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on July 11, 2017, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

**The Democratic Party of the Virgin Islands**
P.O. Box 5577
St. Croix, VI 00823
Telephone: (202) 288-3142
Email: delegatedonna@yahoo.com
*PRO SE*

**Edgar Phillips**
P.O. Box 1653
St. Thomas, VI 00804
Telephone: (340) 473-6917
*PRO SE*

**Glen J. Smith**
P.O. Box 1653
St Thomas, VI 00804
Telephone: (340) 998-0525
*PRO SE*

**Luis Morales**
P.O. Box 1653
St Thomas, VI 00804
340-998-8596
*PRO SE*

**Kevin A Rodriquez**
Anna's Retreat 2D
St. Thomas, VI 00802
Telephone: (340) 473-9660
Email: Krod655@gmail.com
*PRO SE*

**Julita K. de Leon**
5600 Royal Dane Mall, Suite 203
P.O. Box 953
St. Thomas, VI 00804
Telephone: (340) 777-3340
Email: jdeleon@antilleslaw.com
*Counsel for The St. Thomas-St. John Board of Elections*

**The Joint Board of Elections**

**Government of the Virgin Islands**

BY: *s/ Kye Walker*