# EXHIBIT Y

**THIRTY-SECOND LEGISLATURE OF THE VIRGIN ISLANDS**

**OF THE UNITED STATES**

Charlotte Amalie, St. Thomas

Virgin Islands


\*   \*   \*


**REGULAR SESSION**

Part IV


June 27, 2017


Earle B. Ottley Legislative Hall

United States Virgin Islands


**SENATORS PRESENT:**

SENATOR MYRON D. JACKSON, PRESIDENT
SENATOR NEREIDA RIVERA-O'REILLY, VICE-PRESIDENT
SENATOR JEAN A. FORDE, SECRETARY
SENATOR NEVILLE A. JAMES, MAJORITY LEADER
SENATOR MARVIN A. BLYDEN
SENATOR DWAYNE M. DEGRAFF
SENATOR NOVELLE E. FRANCIS
SENATOR ALICIA "CHUCKY" HANSEN
SENATOR POSITIVE T. A. NELSON
SENATOR TREGENZA A. ROACH
SENATOR KEVIN A. RODRIQUEZ
SENATOR SAMMUEL SANES
SENATOR BRIAN A. SMITH
SENATOR KURT A. VIALET
SENATOR JANETTE MILLIN YOUNG

# I N D E X

**ITEM**                                                    **PAGE**

1.   Session reconvenes.........................   3

2.   Motion by Senator Hansen...................   4

3.   **Questioning by Senators:**

     Senator Sammuel Sanes.......................   8
     Senator Jean A. Forde.......................   15,22,37,102
     Senator Positive T. A.Nelson................   16
     Senator Brian A. Smith......................   24
     Senator Dwayne M. DeGraff...................   29
     Senator Novelle E. Francis, Jr..............   38
     Senator Nereida Rivera-O'Reilly.............   44,72,98,110
     Senator Janette Millin-Young................   49
     Senator Marvin A. Blyden....................   53
     Senator Alicia "Chucky" Hansen..............   60
     Senator Kurt A. Vialet......................   64
     Senator Tregenza A. Roach...................   76
     Senator Neville A. James....................   83
     Senator Myron D. Jackson....................   93

4.   Recess taken................................   119

1          **P-R-O-C-E-E-D-I-N-G-S:**

2                    *      *      *

3              (Regular Session rises into Committee of

4         the Whole.)

5              (The Committee of the Whole rises out of

6         recess.)

7         **SENATOR RIVERA-O'REILLY:**  Okay.  Colleagues,

8    let's settle down.  Settle down, colleagues.  I -- the

9    testifiers need to resume their seat.  Thank you.  I think

10   we are missing Mr. Morales and Attorney Jackson, and

11   Ms. Scipio.  Point of information, Senator -- Majority

12   Leader Senator James.

13        **SENATOR JAMES:**  Thank you very much Madam Chair.

14   I just wanted to correct a statement made with respect to

15   burden of proof.  There is no burden of proof here in the

16   Legislature.  I think that -- but that needs to be very

17   very clear.  We don't have the ability to arrest anybody

18   what have you.  There is no burden of proof.  If we make a

19   motion to request a public document what have you, at the

20   appropriate time an agency will make it available to us.

21   If they feel inclined to not make it available to us, they

22   will work through the Department of Justice to let us know

23   that we don't have the ability to get a particular

24   document for whatever -- there is no burden of proof when

25   you are requesting information.

1              Thank you very much, Madam Chair.

2              **SENATOR RIVERA-O'REILLY:**  You're welcome,

3    Senator James.  Motion, Senator Hansen.

4              **SENATOR HANSEN:**  Thank you.  My motion Madam

5    President is that upon the request of Mr. Rodriguez's or

6    Ms. Janelle Sarauw's tax return that each one of us, all

7    15 of us tax return be requested including my own, as well

8    the Governor of the Virgin Islands.

9              I so move.

10             **SENATOR MILLIN-YOUNG:**  Second.

11             **SENATOR RIVERA-O'REILLY:**  The motion -- is there

12   an objection to the motion?  There's an amendment to the

13   motion.  Amendment to the motion, Senator Vialet.

14             **SENATOR VIALET:**  Put for the past 20 years.

15             **SENATOR RIVERA-O'REILLY:**  Would you please make

16   the amendment on the record.  Microphone for Senator

17   Vialet.

18             **SENATOR VIALET:**  I so move that the amendment

19   made that we add on the terminology for the past 20 years.

20             I so move.

21             **SENATOR RIVERA-O'REILLY:**  Okay.  So we're going

22   -- so there is an -- yes it was second by Forde -- by

23   Senator Forde.  I'm sorry, Senator.  Okay.  So members, we

24   have an amendment to the motion.  It's been -- if there is

25   a sufficient second on the amendment to the motion and

1    there was an objection, roll call on the amendment to the

2    motion.

3              **MS. MAHONEY:**  Senator Blyden?  Senator Blyden?

4              **SENATOR BLYDEN:**  Yes.

5              **THE CLERK:**  Senator Blyden, yes.

6              Senator DeGraff?

7              **SENATOR DEGRAFF:**  No.

8              **THE CLERK:**  Senator DeGraff, no.

9              Senator Forde?

10             **SENATOR FORDE:**  No.

11             **THE CLERK:**  Senator Forde no.

12             Senator Francis, Jr.?

13             **SENATOR FRANCIS:**  No.

14             **THE CLERK:**  Senator Francis, Jr., no.

15             Senator Alicia "Chucky" Hansen?

16             **SENATOR HANSEN:**  Yes.

17             **THE CLERK:**  Yes.  Senator Hansen, yes.

18             Senator Jackson?

19             **SENATOR JACKSON:**  Yes.

20             **THE CLERK:**  Senator Jackson, yes.

21             Senator James?

22             **SENATOR JAMES:**  No.

23             **THE CLERK:**  Senator James, no.

24             Senator Millin-Young?

25             **SENATOR MILLIN-YOUNG:**  No.

1              **THE CLERK:**  Senator Millin-Young, no.

2         Senator Nelson?  Senator Nelson?

3         **SENATOR NELSON:**  No.

4         **THE CLERK:**  Senator Nelson, no.

5         Senator O'Reilly?

6         **SENATOR RIVERA-O'REILLY:**  Yes.

7         **THE CLERK:**  Senator O'Reilly, yes.

8         Senator Roach?  Senator Roach?  Senator Roach.

9   Not voting.

10        Senator Sanes?

11        **SENATOR SANES:**  Yes.

12        **THE CLERK:**  Senator Sanes, yes.

13        Senator Smith?

14        **SENATOR SMITH:**  No.

15        **THE CLERK:**  Senator Smith, no.

16        Senator Vialet?  Senator Vialet, not voting.

17        Mr. President, five yeas, seven nays, two not

18  voting.

19        **SENATOR RIVERA-O'REILLY:**  The amendment fail.

20  Now there is a motion on the floor with a sufficient

21  second and an objection.

22        Roll call on the motion.

23        **THE CLERK:**  Senator Blyden?  Senator Blyden, not

24  voting.

25        Senator DeGraff?  Senator DeGraff?

1          **SENATOR DEGRAFF:**  Yes.

2          **THE CLERK:**  Senator DeGraff, yes.

3          Senator Forde?

4          **SENATOR FORDE:**  No.

5          **THE CLERK:**  Senator Forde, no.

6          Senator Francis, Jr.?

7          **SENATOR FRANCIS:**  No.

8          **THE CLERK:**  Senator Francis, Jr., no.

9          Senator Alicia "Chucky" Hansen?

10         **SENATOR HANSEN:**  Yes.

11         **THE CLERK:**  Senator Hansen, yes.

12         Senator Jackson?

13         **SENATOR JACKSON:**  No.

14         **THE CLERK:**  Senator Jackson, no.

15         Senator James?

16         **SENATOR JAMES:**  No.

17         **THE CLERK:**  Senator James, no.

18         Senator Millin-Young?  Senator Millin-Young, not

19  voting.

20         Senator Nelson?

21         **SENATOR NELSON:**  Yes.

22         **THE CLERK:**  Senator Nelson, yes.

23         Senator O'Reilly?

24         **SENATOR RIVERA-O'REILLY:**  No.

25         **THE CLERK:**  Senator O'Reilly, no.

1          Senator Roach?  Senator Roach, not voting.

2          Senator Sanes?

3          **SENATOR SANES:**  No.

4          **THE CLERK:**  Senator Sanes, no.

5          Senator Smith?

6          **SENATOR SMITH:**  No.

7          **THE CLERK:**  Senator Smith, no.

8          Senator Vialet?

9          **SENATOR VIALET:**  No.

10         **THE CLERK:**  Senator Vialet, no.

11         Mr. President, three yeas, eight nays, two --

12 three not voting.

13         **SENATOR RIVERA-O'REILLY:**  Motion fails.  Okay.

14 We're going to be needing a new one of these today.  The

15 -- now we going to proceed with Senator Sanes, and his

16 five minutes.

17         **SENATOR SANES:**  Thank you Madam Chair and good

18 evening to everyone.  This is addressed to senator-elect

19 Rodriguez.  In the -- good evening first of all, sorry

20 about that.  Good evening.

21         **MR. RODRIGUEZ:**  Good evening, Senator.

22         **SENATOR RIVERA-O'REILLY:**  I'm sorry.  I'm sorry.

23 Please hold the senator's time increase.  We will increase

24 the time to seven.  If you don't need all seven then you

25 may return it to the Chair.

1            **SENATOR SANES:**  Thank you.

2            **SENATOR RIVERA-O'REILLY:**  Please start the

3    senator's time.

4            **SENATOR SANES:**  Once again this is to Mr.

5    Rodriguez, senator-elect Rodriguez.  In the bankruptcy

6    petition that you filled out, how was it filled out?  Did

7    you verbally give the information to the paralegal or did

8    you fill it out on your own?

9            **MR. RODRIGUEZ:**  No.  I didn't fill out on my

10   own.

11           **SENATOR SANES:**  Who filled it out?

12           **MR. RODRIGUEZ:**  It was filled out by the

13   paralegal.

14           **SENATOR SANES:**  Base on what documents?

15           **MR. RODRIGUEZ:**  The documents we provided to

16   them were our proof of income and also debt, and that was

17   the only information I gave them.

18           **SENATOR SANES:**  So where did they get -- so you

19   assumed that they saw the address Indian Summer Drive and

20   that's -- you assumed that that's what they put down,

21   because they thought you were living there?

22           **MR. RODRIGUEZ:**  Yes.

23           **SENATOR SANES:**  And did they asked you then the

24   question during the last three years have you lived

25   anywhere other than where you live now?  Did they ask you

1  that or they just filled it out on their own?

2          MR. RODRIGUEZ:  No.  They never asked me that

3  question.

4          SENATOR SANES:  So they filled it out on their

5  own?  They assumed once again?

6          MR. RODRIGUEZ:  That's correct.

7          SENATOR SANES:  What's the name of this law firm

8  so I wouldn't be able to use it?  Just kidding.

9          So this was filled out.  When did you detect

10  this mistake?

11          MR. RODRIGUEZ:  Actually when it was -- when I

12  heard the objection to my candidacy.

13          SENATOR SANES:  Did you receive any type of

14  damages --

15          MR. RODRIGUEZ:  Pardon me?

16          SENATOR SANES:  Did you receive any type of

17  damages from this -- from this procedure?  Any

18  compensation any -- what was the result of this

19  bankruptcy?

20          MR. RODRIGUEZ:  Well, our first option was to

21  file the bankruptcy to stop the eviction.  And then in

22  tandem as part of the bankruptcy, not a separate

23  proceeding, as part of the bankruptcy we were able to

24  negotiate and settle with the extension of staying in the

25  home for an additional six months.

1           **SENATOR SANES:**  So the compensation was only six

2   months stay in your home?

3           **MR. RODRIGUEZ:**  And attorney fees, yes.

4           **SENATOR SANES:**  And attorney fees.

5           **MR. RODRIGUEZ:**  Yes.

6           **SENATOR SANES:**  So you were compensated for

7   attorneys fees?

8           **MR. RODRIGUEZ:**  Well, no.  Well, they ain't

9   compensate me.  They paid the attorney.

10          **SENATOR SANES:**  Okay.  So what would have

11  happened if the answer instead of 4956 Indian Summer Drive

12  would have read Anna's Retreat?  Would this would have

13  moved forward to your knowledge?

14          **MR. RODRIGUEZ:**  Yes, because the attorney was

15  aware that I was living in the Virgin Islands.

16          **SENATOR SANES:**  So it didn't matter what address

17  was there it would have still moved forward?

18          **MR. RODRIGUEZ:**  To my knowledge.

19          **SENATOR SANES:**  Okay, to your knowledge.  We

20  don't have the bankruptcy expert here.  So the attorney --

21  do you think this would have move forward if the address

22  would have been the St. Thomas address?

23          **MR. JACKSON:**  There are a number of ways you can

24  file bankruptcy.  One of which is to state that your

25  residency, the other is which is to say your main asset

1   that you're trying to protect in the bankruptcy is that

2   address.

3           **SENATOR SANES:**  In this case if Anna's Retreat

4   address would have been submitted here, would it have move

5   forward?

6           **MR. JACKSON:**  It would move have forward because

7   you would have filed it differently.  You would have said

8   that in effect the asset we're trying to protect is the

9   Tennessee asset.  Irrespective of where you live, if the

10  asset you're trying to protect is in Tennessee that's

11  another basis for filing the bankruptcy.

12          **SENATOR SANES:**  So the main issue here is not

13  the address per se.  Well, it is part of it.  But the main

14  issue here is that during the last three years, have you

15  live anywhere other than where you live now, and the

16  answer is no.  Is that the damaging factor in this

17  document?

18          **MR. JACKSON:**  We submit no because he could have

19  filed it saying that the asset, the main asset we're

20  trying to protect is the Tennessee address.

21          **SENATOR SANES:**  But as we read this right now,

22  regardless of whether it was filed wrong or not.  If we

23  read this right now what this document states is that

24  during the last three years, you have not lived anywhere

25  other than where you have lived now.  In other words,

1   during the last three years you have lived in 4956 Indian

2   Summer Drive as per this document as it stands.

3   Irregardless -- regardless if there was a mistake.

4            MR. JACKSON:  Sure.  If there's ever a mistake

5   determining your bankruptcy filing, you have the right to

6   amend your bankruptcy petition to correct it.  What I'm

7   also saying is you didn't have to file that bankruptcy

8   with respect to saying that you were living there.

9            SENATOR SANES:  Attorney, no.  I understand

10  that.

11           MR. JACKSON:  Okay.  I'm sorry.

12           SENATOR SANES:  My question to you as it stands

13  regardless of whether it was a mistake or not, as it

14  stands when you read this document it state that

15  senator-elect Rodriguez lived in 4956 Indian Summer Drive

16  for the past three years, as it stand.

17           Okay.  In the other document that we received,

18  the document and I want to make sure that I get it right.

19  In the document Kevin Rodriguez, debtor -- Kevin

20  Rodriguez, the Plaintiff vs. Nation Star Mortgage.  It

21  also state that, and I'm going to read it.  This is

22  Document 5 of 12.  It says here "Venue is proper in this

23  district, because the asking transactions occurred here.

24  Plaintiff resides here and defendant transact business

25  here.  Parties involved Plaintiff, Kevin Rodriguez, is a

1  citizen and resident of Davidson County, Tennessee --

2          MS. WARNER:  One minute thirty seconds.

3          SENATOR SANES:  -- here and after referred to as

4  the plaintiff."  And this was I assume filled out by Keith

5  Slocum, is that correct?

6          MR. RODRIGUEZ:  That's correct.

7          SENATOR SANES:  Is that your attorney?

8          MR. RODRIGUEZ:  Yes.

9          SENATOR SANES:  So was that another mistake or

10 was this a factual information in this document?

11         MR. RODRIGUEZ:  It was another mistake because I

12 was not -- I was living in St. Thomas communicating with

13 him.  And so he said we're going to move ahead with the

14 petition, and he filed it.

15         SENATOR SANES:  So not to doubt your word, but

16 you're saying that the mortgage company made a mistake in

17 this document, and an attorney made a mistake in this

18 other document?

19         MR. RODRIGUEZ:  Well, I believe because it was

20 the same lawsuit they probably -- they may have used the

21 same information that they did in the original, because

22 it's just a continuation.  It's not two separate filings.

23         SENATOR SANES:  But we talking about two

24 different entities though.  We talking a mortgage -- a

25 mortgage company --

1          **THE TIMEKEEPER:**  Thirty seconds.

2          **SENATOR SANES:**  -- is that correct and a single

3     attorney Keith D. Slocum.

4          **MR. RODRIGUEZ:**  With the filing of the

5     bankruptcy.

6          **SENATOR SANES:**  Did you get a chance to review

7     this?

8          **MR. RODRIGUEZ:**  I just reviewed it.  I probably

9     just reviewed it and signed it.

10          **SENATOR SANES:**  Okay.  I want to thank you and

11     the testifiers for your time.  Thank you Mr. Chair.  I

12     didn't see the change.

13          **SENATOR FORDE:**  Thank you Senator Sanes.  And if

14     I can just follow through on his question.  Having

15     recognized that a mistake had occurred, have you taken any

16     steps to make corrections to these documents?

17          **MR. RODRIGUEZ:**  It has been dismissed.  That was

18     one of the discussions that I had with the attorney.  I

19     contacted him when I realized and I only found out that

20     that was in effect when you hear it all over the Virgin

21     Islands.  As a matter of fact, I called my wife and I

22     asked her that question, do you remember.  She said no

23     they never asked us that question.  And so I called them

24     up and said can we amend.  He said no.  There's no reason

25     to amend because everything has been dismissed.  So you

 1   can't amend something that has been dismissed.

 2         **SENATOR FORDE:**  Senator Nelson, you're

 3   recognized for your minutes.

 4         **SENATOR NELSON:**  Mr. Chair, thank you very much.

 5   Good evening to everyone.

 6         **THE TESTIFIERS:**  Good evening.

 7         **SENATOR NELSON:**  I still maintain that the

 8   precedence that we are setting relative to calling for

 9   individual's tax returns from this body is a bad

10   precedence, and I'm quite certain it's going to come and

11   haunt us one day.

12         Mr. Rodriguez, did you lie on federal document?

13         **MR. RODRIGUEZ:**  No.

14         **SENATOR NELSON:**  Okay.  You say someone saw the

15   filings and told an anonymous person.  Is that anonymous

16   person Ms. Moses you believe?

17         **MR. RODRIGUEZ:**  There's reason to believe.

18         **SENATOR NELSON:**  Okay.  Did you file a case

19   against Ms. Moses --

20         **MR. RODRIGUEZ:**  No.

21         **SENATOR NELSON:**  -- before?

22         **MR. RODRIGUEZ:**  No.

23         **SENATOR NELSON:**  Previously?  The bump that you

24   all had was relative to this backdating of these

25   agreements --

1          **MR. RODRIGUEZ:**  Well, there were several issues.

2          **SENATOR NELSON:**  Okay.  So you all had some

3     issues.

4          **MR. RODRIGUEZ:**  Yes.

5          **SENATOR NELSON:**  So do you believe that it might

6     have been in retaliation that this was done?

7          **MR. RODRIGUEZ:**  That's absolutely correct.

8          **SENATOR NELSON:**  Let me ask you a question.

9     Were you born in St. Thomas?

10         **MR. RODRIGUEZ:**  Yes.

11         **SENATOR NELSON:**  You know, I am sitting here all

12    day and even previous to today, and I wasn't born here.

13    Okay, I was born in St. Kitts.  I'm a naturalized citizen,

14    yes.  But I'm sitting here all day and I'm, you know, in

15    the past few weeks and mulling over this whole residency

16    issue.  And when you think about a native son going off

17    and coming back and have to go through this residency

18    claim that's BS, and all of us know it.  That's an old law

19    that needs to change.  What the amendment to this law

20    should say unless you're a native born, okay.

21         We got to be courageous enough to change things.

22    Not arguing about things 30, 40, 50 years old and not

23    doing anything about it, and that's what I'm telling you

24    all.  We have to have the courage to do something

25    different.  But, anyway, that's the issue in front of us.

1   But I feel it's unfortunate that someone who is born here

2   have to be subjected to this.  I mean we go away --

3   suppose he was out of college, went straight to college --

4   you know, sometime around here politically they try to

5   kill you so you have to go someplace else to earn a

6   living, and when the administration change you come back

7   to it.  You all know that.  You know we had a very

8   vindictive administration in the past.  Shucks this one

9   ain't too bad either as far as the vindictiveness.  You

10  all know how it is.  So sometimes unfortunately we have to

11  go someplace in order to get to eat, all right, to live.

12        So if a native born person go off island to live

13  and figure you know what I going back home to make a

14  difference should they be prevented?  To me the electorate

15  has the say so.  If the electorate feel if the person

16  wasn't here long enough, they could determine that.  But

17  all of this stuff I tell there's more in the mortar than

18  the pestle, and we don't want to admit it.

19        You know, yes, the senator, the Finance Chair,

20  is going to get up and talk this and all this defense, but

21  let's admit the truth of the matter.  It's a Democrat

22  who's a member of the Board who actually did this.  Okay,

23  nobody want to talk about that.  So what's up with all of

24  that?  Since you all want to act so clean and prim and

25  proper Democrats except for Senator Millin-Young.  She's a

1    good one.  That's a good one.  You know that one was

2    coming, right.  So I want you all to really think about

3    what's really going on, and I'm hoping that members of the

4    Party are ready to go clean and clean this thing up,

5    because it's a mess.

6            For years you could push Glen Smith, but, you

7    know, I ain't afraid to tell you all it's mess, and it

8    need to be clean.  And before you all keep trying to

9    recruit people just to have numbers in this big old messed

10   up pool, I think you all should try to clean it up, and

11   value people when you bring them and not want to have

12   puppets.  I'll tell you all of them talk about the Party

13   and the Party bosses, but out here everybody going to act

14   like they're chum buddy holding hands.  I've been here for

15   13 years, and I've heard a lot of conversation about all

16   you all Party bosses from them, from Democrats, because

17   you know I don't be in your meetings.  So how would I

18   know?  But they aren't brave enough to do something

19   different.  Come in here trying to recruit me, ayo mad?

20           So I want to say this Ms. Rodriguez it is

21   commendable that even though you all had your falling out,

22   and, you know, dispute that despite all of have that, two

23   things I heard here.  He came to your aid and your coming

24   to his.  That's like a love story, you know, and I'm

25   hopeful that -- you know, as the children are watching

1    that I'm hopeful that you all could find -- and this is

2    not on the subject matter, and I might be out of place in

3    saying this.  I don't know you all business.  But I'm

4    hopeful that through all of this that you all can kind of

5    find your way, you know, even if not for your own sake for

6    the children's sake.  You know something I think mystical

7    is happening.  God is in the midst of things, and

8    sometimes He puts us through certain hardships so that we

9    could find our way.  So that -- that was commendable.  You

10   touched me when I heard you're here on your husband's

11   behalf.  To heck with what happened, okay, and that's

12   good.

13          Mr. Rodriguez, listen I feel strongly that I

14   said it before and I am going to say again.  This

15   Legislature owes you whether they seat you or not, they

16   owe you from January.  And I believe if there's going to

17   be the case that Ms. Sarauw is not going to be seated that

18   somebody should reimburse her for that special election

19   that she ran in.  We can't just do things and cost people

20   and feel like it's okay.  Okay, I'm a principle person,

21   because we in control of power here, you this high handed

22   stuff we going on the person who was sitting as chair, I

23   hope you all watching this, and I hope the public is

24   watching this.  You seeing people in power and you see

25   them abusing power.

1            **THE TIMEKEEPER:**  One minute thirty seconds.

2            **SENATOR NELSON:**  The same person that used to

3    complain the most about abuse of power, now that they have

4    power in their hand they're abusing it.  You watching the

5    snobbishness going on all day.  And we're expected to just

6    sit through this to be calm and be cool.  Well, it's not

7    cool; it's not all right.  I've been elected, duly elected

8    seven times.  But you all going to sit here and just

9    disrespect the process.  And I thought that it was

10   unfortunate that when my colleague try to speak up on

11   behalf of the body, that a member of the Majority going to

12   first response, immediate response is look out for

13   yourself not the body.  Well no.  Your Majority Leader

14   would tell you that we had training that says that we're

15   part of a body that is bigger than any one of us.  And all

16   of us are stained by what's not done or done inside here.

17   So it's best that we try to look out in it, because we all

18   on this boat.

19            So Mr. Rodriguez I don't know what's going to be

20   the fate of this night, but in the election process the

21   people of St. Thomas have elected you.  The issues

22   relative to the residency issues as far as the court

23   concern they didn't raise it up.  They dismissed that,

24   and, you know, we're willing to move -- I'm willing to

25   forward whatever that is.

1          **THE TIMEKEEPER:**  Thirty seconds.

2          **SENATOR NELSON:**  But I believe putting you

3     through this, requesting of the taxes all that stuff, I

4     think you said yes because you felt that you had to

5     comply.  And I would have done something different,

6     because none of them as you heard want their taxes to be

7     seen, all right.  So I don't know why they asking you

8     that.

9          So again, Mr. And Mrs. Rodriguez, attorneys I

10    don't have no questions for you all except that I'm

11    hopeful that -- for Mr. Morales I'm hopeful that you all

12    can do something different about this Democratic party,

13    because you all been in control here for about 40

14    something years.  So I could directly blame the Democratic

15    Party for the conditions of the Virgin Islands.  So I'm

16    hopeful that the young Democrats led by Senator

17    Millin-Young and the others who want to do something

18    different, are willing to step forward to do something

19    different.

20          **THE TIMEKEEPER:**  Time.

21          **SENATOR NELSON:**  You all say you all are the

22    young Democrats, start to act like you all have innovation

23    in your blood.  Thank you very much.

24          **SENATOR FORDE:**  Thank you Senator Nelson.

25    You're one step closer to being a Democrat.  I

1   congratulate you.  First of all -- just a minute.

2   Attorney Jackson, let me for clarification, is it your

3   understanding of what was requested of Mr. Rodriguez was

4   his tax returns or is it just an update of the filing of

5   taxes?

6          **MR. JACKSON:**  My understanding it was a request

7   for the tax returns, but we would have no problem with

8   providing this body with proof that the taxes were in fact

9   filed.  Just like the letter that was read said that they

10  did not have copies of some of the years, the same IRB

11  could give a letter that say yes we have the tax returns

12  for those three years.

13         **SENATOR FORDE:**  Right.  Because I was of the

14  understanding that that's what was requested --

15         **MR. JACKSON:**  I misunderstood then.

16         **SENATOR FORDE:**  -- in reference to those

17  letters.

18         **MR. JACKSON:**  We certainly have no problem with

19  producing the letter that says that his taxes were in fact

20  filed here in the Virgin Islands.  We do have a little

21  issue with filing -- with providing you with the actual

22  tax returns.  What we did do, I should submit it, in

23  senator-elect Rodriguez's exhibits, we did provide this

24  body with those tax returns.  However, we redacted them

25  before we submitted them.  There's certain personal

1   information that we choose not to provide, but the fact

2   that he filed them here we of course want this body to

3   have that evidence because it proves one aspect -- that's

4   one element of proving that he's resident here where he

5   filed his tax returns.

6          **SENATOR FORDE:**  Very well.  Senator Smith,

7   you're recognized for your minutes.

8          **SENATOR SMITH:**  Thank you very much, Mr.

9   Chairman.  I want to say good afternoon again to the

10  testifiers, the viewing and listening audience.

11         **THE TESTIFIERS:**  Good afternoon.  Good evening.

12         **SENATOR SMITH:**  Ms. Scipio, please give me a

13  little bit of background information regarding Mr.

14  Rodriguez's character to the best of your knowledge.

15         **MS. PENN-SCIPIO:**  To the best of my knowledge

16  Mr. Rodriguez --

17         **SENATOR FORDE:**  If you can speak into the mic

18  please.  Come a little closer to it.

19         **MS. PENN-SCIPIO:**  What can I say.  He's a

20  honorable man, hard working, family man.

21         **SENATOR FORDE:**  Look straight ahead, Ms. Scipio.

22  Thank you.

23         **SENATOR SMITH:**  Have you every known him to like

24  try to cut corners or try to beat somebody out or try to

25  get ahead in the wrong way?

1              MS. PENN-SCIPIO:  Not to my knowledge.

2              SENATOR SMITH:  Not to your knowledge.  Thank

3   you very much.  Mr. Morales, how long have you known Mr.

4   Rodriguez?

5              MR. MORALES:  Most of he life.

6              SENATOR SMITH:  Okay.  Most of his life, okay.

7   Tell me what -- describe to me what kind of person he is

8   as far as character.

9              MR. MORALES:  I think Mr. Rodriguez have an

10  outstanding character.

11             SENATOR SMITH:  So to the best of your

12  knowledge, you don't think he'll cut corners or

13  deliberately try to do something to get ahead?

14             MR. MORALES:  No.  Mr. Rodriguez have showed me

15  that he's a hard worker, and he works hard for what he

16  wants.

17             SENATOR SMITH:  I want to ask Mr. Jackson.  Even

18  though you're his attorney, over the course of these few

19  months, these several months, what kind of person you

20  think you've met before you, because you have been doing

21  this thing a while so you got to understanding of

22  judgement and character.  Tell me what kind of person he

23  is?

24             MR. JACKSON:  Upstanding, a person of high moral

25  character, intelligent, hard working, committed.

1    **SENATOR SMITH:**  Okay.  To the best of your

2    understanding, have he ever come across like scheming or

3    trying to give you a six for a nine or trick you?

4        **MR. JACKSON:**  Not to me and I've never heard

5    that about him.

6        **SENATOR SMITH:**  Okay.  Ms. Rodriguez, do the

7    same thing for me please.

8        **MS. RODRIGUEZ:**  I've known Kevin for a little

9    over 13 years now, and I've never know him to cut corners.

10   If it's wrong, it's wrong.  If it's right, it's right.

11   Wherever the chips fall, that's where they fall, but he's

12   always, always on the side of doing the right thing

13   regardless of what that means for those involved.

14       **SENATOR SMITH:**  Okay.  Mr. Rodriguez, tell me do

15   you know if any criminal complaint have been filed against

16   you in Tennessee or is going to be filed against you in

17   Tennessee, or any indictment regarding any possible

18   criminal conduct in the State of Tennessee?

19       **MR. RODRIGUEZ:**  No, because what I did was not

20   illegal.

21       **SENATOR SMITH:**  Okay.  Through the Chair to

22   Attorney Tharpes, we keep easing this word judicial

23   estoppel.  And in this environment right here as we in

24   right now, I want to put it on the record.  I could

25   careless about the word "judicial estoppel", because we

1  are in the Legislature.  If we keep using -- where do we

2  use this jargon judicial estoppel?  Where do we use it?

3  Where is it used?

4         **SENATOR FORDE:**   Through the Chair to Attorney

5  Tharpes.

6         **SENATOR SMITH:**  Please.  Sorry about that Mr.

7  Chair.

8         **ATTORNEY THARPES:**  Through the Chair to Senator

9  Smith, it is used in most jurisdictions within the courts.

10  Some administrative agencies also employ the doctrine.

11         **SENATOR SMITH:**  Okay.  Would that doctrine ever

12  be used inside the Legislature?

13         **ATTORNEY THARPES:**  Well, I suppose if the

14  Legislature would adopt rules, our rules don't use it nor

15  our back up default rules, Mason's Manual of Legislative

16  Procedure, is not there.  With respect to 6(b) and 6(g),

17  the Legislature should look at the actual qualifications

18  rather than a legal fiction that does not get the purpose

19  of judicial estoppel is not to ascertain the facts.

20         **SENATOR SMITH:**  Okay.  So through the Chair,

21  tell me are the six criteria under the Revise Organic Act

22  are those the litmus test that must be tested to see if

23  this guys fits the criteria to be a Virgin Islands

24  senator, those six criteria.  Please go ahead.

25         **ATTORNEY THARPES:**  Through the Chair, those are

1    the only criteria and of course followed up by taking an

2    oath, and courts have ruled that you can't, especially if

3    this is a federal statute, you cannot add any other

4    additional qualifications to it.

5              **SENATOR SMITH:**  Okay.  Thank you.

6              **THE TIMEKEEPER:**  One minute thirty seconds.

7              **SENATOR SMITH:**  You know, we might argue back

8    and forth, and try to point fingers and blame.  But I

9    don't believe in pointing fingers or blaming anyone in

10   saying that we could have sworn in Rodriguez or

11   senator-elect Mr. Rodriguez back in January when the

12   Supreme Court bounce it back and say hey take control of

13   this case and move forward.  I don't want to pass the

14   blame on that.  I don't want to create an autopsy and go

15   backwards.  All I want to think about now is how can we

16   make what was possibility wrong right.  That's all I care

17   about.  How can we do what was possibility wrong to

18   somebody who have served, and we've listened to all these

19   testimony.  I hadn't heard one bad character witness or

20   one person say that Rodriguez personally was living in

21   Tennessee.  No, I'm not going to go back and say from

22   February 7th of this year when the District Court

23   dissolved -- dismissed those charges against Rodriguez we

24   could have sworn him in.

25             **THE TIMEKEEPER:**  Thirty seconds.

1     **SENATOR SMITH:**  I'm not going to go back on

2    that.  But it's food for thought.  Could this man here be

3    sworn in back in January?  Could this man here have been

4    sworn in February after the District Court handled it?

5    But now we're here on a third -- third swing, a third

6    swing at the ball we have to make sure that we weigh

7    everything and not use terminology that's used in

8    courts --

9           **THE TIMEKEEPER:**  Time.

10          **SENATOR SMITH:**  -- to make a stance here.  Let's

11   look at the facts.  The man is in our hands.  Let's do the

12   right thing.  Thank you Mr. Chair.

13          **SENATOR FORDE:**   Thank you, Senator Smith.

14          Senator DeGraff, you're recognized for your

15   seven minutes.

16          **SENATOR DEGRAFF:**  Yes, good evening to everyone.

17   The one fault I have with you but it really not here or

18   there is you stated you read a couple documents and signed

19   them, and in this new position if you end up sitting down

20   over there is don't make that mistake no more.  End it

21   now.

22          **MR. RODRIGUEZ:**  Lesson learned.

23          **SENATOR DEGRAFF:**  So if you take any advice from

24   me that's the advice I'm going to give you.  Now, I'm only

25   going to address the issues that we should be addressing

1   under the Revised Organic Act 6(b) under residency.

2   You've passed all the other test unless you ain't over 21,

3   but you said you're over.  So you pass all the other test.

4         Now, I don't want your attorney advising you.

5   I'm ask you -- I want to you ask a direct question or

6   direct questions.  And it's basically number one in

7   regards to residency is you're going to have to prove to

8   the individuals that you're a resident.  Can you provide

9   documentation to show your travels and back and forth and

10  different things through request to the airlines to show

11  when you traveled to Tennessee from time you stated in

12  2013 when you came home and traveled back.  Can you

13  provide that information?  I know you don't have it, but

14  is it something that you could check into?

15        **MR. RODRIGUEZ:**  I would have to check because

16  sometimes I may travel on a pass.  So it varies.  So I

17  don't know if I can give you full accurate information.

18        **SENATOR DEGRAFF:**  Okay.  I was told you have a

19  driver's license in Tennessee?

20        **MR. RODRIGUEZ:**  No.  Well, I had a driver's

21  license -- I have Virgin Islands driver's license.

22        **SENATOR DEGRAFF:**  Do you have a Tennessee

23  driver's license?

24        **MR. RODRIGUEZ:**  No, I don't have a Tennessee

25  driver's license.

1              **SENATOR DEGRAFF:**  Okay.  Were you a member of a

2    car pooling entity or anything in Tennessee that you took

3    part in in Tennessee?

4              **MR. RODRIGUEZ:**  No.

5              **SENATOR DEGRAFF:**  Prior to 2013?

6              **MR. RODRIGUEZ:**  No.

7              **SENATOR DEGRAFF:**  Okay, good.

8              **MR. RODRIGUEZ:**  I had a car in Tennessee at one

9    time.

10             **SENATOR DEGRAFF:**  You had a car, okay.  Now

11   we're going from 2013, '13, '14, '15, are the three years

12   prior to election?

13             **MR. RODRIGUEZ:**  Yes.

14             **SENATOR DEGRAFF:**  2013 you came home from where?

15             **MR. RODRIGUEZ:**  January 5th from Nashville,

16   Tennessee?

17             **SENATOR DEGRAFF:**  Good.  January 5th you came

18   home --

19             **MR. RODRIGUEZ:**  Yes.

20             **SENATOR DEGRAFF:**  -- from Nashville, Tennessee.

21   You were living in Tennessee prior to 2013?

22             **MR. RODRIGUEZ:**  Yes.

23             **SENATOR DEGRAFF:**  For how long?

24             **MR. RODRIGUEZ:**  I went there right after the

25   administration turned so that's like 2007 or 8?  Seven,

1   yeah until --

2           SENATOR DEGRAFF:  So you were a resident of

3   Tennessee?

4           MR. RODRIGUEZ:  No.  I lived in Nashville,

5   Tennessee.

6           SENATOR DEGRAFF:  You lived.

7           MR. RODRIGUEZ:  Yes.  I reside there.

8           SENATOR DEGRAFF:  You were a resident of

9   Nashville -- of Tennessee at that time?

10          MR. RODRIGUEZ:  Well, I can't tell you if it's

11  resident.  I know live there.  I purchased a house there.

12  That's the only thing I can --

13          SENATOR DEGRAFF:  Did you paid taxes between

14  that time and 2013 before you came home?

15          MR. RODRIGUEZ:  That's correct, yes.

16          SENATOR DEGRAFF:  Okay.  So have you paid any

17  Tennessee taxes since 2013?

18          MR. RODRIGUEZ:  No.

19          SENATOR DEGRAFF:  Okay.  So the taxes that were

20  claimed that you paid all your taxes in 2016.  Clarify

21  that for me please?

22          MR. RODRIGUEZ:  Well, as a result -- as a

23  condition of the bankruptcy you had to provide all your

24  tax filing in order for them to file a bankruptcy.  And at

25  which time I know the statutory requirement is three years

1   you can -- you have within the three-year leeway.  So what

2   I did is I went ahead, I was told these are the things

3   that you need to bring.  So I went ahead and filed my

4   taxes January 25th of 2016.

5          SENATOR DEGRAFF:  You filed 2013, '14, '15 taxes

6   in '16 --

7          MR. RODRIGUEZ:  That's correct.

8          SENATOR DEGRAFF:  -- or you said you were filing

9   them before?

10          MR. RODRIGUEZ:  No, no.  I filed them all

11   together.

12          SENATOR DEGRAFF:  Okay.  So clarify that again

13   for me, because if you didn't file your taxes for 2013,

14   '14, and '15, it gives credence to make a reasonable

15   person think well hey you weren't home for that time.  You

16   paid your taxes in Tennessee up until what year?

17          MR. RODRIGUEZ:  It would be 2012.

18          SENATOR DEGRAFF:  Twelve.  Okay, good.  So then

19   from '13, '14, '15, you didn't pay your Virgin Islands

20   taxes.  Why?

21          MR. RODRIGUEZ:  Why?  I mean statutory it's a

22   three-year requirement.

23          SENATOR DEGRAFF:  In those years?

24          MR. RODRIGUEZ:  I was a contractual employee.

25   But statutorily I can my pay taxes within a three-year

1  period.  That's by law.

2         SENATOR DEGRAFF:  By law?

3         MR. RODRIGUEZ:  Yes.

4         SENATOR DEGRAFF:  Okay.  So you're within the

5  law to pay your taxes every three years.

6         MR. RODRIGUEZ:  To file my taxes.  No.  I filed

7  my taxes during that period.

8         SENATOR DEGRAFF:  Right.  So you paid them 2016

9  those three years --

10         MR. RODRIGUEZ:  File my taxes.

11         SENATOR DEGRAFF:  -- 2019 you could pay '16,

12  '17, '18.

13         MR. RODRIGUEZ:  Well, I don't know.  But I mean

14  during that time --

15         SENATOR DEGRAFF:  No, you said by law.  If it's

16  by law that's what stands.  If it's by law --

17         MR. RODRIGUEZ:  Yes.

18         SENATOR DEGRAFF:  -- you're entitled to let

19  three year pass and then you pay three years is what your

20  saying based on what I'm understanding.

21         MR. RODRIGUEZ:  Yes, I didn't file my taxes at

22  that time.  And so that was one of the requirements that

23  was asked of me that I needed to produce my taxes.  And so

24  what I did is I completed the filing of my taxes and

25  produced them to the attorney.

1              **THE TIMEKEEPER:**  One minute thirty seconds.

2              **SENATOR DEGRAFF:**  Okay.  So that wasn't anything

3     shady?

4              **MR. RODRIGUEZ:**  No.

5              **SENATOR DEGRAFF:**  By law.

6              **MR. RODRIGUEZ:**  No.

7              **SENATOR DEGRAFF:**  What law governs that?

8              **MR. RODRIGUEZ:**  The federal law governs you can

9     file -- you have a three-year requirement to file your

10    taxes.  That's a federal law.

11             **SENATOR DEGRAFF:**  Okay.  I just want to make

12    sure that's clear, because again when you have people that

13    is going come to accused you, we have to make sure what

14    they you accusing on they're end is factual also.  So if

15    you factually paid your taxes --

16             **MR. RODRIGUEZ:**  File my taxes.

17             **SENATOR DEGRAFF:**  -- file your taxes in 2016 --

18             **MR. RODRIGUEZ:**  Yes.

19             **SENATOR DEGRAFF:**  -- for '13, '14, and '15 --

20             **MR. RODRIGUEZ:**  That's correct.

21             **SENATOR DEGRAFF:**  -- if law says that's what

22    you're allowed to do, then I would yield to the law.

23             **MR. RODRIGUEZ:**  Okay.

24             **THE TIMEKEEPER:**  Thirty seconds.

25             **SENATOR DEGRAFF:**  Okay.  So, again, I trying to

1    be nice, but -- so you said you had a vehicle in

2    Tennessee?

3              **MR. RODRIGUEZ:**  Yes.

4              **SENATOR DEGRAFF:**  You brought that vehicle home

5    with you?

6              **MR. RODRIGUEZ:**  No. That was -- no.

7              **SENATOR DEGRAFF:**  You sold it?

8              **MR. RODRIGUEZ:**  No. That was a part of the

9    bankruptcy agreement.

10             **SENATOR DEGRAFF:**  Oh, they went with the

11   vehicle, too?

12             **MR. RODRIGUEZ:**  Yeah.  My wife had the vehicle.

13   She drove the vehicle.

14             **SENATOR DEGRAFF:**  Okay.

15             **MR. RODRIGUEZ:**  I didn't have a vehicle in St.

16   Thomas.

17             **SENATOR DEGRAFF:**  One other thing I'm hearing,

18   how many times have you filed bankruptcy?

19             **THE TIMEKEEPER:**  Time.

20             **MR. RODRIGUEZ:**  I think it was in 2010 when my

21   business fold under, and our major issue was because we

22   were dealing with our predatory lending lawsuit.  There

23   were times when because of financial reasons we had to do

24   is pro se, and so that created a continuation of the

25   filing, and so that's what happened.

1              **SENATOR DEGRAFF:**  Okay.

2              **MR. RODRIGUEZ:**  So we couldn't afford to get an

3      attorney.  So we had to do it on our own.

4              **SENATOR DEGRAFF:**  Thank you very much.  Thank

5      you for the time, Mr. Chair.

6              **SENATOR FORDE:**  Thank you, Senator DeGraff.  Mr.

7      Rodriguez.

8              **MR. RODRIGUEZ:**  Yes.

9              **SENATOR FORDE:**  Just a while ago you puzzled me

10     a little bit when you hesitated when the good senator

11     asked you about whether or not you were a resident of

12     Tennessee.  You registered to vote in Tennessee?

13             **MR. RODRIGUEZ:**  Yes.

14             **SENATOR FORDE:**  You had a driver's license in

15     Tennessee?

16             **MR. RODRIGUEZ:**  That's correct.

17             **SENATOR FORDE:**  You resided in a home in

18     Tennessee?

19             **MR. RODRIGUEZ:**  That's correct.

20             **SENATOR FORDE:**  You worked in a Tennessee?

21             **MR. RODRIGUEZ:**  That's correct.

22             **SENATOR FORDE:**  You had business?  You owned a

23     vehicle?

24             **MR. RODRIGUEZ:**  That's correct.

25             **SENATOR FORDE:**  Why the hesitation that you were

1    specific that you reside there but you weren't --

2              MR. RODRIGUEZ:  No.  But I don't know the

3    definition of resident.  So I told him I reside there.  So

4    if reside -- if you lived there and these are the

5    requirements then you would be a resident of Tennessee.  I

6    said I reside in Tennessee.  I was accurate about I had a

7    car.  I filed my taxes there.  I worked there, and I had a

8    business there.  So that in itself is like

9    self-explanatory.

10             SENATOR FORDE:  Senator Francis, you're

11   recognized.

12             SENATOR FRANCIS:  Thank you very much Mr. Chair.

13   Good evening to everyone.

14             THE TESTIFIERS:  Good evening.

15             SENATOR FRANCIS:  You know, you damn if you do,

16   damn if you don't in this Legislature.  You know, we as

17   Democrats, we are the majority here, and I think that we

18   come -- we become a easy target, because Democrats are the

19   best game in town, frankly speaking, and every

20   organization have their faults.  As a matter of fact, the

21   reason why we even have a fall out within the Democratic

22   Party is because we have not moved on seating you back in

23   January.  If we had done that we won't have a problem

24   today.  We moving forward, working on bigger and better

25   things.

1          So, you know, individuals continue to take pot

2   shots at Democrats for whatever reason, and I could

3   understand that we're the best game in town.  But the ICM

4   have problems in their organization if they could barely

5   find 20 people.  The Independents have problem in their

6   organization.  The Republicans have problems in their

7   organization.  We got problems in our Democratic Party,

8   too, but, you know, we working it out.  So we'll try to

9   move on here, because we have a very important issue to

10  deal with here.

11         As a matter of fact, when we talk about

12  embracing our brother candidate that was actually elected,

13  didn't we meet immediately after election before the new

14  year?  Did we meet as caucus to have a discussion about

15  organization?

16         **MR. RODRIGUEZ:**  That's correct, Senator.

17         **SENATOR FRANCIS:**  More than once?

18         **MR. RODRIGUEZ:**  Yes, Senator.

19         **SENATOR FRANCIS:**  With all of your Democratic

20  candidates -- colleagues?

21         **MR. RODRIGUEZ:**  Yes, Senator.

22         **SENATOR FRANCIS:**  Did you also meet with other

23  individuals as well.

24         **MR. RODRIGUEZ:**  Yes, Senator.

25         **SENATOR FRANCIS:**  Non-Democrats?

1          **MR. RODRIGUEZ:**  Yes, Senator.

2          **SENATOR FRANCIS:**  Okay.  So there's a story.

3     Anyway, we continue to ask you to be truthful and honest

4     about your information that you're having here or you're

5     bringing forth here.  And then there's still some

6     reluctance, in my opinion, in terms of the information.

7     We need full disclosure so that we could truly move

8     forward.

9          You were asked about the driver's license issue

10    earlier, and again you were reluctant to say that you had

11    a Tennessee license --

12         **MR. RODRIGUEZ:**  Yes.

13         **SENATOR FRANCIS:**  -- however, you have since

14    acquired a Virgin Islands license.  Can you speak to when

15    you got that Virgin Islands license?

16         **MR. RODRIGUEZ:**  I would have to look at the

17    date.  As a matter of fact I got the Virgin Islands

18    license when I lost my Tennessee license.

19         **SENATOR FRANCIS:**  -- which is this year,

20    correct?

21         **MR. RODRIGUEZ:**  Yes, that's correct.  Let me

22    look at the date.  July 19, 2017 -- I mean 2016.

23         **SENATOR FRANCIS:**  July 2016.

24         **MR. RODRIGUEZ:**  Yes.

25         **SENATOR FRANCIS:**  And then you were asked about