1    the bankruptcy issue, and you made mention that there was

2    a 2010 bankruptcy and that there was a continuation.  How

3    many bankruptcies have you truly been involved in?

4              MR. RODRIGUEZ:  It was three.

5              SENATOR FRANCIS:  Three.

6              MR. RODRIGUEZ:  Three.

7              SENATOR FRANCIS:  And again for us to really

8    move forward, we need to have all the pertinent

9    information so that an informed decision could be made.

10   And I'll tell you that it's really unfortunate that you're

11   in this predicament.  And I commend you for your

12   persistence in seeing this through, because I don't know

13   if I would have the tenacity and fortitude to continue

14   doing this; putting your business out on the street and,

15   you know, your family have to endure this type of the

16   information and those type of things.  But hats off to you

17   because obviously you have not done anything wrong in your

18   opinion and you truly want to move forward, is that

19   correct?

20             MR. RODRIGUEZ:  Yes, can I answer to that.

21             SENATOR FRANCIS:  Absolutely.

22             MR. RODRIGUEZ:   And I glad you asked that

23   question.  Senator, you know, what I'm going through

24   although it's heartbreaking and challenging, my faith and

25   my truth is what holds me on.  What I'm fighting for is

1   the men -- the mothers that are out there during that

2   campaign trail who have to do two jobs just to put food on

3   their table.  The mother you who can't find a good

4   educational system because of their child that may not

5   have the right tools in order to be successful in

6   education.  Those are the people I'm fighting for, you

7   know.

8          There's a young man, and I don't want to call

9   his name, when I went to the political boot camp I was

10  excited, because I came back it was on Pinney Point where

11  there was Merchant Marines.  And I said I'm going to come

12  back to the Virgin Islands and recruit all these guys to

13  join the Merchant Marine.  I got three guys to go.  The

14  one guy that I asked to go and I keep going after him,

15  right now he's in trouble, and he said Mr. Rodriguez if I

16  had only listen to you I would not have been in trouble

17  today.  And so what I'm going through --

18          **THE TIMEKEEPER:**  One minute thirty seconds.

19          **MR. RODRIGUEZ:**  -- I am built for it, battle

20  tested.  And so that's why I'm here, and that's why I am

21  fighting for the people of the Virgin Islands.

22          **SENATOR FRANCIS:**  And the reality is

23  senator-elect Rodriguez is that every single member in

24  this body regardless of how we carry on with each other,

25  because it's a deliberative body, and we have to have two

```
 1   sides, we all have the same interest in mind in terms of

 2   moving the Virgin Islands forward.  However, it's the

 3   vehicle by which we move a lot of times.  We a lot of

 4   nuances even in our Code that we struggle with each and

 5   every single day.  Some of us just got here; others have

 6   been here for quite some time and try to make the changes.

 7   We have 1952 laws that we try to impact.  We have

 8   situations of poverty and all kind of thing that going on

 9   in this community.  We have a lot of work to do here.  And

10   whoever is the deciding factor that makes the 15th senator

11   that's actually who I'll be working with and moving

12   forward.

13              THE TIMEKEEPER:  Thirty seconds.

14              SENATOR FRANCIS:  Thank you very much for your

15   responses.

16              MR. RODRIGUEZ:  Thank you.

17              SENATOR FRANCIS:  Thank you very much Madam

18   Chair for your time.

19              SENATOR RIVERA-O'REILLY:  Thank you Senator

20   Francis.  For -- for the record, the information that we

21   would like to receive from the Bureau of Internal Revenue

22   is limited only to the years that were filed and the dates

23   in which they were filed.  So it would be similar to the

24   letter that was received by the Board except that this is

25   a year old, okay.  So we're not asking for copies of your
```

1    tax returns and all of the personal information.  Very

2    well.  And that is not what was said earlier.  So

3    selective hearing sometimes.

4         Mr. Rodriguez in response to my colleague, he

5    asked how many bankruptcies you filed, and you said three.

6    I have copies of four different filings one November 29,

7    2010, the other March 27, 2012; the other August 4, 2012

8    and then finally the January 25, 2016, is that correct?

9         **MS. RODRIGUEZ:**  May I address that please?

10        **SENATOR RIVERA-O'REILLY:**  Sure.

11        **MS. RODRIGUEZ:**  Okay.  There are three official

12   bankruptcies, and the one from 2012, the August one and

13   then I think you said March?

14        **SENATOR RIVERA-O'REILLY:**  Right, yes.

15        **MS. RODRIGUEZ:**  Okay.  That bankruptcy because

16   of the bank loosing documents and not providing the

17   bankruptcy court with the proper documentation, that case

18   was put on hold, and when we filed again the number had

19   changed because of the type of bankruptcy.  As far as what

20   it started as, which was a complete relinquishing of

21   property, during that time we had an audit to educate us

22   to let us know that we should not relinquish the property.

23   And so in August we filed a separate bankruptcy number and

24   that satisfied that gap in time by the mortgage company.

25        **SENATOR RIVERA-O'REILLY:**  Okay.  So the August

1   4, 2012 bankruptcy documents in effect replaced the March

2   27, 2012.  Okay, very well.

3              Mr. Rodriguez, you were employed by HOPE,

4   Inc. --

5              **MR. RODRIGUEZ:**  Yes.

6              **SENATOR RIVERA-O'REILLY:**  -- that's been said

7   here --

8              **MR. RODRIGUEZ:**  Yes, Senator.

9              **SENATOR RIVERA-O'REILLY:**  -- broadly as a

10  consultant, at least the documents that we've reviewed

11  mentioned your name as a consultant.  And in fact there

12  was a job application that you completed with the

13  Legislature for employment in which you also mentioned

14  your -- your job specs there as providing consulting

15  services.

16             Did you have a business license to work as a

17  consultant?

18             **MR. RODRIGUEZ:**  No.

19             **SENATOR RIVERA-O'REILLY:**  You were not required

20  to show a business license by HOPE, Inc., when they hired

21  you as a consultant?

22             **MR. RODRIGUEZ:**  No.  That's not the practice of

23  HOPE.

24             **SENATOR RIVERA-O'REILLY:**  Okay, very well.  And

25  when you worked for HOPE, Inc., did you work --

1          **MR. RODRIGUEZ:**  You know, with HOPE, Inc., I

2     think we use the word consultant very loosely.  It's more

3     or less is an employee that is not -- and Mr. Morales can

4     answer that question because he was a board member.

5     Although you say the word consultant it's just a title.

6     Actually you're either a full time employee or a temporary

7     employee, and that's what it is.

8          **SENATOR RIVERA-O'REILLY:**  Okay.  So you were a

9     part-time employee?

10         **MR. RODRIGUEZ:**  Temporary employee.

11         **SENATOR RIVERA-O'REILLY:**  Temporary employee and

12    did you -- did you carry out your functions for HOPE,

13    Inc., on St. Thomas in the Virgin Islands or did you work

14    remotely from Tennessee?

15         **MR. RODRIGUEZ:**  No.  I worked in St. Thomas

16    Virgin Islands from eight to five each day.

17         **SENATOR RIVERA-O'REILLY:**  So you never worked

18    remotely from Tennessee?

19         **MR. RODRIGUEZ:**  No.

20         **SENATOR RIVERA-O'REILLY:**  Okay, very well.  The

21    final question and then we'll go to the next speaker.  You

22    had a Tennessee driver's license that expired May of 2018.

23    Based on the records that we received, which I would like

24    to make part of the record today, there was an affidavit

25    that you submitted to the Virgin Islands Bureau of Motor

1    Vehicle where you affirmed -- where you state that you

2    lost your Tennessee driver's license, and you applied for

3    a Virgin Islands license.  And it appears from the records

4    received that you were issued a Virgin Islands driver's

5    license on July 19, 2016.  That would be two months after

6    your nomination papers were filed, and five months after

7    your tax returns were filed, and six months after your

8    bankruptcy case in Tennessee was filed.

9          Can you share with us why you waited this long

10   to turn in your -- well to obtain a Virgin Islands

11   license?

12         **MR. RODRIGUEZ:**  Well, I had a Tennessee license.

13   I didn't have car in the Virgin Islands.  I may a use car

14   from time to time.  As Ms. Scipio indicated, on several

15   occasions she came to pick me up if I didn't have a ride

16   and sometimes she would drop me home.  So I didn't have a

17   need to change my driver's license.  When I applied at the

18   Board of Election, the requirement is not a driver's

19   license.  It's a birth certificate or passport for which I

20   submitted.  So there was no need for me to -- I believe I

21   gave them that a copy of it, but there was no need.

22         Now when I lost my driver's license, because

23   there's reciprocity between Tennessee and the Virgin

24   Islands, I actually went down to the Motor Vehicle and see

25   if I can get, because I did have a V.I. driver's license

1  at one time I can get it.  And they said no because it was

2  such an extended period of time, however, I can call

3  Tennessee get a certification that I did have a license,

4  and then they would give me a license due to the

5  reciprocity.

6          SENATOR RIVERA-O'REILLY:   Right and you did.

7  And Tennessee --

8          MR. RODRIGUEZ:  And that which I did.

9          SENATOR RIVERA-O'REILLY:  Right.  And Tennessee

10  issued a letter July 15th saying that your license expires

11  there on May 6, 2018.

12          MR. RODRIGUEZ:  Yes.

13          SENATOR RIVERA-O'REILLY:  You said that you

14  moved to the Virgin Islands on what you believe and

15  excepted to be a permanent basis when?

16          MR. RODRIGUEZ:  I moved here January 5th, and I

17  start working January 7th.

18          SENATOR RIVERA-O'REILLY:  Of what year?

19          MR. RODRIGUEZ:  Of 2013.

20          SENATOR RIVERA-O'REILLY:  2013.  Are you aware

21  though that when you have a license from another state you

22  have 90 days in which you have to turn that license over

23  and obtain a local license?

24          MR. RODRIGUEZ:  If you're driving a car.  If you

25  have a car.  I don't have a car.  I didn't have a car.

1            **SENATOR RIVERA-O'REILLY:**  For identification

2   purposes you continued to use your Tennessee license?

3            **MR. RODRIGUEZ:**  No.  I used my passport.

4            **SENATOR RIVERA-O'REILLY:**  Very well.  Very well.

5            So we will now recognize Senator Millin-Young.

6   Senator Millin-Young for your seven minutes.

7            **SENATOR MILLIN-YOUNG:**  Thank you, Madam Chair.

8   I wonder how many members in this chamber could pass the

9   muster that is being demanded of this gentlemen here.  As

10  I stated from the beginning of this Session or Committee

11  of the Whole meeting, I think this is my fourth time

12  asking what is the charge before us.  Charge, no vacancy,

13  and here we are.  And I continue to participate, because

14  if I don't I'm not being representative.  And I believe

15  this chair right here to the end needs to be filled.  As

16  Senator Hansen said earlier today, our economy is

17  faltering.  I know somebody said the other day something

18  about who was leading Economic Development.  They say

19  people don't know how to read, but they don't know what

20  their role is because the executive branch runs this

21  place.

22            Mr. Rodriguez, since the bankruptcy case was

23  dismissed, has Tennessee contacted you about having filed

24  there?

25            **MR. RODRIGUEZ:**  No.

1     **SENATOR MILLIN-YOUNG:**  Do you believe anybody

2   has contacted Tennessee about what's going on here?

3     **MR. RODRIGUEZ:**  Well, I heard on the public

4   street that persons may have inquired.  As I believe also

5   I heard even that Ms. Ivy Moses has inquired.

6     **SENATOR MILLIN-YOUNG:**  No, but I didn't mean

7   people here trying to start stuff.  I meant Tennessee --

8     **MR. RODRIGUEZ:**  Oh, no, no.  As my discussion

9   with my attorney I haven't done anything wrong there's

10  nothing illegal, and so the case has been dismissed.  And

11  so there's no reason to even -- as a matter of fact, he

12  said you know what there's no reason to dignify them with

13  an answer.  Those were his words.

14    **SENATOR MILLIN-YOUNG:**  And still here you are

15  still answering to those charges.

16    **MR. RODRIGUEZ:**  Yes.

17    **SENATOR MILLIN-YOUNG:**  And you also said that

18  you would adhere to any decision made here today by this

19  body?

20    **MR. RODRIGUEZ:**  That's correct.

21    **SENATOR MILLIN-YOUNG:**  And that's honorable you

22  have fought a hard fight.  Like I said earlier and I'll

23  say again and will continue to say, what an injustice to

24  all involved.  You and anybody who ran for the special

25  election.  The voters who voted for you.  The voters who

1    have come out.  I don't even know if you failed today that

2    if there was another special election that people will

3    come out.  People are just so disenchanted, and I don't

4    blame them.

5           Mrs. Rodriguez, I appreciate how far you have

6    gone to stand by your husband this evening.  You've gone

7    further than most women I know.  You have opened up your

8    life or lives as a couple, and given us so many details

9    for no good reason at all.  We need to come to a

10   resolution, and we need to stop trying to embarrass

11   people.  The people of the Virgin Islands can scarcely

12   take anymore.  So I'm not even speaking for Mr. Rodriguez,

13   Mrs. Rodriguez or anyone else except the voting public.

14   They can't take anymore.

15          Like I said, if some people here were exposed

16   they probably wouldn't be reelected either.  And I'm not

17   here to say we need to be kind to each other but be

18   truthful.  The attorney, our Legal Counsel has stated

19   basically, Mr. Rodriguez you don't have say anything else,

20   because the burden, while some may not like the word, the

21   burden is not you.  The burden is on the accuser.  And

22   once again, there's no charge.

23          What are we doing here, and people don't want to

24   hear the question; because they don't have the answer.

25   Yes we're here because the Minority have been from

1    February asking for this to happen, sure.  But you have

2    gone through a court process after court process, and you

3    haven't found the answer that will support your position

4    so you continue.  I say be fair to people because this

5    here might scare others from running, and we need to

6    encourage, not discourage others to step up to lead this

7    place.  I don't own this seat.  I don't own this chair.

8    I'm going to be here for the rest of my life, and I want

9    to encourage others to actually aspire to sit here.

10                  **THE TIMEKEEPER:**  One minute thirty seconds.

11                  **SENATOR MILLIN-YOUNG:**  Mr. Rodriguez.

12           **MR. RODRIGUEZ:**  Yes, Senator.

13           **SENATOR MILLIN-YOUNG:**  It got a lot of fathers

14    out there who ain't doing what they supposed to do.  And

15    for Mother's Day and Father's Day you always hear somebody

16    say oh, for all the mothers who do both jobs.  And here

17    you are knowing, and you have exposed this already, your

18    wife was with someone else, and you said to yourself but

19    my children are there; and I will do what I have to do for

20    my children, and I think that is commendable.  So no

21    matter what happens today, I hope you can continue to hold

22    up your head high and know you did the right thing.

23                  I cannot speak for what you wrote to Tennessee.

24    That is over and done with.  If people need an excuse to

25    keep you away let that be their guide.  My conscience will

1  be my guide.  And the fact that you met with other people

2  during the organization tell them don't start about

3  organization here tonight, okay.

4          **THE TIMEKEEPER:**  Thirty seconds.

5          **SENATOR MILLIN-YOUNG:**  Because there'll be other

6  rounds.  Don't start.  Thank you, Madam Chair.

7          **MS. RODRIGUEZ:**  Thank you, Senator.

8          **SENATOR RIVERA-O'REILLY:**  You are very welcome

9  Senator Millin-Young.  So we go now to the other side and

10  that would be Senator Blyden.

11          **SENATOR BLYDEN:**  Thank you Madam President, and

12  good evening again to the testifiers.

13          **THE TESTIFIERS:**  Good evening.

14          **SENATOR BLYDEN:**  Mister -- senator elect

15  Rodriguez, do you believe that the process thus far have

16  been fair to you?

17          **MR. RODRIGUEZ:**  I --

18          **SENATOR BLYDEN:**  As far as this body.  Let me

19  rephrase that question, this body, the 32nd Legislature.

20          **MR. RODRIGUEZ:**  Well, as indicated in my

21  testimony I believe and I still believe, and I'm happy

22  that we're here right now.  And, you know, this is a

23  lesson learned for all of us.  It's a new process, and so

24  I think we're going to grow from this, mature.  We're

25  going to get mature from this.  I think my biggest thing

1    is because I knew I didn't do anything wrong, and that's

2    why I keep saying it is the Legislature role to judge me,

3    and so I don't want anyone in this body to feel that

4    because I sued the Legislature that mean to take it

5    personal.  Everyone has a right, has a constitutional

6    right when they feel that unjustness -- unjust has been

7    served to file to go to court, and so that what I did.  So

8    I don't want this body to take it personal.

9          **SENATOR BLYDEN:**  And there was a due process in

10   place, correct?

11         **MR. RODRIGUEZ:**  And there was a due process in

12   place.

13         **SENATOR BLYDEN:**  And that's why it has taken

14   this many months to get where we at today.

15         **MR. RODRIGUEZ:**  But remember Senator, remember

16   we have had this conversations with many senators, and

17   they say once the court decide then we'll seat you.  The

18   court have decided, and I still didn't get seated and that

19   was a discussion.  And so, you know, we waiting for the

20   ruling of the court, that's what was said.  Now if I

21   misinterpreted differently then -- but that's what I

22   thought that okay the court decide and then but, you know,

23   to God be the Glory.

24         **SENATOR BLYDEN:**  Based on my understanding, I do

25   not believe the court actually made a decision in terms of

1   residency, and that's why we are still here.  And they put
2   it back in our court to make that decision.  That's why we
3   are this evening.
4           MR. RODRIGUEZ:  Okay.
5           SENATOR BLYDEN:  So it was a process, and I
6   needed everyone to understand that.  Now, I know -- at any
7   time were you considered a resident of Tennessee at any
8   time?
9           MR. RODRIGUEZ:  Yes.  Well, during the time I
10  lived there I would have to be a residents now in the
11  discussion.
12          SENATOR BLYDEN:  Very well.  And you moved back
13  home in 2013, correct, January?
14          MR. RODRIGUEZ:  January 5th, that's correct.
15          SENATOR BLYDEN:  And you have been here ever
16  since?
17          MR. RODRIGUEZ:  Every since.
18          SENATOR BLYDEN:  Okay.  When did your children
19  move back home in terms of them being in the Moravian
20  School I believe you stated on record?
21          MR. RODRIGUEZ:  Well, I think in 2014 they came
22  for the summer.
23          SENATOR BLYDEN:  Okay.
24          MR. RODRIGUEZ:  And then I filed for custody of
25  the children, and then we had a court case.  And then I

1   think like a month and a half later they were ordered to

2   go back to Tennessee because of lack of jurisdiction,

3   because the court stated that my residency was in the

4   Virgin Islands.

5          SENATOR BLYDEN:  And you stated on the record

6   also that at the time you signed the bankruptcy documents,

7   you were basically in a rush.  Would you say you were

8   emotionally distressed?

9          MR. RODRIGUEZ:  Very much so.  I mean it was so

10  bad and even financially burdened when I tell you I jumped

11  on a plane and caught a bus to Nashville, Tennessee.

12  That's to show you that my desperation, because I couldn't

13  get a flight out.  And I went to the bus station --

14  actually my brother took me to the bus station, and I

15  caught a four-hour bus to Nashville, Tennessee, four hours

16  and a half.

17         SENATOR BLYDEN:  Okay.  Based on the testimonies

18  as you know even though you filed in a rush that's not an

19  excuse, but I can understand.

20         MR. RODRIGUEZ:  And I accept that.

21         SENATOR BLYDEN:  I can understand where you

22  coming from based on your testimony, because even though I

23  know you I never heard that before.  I never heard the

24  full story before.  So I only pictured what you was

25  talking about as you spoke in reference to what occurred.

1          Now, in terms of your family and you spoke in

2   reference to the damage that have done, and it cannot be

3   taken back etc., etc., with your children, and I kind of

4   understand that.  But at the same time we have to all

5   understand we have to focus on the questions that was

6   posed to us in terms of the six categories that you

7   mentioned in your testimony.

8          **MR. RODRIGUEZ:**  Yes.

9          **SENATOR BLYDEN:**  And you went through the

10  different categories from one to six, I believe.

11         **MR. RODRIGUEZ:**  Yes.

12         **SENATOR BLYDEN:**  And you said you believe you

13  have not violated any of those, correct?

14         **MR. RODRIGUEZ:**  That's correct.

15         **SENATOR BLYDEN:**  And you have not been found

16  guilty of any of those, correct?

17         **MR. RODRIGUEZ:**  Yes and I've provided supported

18  documentation also.

19         **SENATOR BLYDEN:**  To that fact?

20         **MR. RODRIGUEZ:**  Yes.

21         **SENATOR BLYDEN:**  And -- well so that was stated

22  here this evening the bankruptcy has been dismissed --

23         **MR. RODRIGUEZ:**  Yes.

24         **SENATOR BLYDEN:**  Totally?

25         **MR. RODRIGUEZ:**  Totally.

1          **SENATOR BLYDEN:**  Very well.  Mr. Morales, good

2    evening.

3          **MR. MORALES:**  Good evening.

4          **SENATOR BLYDEN:**  I need to ask you a question,

5    because you said something earlier that just made me say

6    hmm.  You spoke in reference to being a board member, and

7    you stated that you knew that --

8          **THE TIMEKEEPER:**  One minute thirty seconds.

9          **SENATOR BLYDEN:**  -- a moment would come to pass.

10   It was just a matter of time.  Why you had that feeling

11   that that would happen?

12         **MR. MORALES:**  If you know the chemistry of both

13   parties you would understand that.  One party have no

14   respect for how they speak to the employees, okay.  And

15   that's where the problem lies.  I experience that as even

16   as a board member, and I had to let them know I don't

17   tolerate that.

18         **SENATOR BLYDEN:**  And both Ms. Scipio and

19   yourself spoke in reference to the Tennessee address and

20   having a Tennessee address on the application that was

21   filled out.

22         **MR. MORALES:**  Right.

23         **SENATOR BLYDEN:**  And that it was asked several

24   times to change it to St. Thomas.  My question is when it

25   comes to that, I guess hopefully Ms. Moses will be able to

1   defends herself.  But --

2              THE TIMEKEEPER:  Thirty seconds.

3              SENATOR BLYDEN:  -- as a matter of fact, this

4   happened on several occasions you stated on the record?

5              MR. MORALES:  To my knowledge, yes.

6              SENATOR BLYDEN:  Ms.  Scipio, how long after he

7   started working there have you heard this request being

8   granted to have the address changed?  Can you speak into

9   the mic, please?

10             MS. PENN-SCIPIO:  I heard asked her at least

11  three time.

12             SENATOR BLYDEN:  Speak into the mic, please.

13             MS. PENN-SCIPIO:  I think it was a W-2 form --

14             SENATOR BLYDEN:  Speak into the mic.

15             MS. PENN-SCIPIO:  -- and a few other documents.

16             SENATOR BLYDEN:  Can you repeat your statement?

17  Your comment.

18             MS. PENN-SCIPIO:  I heard him asked her --

19             THE TIMEKEEPER:  Time.

20             MS. PENN-SCIPIO:  -- at least three times to

21  change the address on separate documents.

22             SENATOR NELSON:  And in closing senator-elect

23  Rodriguez, why did you request for the address to be

24  changed?

25             MR. RODRIGUEZ:  Because I was not living in

1  Nashville, Tennessee.  And as a matter of fact, Ms. Moses

2  knew my circumstance in Tennessee.  So she knew I wasn't

3  living in Tennessee.

4         **SENATOR BLYDEN:**  Very well.  Thank you so much

5  Madam President for the time.

6         **SENATOR RIVERA-O'REILLY:**  You are very welcome

7  Senator Blyden.  Recognize now Senator Hansen for her

8  seven minutes.

9         **SENATOR HANSEN:**  Thank you very much.  Mr.

10  Rodriguez, lots has been asked about your residency in

11  Tennessee.

12         **MR. RODRIGUEZ:**  Yes.

13         **SENATOR HANSEN:**  I believe the Third Circuit

14  Court was very clear on what guidance we should have as a

15  Legislature as it relates to your residency.  And it's

16  within our Organic Act, Revised Organic Act of 1954.  Is

17  that your understanding?

18         **MR. RODRIGUEZ:**  Yes, Senator.

19         **SENATOR HANSEN:**  Okay.  However, I believe

20  through the Congress -- the 89th Congress that was a

21  member that committed, in fact not only committed a crime

22  but convicted of a crime.  Were you convicted of a crime?

23         **MR. RODRIGUEZ:**  No, Senator.

24         **SENATOR HANSEN:**  All right.  Then the 90th

25  Congress did not want to seat that member, and it went all

1    the way to the Supreme Court.  Let me ask our Chief Legal

2    Counsel if she's familiar with that case.  I believe it's

3    Adam Clayton Powell case.  I ain't meant to put you on the

4    spot, but I'm sure -- I'm sure you got it together.  You

5    had it together since December last year.

6              **ATTORNEY THARPES:**  Through the Chair to Senator

7    Hansen, yeah it was *Powell v. McCormick*, and that was a

8    1969 case.  It went to the Supreme Court.  What had

9    happened there is that sometime during the 89th

10   Legislature, there was an investigation on Adam Clayton

11   Powell.  He was accused of thieving of the people's money

12   and embezzling --

13             **SENATOR HANSEN:**  Of what?

14             **ATTORNEY THARPES:**  He was accused of taking

15   public money and appropriating it to his wife and

16   different people, and to himself, and they actually found

17   that he actually committed these crimes; but he was never

18   convicted.  But when the 90th Legislature began, he

19   presented his credentials to be sworn in, and they told

20   him to step aside; and they didn't -- they refused to seat

21   him.  They sent it to a committee.  The committee made a

22   report.  They voted to exclude him as a member.  And

23   basically, he ended up taking it to the Supreme Court, and

24   the Supreme Court had ruled that the -- the Legislature or

25   Congress was not authorized to refuse to seat a member who

1   met the qualifications.  And they ruled that Adam Clayton

2   Powell had met the age requirement, the citizenship

3   requirement; he had met the voter requirement and the

4   residency requirement.

5          **SENATOR HANSEN:**  What were -- in essence what

6   was required by law to be eligible to run and get a seat

7   in the Senate and Congress?

8          **ATTORNEY THARPES:**  Yes, they could not add any

9   additional qualifications.

10         **SENATOR HANSEN:**  In your opinion, because, you

11  know, I only have a few minutes left.  In your opinion,

12  would that be something similar to this case?  I mean

13  because I keep hearing, including now Mr. Rodriguez he

14  will accept anything.  This isn't a fact that we have the

15  sole authority to judge him but even the Supreme -- not

16  the Supreme Court, the Third Circuit Court indicated it

17  also has to be within the law.  It can't be because I

18  don't like you.  I can't be because you playing with

19  somebody else.  It can't be because you're separated from

20  your wife, and now you want to go back with your wife.  It

21  can't be none of that.  He had a license in or he didn't

22  have license here or in Tennessee, none of that.  The only

23  one court went through the residency issue, am I correct?

24         **MR. RODRIGUEZ:**  Yes, Senator.

25         **SENATOR HANSEN:**  And that because I had to do my

1  homework to be fair.  That was the Superior Court.

2  Counsel, help me.

3        **ATTORNEY THARPES:**  Through the Chair, that was

4  the Superior Court that found that he was a resident.

5        **SENATOR HANSEN:**  They found with all evidence,

6  sworn evidence that he was a resident.  What we are asking

7  for is out of the box.  As it relates to his character

8  whether we want to believe he's a good man or ain't a good

9  man that's left up to the voters.  The voters will

10  determine that.  Should you get reelected, should be a

11  member of the body it is the voters.  They are the ones to

12  judge all of our characters, and we don't tell on each

13  other.

14        **THE TIMEKEEPER:**  One minute thirty seconds.

15        **SENATOR HANSEN:**  I made a motion to get

16  everybody tax, come forward with his.  That failed.  You

17  would think everybody would vote for it.  They thought

18  that I would move my motion if you said 20 years back.  I

19  said bring it on.  We also could bring on the record where

20  if you look at when someone got pregnant, a child got

21  pregnant and get their own baby and so forth, marrying

22  them don't make it legal.

23        Right now the Attorney General say he

24  investigating monies some of us should not have taken.  I

25  was not part of that.  If I was part of that you'll see an

1   aggressive move.  I mean who the hell we think we be.

2   Who?

3              I mean if you had hear he had rape somebody, if

4   you heard that he had kill somebody, if you heard he had

5   thief something from somebody I could understand.

6              THE TIMEKEEPER:  Thirty seconds.

7              SENATOR HANSEN:  But you're talking about a man

8   who saw his children being thrown out on the streets.

9   That's what we know, all know this.  And let me ask the

10  question which one of you would not have gone?  Which one?

11  Maybe -- your right.  Maybe some of them may not do that.

12  It's true.  It is scandalous.  This is a circus.  It's

13  nothing but a circus.  We want to hide behind the Attorney

14  General.  The Attorney General said clearly along with

15  your own attorney that you hired from the outside what he

16  said --

17             THE TIMEKEEPER:  Time.

18             SENATOR HANSEN:  -- residency can be in both

19  places, and you trying to play like you forget.

20             Thank you.

21             SENATOR RIVERA-O'REILLY:  You're certainly

22  welcome Senator Hansen.  We now will recognize Senator

23  Vialet for his seven minutes.

24             SENATOR VIALET:  Thank you Madam Chair and good

25  night everybody.  It's really sad that we had to have this

1  proceeding today, because a lot of what is being discussed

2  is just a sad testament as to what have occurred over the

3  last couple months.  And I think we've been going all

4  over, all over the place.  Acquisitions here, acquisitions

5  there and most of them are unfounded.  And what we're

6  looking at is 6(b) under the Revise Organic Act.  And what

7  we looking at specifically is whether or not you met the

8  residency requirement.  We're not looking at no crime.

9  You did not commit murder, rape or anything that I'm

10  hearing about.  Nobody said that.  We just looking simply

11  at the residency requirement.  And the only reason that

12  the discussion is taking place is because of documentation

13  that you were privy to that you signed.

14          You stated that the document, the bankruptcy

15  petition was prepared by the attorney, correct?

16          **MR. RODRIGUEZ:**  That's correct, Senator.

17          **SENATOR VIALET:**  And did you sign the bankruptcy

18  petition?

19          **MR. RODRIGUEZ:**  Yes, Senator.

20          **SENATOR VIALET:**  Did you read the first sentence

21  above your signature?  *"I have examined this petition and*

22  *I declare under penalty of perjury that the information*

23  *provided is true and correct."*  Did you read that

24  statement before you signed this petition?

25          **MR. RODRIGUEZ:**  Senator, to my knowledge no I

1    didn't read it.

2              **SENATOR VIALET:**  So you did not review the

3    petition?

4              **MR. RODRIGUEZ:**  I reviewed the petition.

5    However, because we were down to the wire and we needed to

6    make sure that --

7              **SENATOR VIALET:**  I understand all of that.

8              **MR. RODRIGUEZ:**  Yes.

9              **SENATOR VIALET:**  I understand all of that.  But

10   you have a legal --

11             **MR. RODRIGUEZ:**  I reviewed it.  I reviewed it.

12             **SENATOR VIALET:**  You have a legal document.

13   Attorney, what does that sentence mean?  *"I have examined*

14   *this petition and I declare under penalty of perjury that*

15   *the information provided is true and correct."*

16             **MR. JACKSON:**  I means that to the best of your

17   knowledge what you've said therein is accurate.

18             **SENATOR VIALET:**  Okay.  But now we have been

19   able to conclude by Mr. Rodriguez that the information

20   that was provided is not true and correct, is that true?

21             **MR. JACKSON:**  A mistake has been determined.

22             **SENATOR VIALET:**  So the information is not true

23   and correct?

24             **MR. JACKSON:**  I would say yes that's true and

25   correct.

 1          **SENATOR VIALET:**  But despite the fact that the

 2   information is not true and correct, perjury was not

 3   committed?

 4          **MR. JACKSON:**  Perjury has to be intentional.  It

 5   cannot be by mistake.

 6          **SENATOR VIALET:**  So the information on this

 7   petition the attorney just filled it out without

 8   consulting you?  So how did he get the information about

 9   the St. Thomas Federal Credit Union, the house in Anna's

10   Retreat.  How did he --

11          **MR. RODRIGUEZ:**  Like I mentioned earlier we were

12   asked to bring our taxes and whatever outstanding bill

13   Kimberly had, and the income.  That's all we were asked to

14   provide.

15          **SENATOR VIALET:**  And you're stating that you

16   signed a document without reading the document, reading

17   what was contained in that document to include two

18   sentences above your signature.  You did not read the line

19   that said you have lived in this -- *"you have been in this*

20   *district for more than a hundred and eighty days."*  You

21   did not read the section that states that *"you have lived*

22   *here for more than three years"* or you did not read that

23   section that speaks to perjury of the information is that

24   true and correct.  Those three sections you missed?

25          **MR. RODRIGUEZ:**  I reviewed it, and I may have

1   looked at it.  But, you know, a light didn't come on

2   because I know that I lived in the Virgin Islands.  And so

3   that's what --

4            SENATOR VIALET:  So you decided come back

5   home --

6            MR. RODRIGUEZ:  And the house was there so, you

7   know, was like a bell come on.

8            SENATOR VIALET:  Okay.  You decided to return to

9   the Virgin Islands in 2013?

10           MR. RODRIGUEZ:  That's correct.

11           SENATOR VIALET:  You decided to make -- when you

12  came back to the Virgin Islands you made that decision to

13  come back, your intention was to make the Virgin Islands

14  your permanent home again?

15           MR. RODRIGUEZ:  Yes because my relationship

16  had --

17           SENATOR VIALET:  I don't want to -- I don't even

18  go with relationship.

19           MR. RODRIGUEZ:  Yes, Senator.

20           SENATOR VIALET:  I don't want to go anywhere

21  there.  When you got hired at HOPE, Inc. --

22           MR. RODRIGUEZ:  Yes.

23           SENATOR VIALET:  -- who filled out the 1099

24  form?  Ms. Moses filled it out for you or you filled it

25  out?

1           **MR. RODRIGUEZ:**  I may have filled it out.

2           **SENATOR VIALET:**  Why did you put your Tennessee

3    address and not your St. Thomas address because you

4    intended to make St. Thomas your home, and you actually

5    claiming that you had dual residency.  You had a home on

6    St. Thomas.  You had a home that was in your name in

7    Tennessee but not a home that you had lived at.  Why did

8    you not put down your Anna's Retreat home address on the

9    1099 form?

10          **MR. RODRIGUEZ:**  I may have, because I mean

11   Tennessee -- I was still in Tennessee.  I probably just

12   filled it out.

13          **SENATOR VIALET:**  Hold up.  Hold up.  I want to

14   be clear because some stuff I'm just not getting clear.

15          **MR. RODRIGUEZ:**  Yes.

16          **SENATOR VIALET:**  You stated when you left --

17          **MR. RODRIGUEZ:**  Yes.

18          **SENATOR VIALET:**  -- Tennessee your intention was

19   that the Virgin Islands is going to be your home.

20          **MR. RODRIGUEZ:**  That's correct.

21          **THE TIMEKEEPER:**  One minute thirty seconds.

22          **SENATOR VIALET:**  You have had partial ownership

23   in the property at Anna's Retreat for a number of years.

24   If St. Thomas is going to be your home, why are you

25   filling out a 1099 form and putting a Tennessee address,

1   and you have an address on St. Thomas and the job is on

2   St. Thomas?

3          MR. RODRIGUEZ:  To be honest with you I can't --

4   I just probably just wrote it down and that was it.

5   Sometimes I don't even know my telephone number.

6          SENATOR VIALET:  Sometimes you don't know your

7   telephone number?

8          MR. RODRIGUEZ:  No, what I'm saying I miss -- so

9   I don't really know why I wrote that down, but I know I

10  was living in the Virgin Islands.

11         SENATOR VIALET:  Okay.  When you testified in

12  court and I really don't want to ask this question.  So

13  I'll just be very brief with it.  When you testified in

14  court, you said that one of the reasons why you relocated

15  was so that your children could be effectively served and

16  educated, etc., is that correct?

17         MR. RODRIGUEZ:  No, no.  Not in that context.

18         SENATOR VIALET:  You said you went with ADD

19  terminology, and you said they'll better be served.  You

20  made reference of an Individual Educational Plan.  It's in

21  the transcript.

22         THE TIMEKEEPER:  Thirty seconds.

23         MR. RODRIGUEZ:  Yes.  With that -- with that

24  conversation we had when I came back -- when I moved to

25  St. Thomas was son was only three years old.

1           **SENATOR VIALET:**  Okay.  I'm going to run out of
2      time.
3           **MR. RODRIGUEZ:**  Okay.
4           **SENATOR VIALET:**  The reason why I'm asking it,
5      you made that statement as to the basis for relocating
6      from St. Thomas.  But then shortly after, you then filed
7      for custody of your children to remain in St. Thomas.  And
8      then your wife filed for custody back in Tennessee, and
9      she won the case.  And I'm just -- there are numerous like
10     just inconsistency that I'm not seeing clearly as to what
11     actually occurred, because at one time it well I did this
12     for this reason, and then the next time I did this for
13     this reason now.  Both of the reasons are not really
14     correlating.  At one time you time went away --
15          **MR. RODRIGUEZ:**  Senator, I think --
16          **THE TIMEKEEPER:**  Time.
17          **MR. RODRIGUEZ:**  Can I answer?  I think Senator
18     you may have cloud -- I think the answers probably get
19     clouded.  Because what you're saying, what you're telling
20     me is that my wife never filed for custody in Tennessee.
21     I filed for custody in the Virgin Islands.  My wife came
22     here to get the children.  We went to the Superior Court.
23     I mentioned --
24          **SENATOR VIALET:**  And she won the case.
25          **MR. RODRIGUEZ:**  And she won the case.  So it was

1  not in Tennessee.

2          SENATOR VIALET:  But she filed for custody, and

3  she lived in Tennessee.

4          MR. RODRIGUEZ:  That's -- No, she counter filed.

5  She counter filed?

6          SENATOR VIALET:  May I conclude, Madam Chair?

7          SENATOR RIVERA-O'REILLY:  Proceed.

8          SENATOR VIALET:  Mr. Morales, your reference --

9  you were a board member of HOPE.

10          MR. MORALES:  Yes.

11          SENATOR VIALET:  So you were a board member and

12  you had no authority, no jurisdiction.  You were a wasted

13  of your time, because you were a board member that saw a

14  lot of problems, but you were not able to effectuate any

15  change --

16          MR. MORALES:  Because I tell you why.  I only

17  have one vote and the rest allow Ms. Moses --

18          SENATOR VIALET:  That's good enough.  That's

19  good enough.  So you resign your seat?

20          MR. MORALES:  Yes.

21          SENATOR VIALET:  Okay, thank you.  Thank you,

22  Madam Chair.

23          SENATOR RIVERA-O'REILLY:  You are very welcome

24  Senator Vialet.  Mr. Rodriguez, just very quickly.  In --

25  when you signed the petition for bankruptcy --

1              **MR. RODRIGUEZ:**  Yes.

2              **SENATOR RIVERA-O'REILLY:**  -- the 2016 petition

3      for bankruptcy --

4              **MR. RODRIGUEZ:**  Yes, Senator.

5              **SENATOR RIVERA-O'REILLY:**  I'm just curious.  The

6      -- would place -- would revealing that you lived anywhere

7      else on the petition, would that have impaired your

8      ability to proceed with the bankruptcy protection request?

9              **MR. RODRIGUEZ:**  No.

10             **SENATOR RIVERA-O'REILLY:**  Okay, very well.  In

11     May about -- that would be May 4th.  May 4th this is about

12     13 days before the nomination petition papers were due,

13     you filed a complaint against Nation Star Mortgage in

14     Tennessee, and that's the whole issue about the --

15             **MR. RODRIGUEZ:**  Wrongful disclosure, yes.

16             **SENATOR RIVERA-O'REILLY:**  Right.  And in that --

17     and in that complaint, the complaint asserts that you are

18     a legal resident of Tennessee for purposes of jurisdiction

19     and standing, but this was while you claimed to be

20     residing in the Virgin Islands.  You're aware that that's

21     what the complaint asserts that you were a resident of

22     Tennessee?

23             **MR. RODRIGUEZ:**  I later found that.  Now that

24     bankruptcy is one bankruptcy.  That was in addition to as

25     a counteraction to the bankruptcy for settlement.  And so

1   it is my understanding that because the information was on

2   the bankruptcy that it transcended into the filing of the

3   lawsuit with the same information.

4           **SENATOR RIVERA-O'REILLY:**  So I guess -- I guess

5   what I'm trying to ask is if in January when you signed

6   the petition in a hurry --

7           **MR. RODRIGUEZ:**  Yes.

8           **SENATOR RIVERA-O'REILLY:**  I understand all of,

9   you know, the dynamics of what was happening, that you

10  didn't have an opportunity to read it thoroughly, and you

11  signed it in the attempt to save your family and the

12  house.

13          **MR. RODRIGUEZ:**  Yes.

14          **SENATOR RIVERA-O'REILLY:**  But in May when the

15  complaint was filed, you would think that you would have

16  had more ample time to review the document and to then

17  point out to the lawyer that your were in fact not a

18  resident of Tennessee.

19          **MR. RODRIGUEZ:**  Yeah.  I may have reviewed it,

20  but again I didn't click and it is oversight, and so I

21  signed it.  So I'm assuming that they're referencing the

22  house where the house is located, and that was an honest

23  truth about that of what happened.

24          **SENATOR RIVERA-O'REILLY:**  Okay.  We've been

25  talking a lot about all of the opinions that have been

1   entered by the various courts.  And I'm curious to see

2   maybe if Attorney Jackson can point us to any of the

3   opinions that -- that say that Mr. Rodriguez is in fact a

4   member of the 32nd Legislature, and also any language in

5   any of the opinions that say that the Legislature, the

6   32nd Legislature must seat Mr. Rodriguez.

7          Can you tell me which of these opinions would

8   contain this language or this directive?

9          **MR. JACKSON:**  Our position was always that the

10  election and certification is what made senator-elect

11  Rodriguez a senator, and the only thing left to do was to

12  have the term come into effect on January 9th of this

13  year.  That an oath was not a criteria for being a

14  senator.  That an oath is an internal workings of the 32nd

15  Legislature to give the members an oath so that they can

16  then begin to carry out their functions.  So we've always

17  submitted that it's within the Legislature's determination

18  as to time and manner when an oath would be given.

19         **SENATOR RIVERA-O'REILLY:**  Right.

20         **MR. JACKSON:**  The District Court unfortunately

21  took the position that the oath was a prerequisite to

22  actually becoming a member.  So we challenged that.  When

23  the case went to the Third Circuit, they didn't address

24  the issue directly of the oath.  They merely said that

25  come January 9th when the term came into effect, it was

1  for the Legislature to determine the qualifications of

2  their members.  That would also include whether or not

3  members had to take an oath before they became members.

4         So, if you will, that would be the case that we

5  would cite you to.  When the Third Circuit Court of

6  Appeals specifically states that the question of members

7  of the Legislature lies within the Legislature, not with

8  the courts.  Now whatever the court said before January

9  9th is not binding, if you will, or no longer applies once

10 the Legislature takes -- their term begins then the

11 Legislature makes that determination.

12        You can only judge members.  And, therefore, if

13 your judging senator-elect Rodriguez now that presupposes

14 that he 's a member, and that would suggest to us that an

15 oath is not a requirement to membership.  So if I may,

16 that's how I would interpret the case.

17        **SENATOR RIVERA-O'REILLY:**  Right.  That's your

18 interpretation.

19        **MR. JACKSON:**  Yes.

20        **SENATOR RIVERA-O'REILLY:**  Okay, very well.  We

21 will now move on to the next senator and that would be

22 Senator Roach for seven minutes.

23        **SENATOR ROACH:**  Thank you Madam Chair.

24        Mr. Rodriguez.

25        **MR. RODRIGUEZ:**  Yes, Senator.

1          **SENATOR ROACH:**  Good evening.  How you doing?

2          **MR. RODRIGUEZ:**  I'm well, Senator.

3          **SENATOR ROACH:**  Good.  I keep looking at your

4   son moving through the audience.  Could you tell me how

5   old he is?

6          **MR. RODRIGUEZ:**  He is eight.

7          **SENATOR ROACH:**  He's eight.  I thought he was

8   eight.  I was eight years old, I just turned eight when my

9   parents brought us to St. Thomas from St. Kitts.  And for

10  a very long time, whenever my parents talked about going

11  home it wasn't like from the supermarket they were going

12  home.  For a very long time whenever they talked about

13  going home, they talked about St. Kitts.  And for a very

14  long time St. Kitts was home even though I was living in

15  St. Thomas.

16          Until my grandparents died, they were living in

17  St. Kitts.  Until they died in 1978, St. Kitts was still

18  home.  Somewhere after they died, I started to think

19  differently about St. Kitts.  And I think when I went away

20  to school in 1979, and I started to talk about going home

21  then home became St. Thomas.  I was probably about 19 at

22  the time.  And I have to tell you that it has been

23  bothering me a little bit.  Not that it affects me and my

24  ability to do my job.  But it is has bothered me a little

25  bit to sit and to think about whether I should be telling

1   somebody born in St. Thomas that they can't represent

2   their island.  That has been bothering me.  And it's not

3   that I have an issue with qualifications and judging them

4   or evaluating them.  But in my core that has been on my

5   mind.

6            Now, I know what it's like to loose an election.

7   I lost two.  And I know what it's like to win an election,

8   and when I won the first time and my campaign headquarters

9   was in Back Street, I had to tell my supporters to get out

10  of the street.  It still had traffic coming through.  They

11  were dancing in the streets, because most if not all of

12  them had been with me on that journey from 2008 when we

13  lost and 2010 when we lost, and now we're in 2012 when we

14  won.  So I appreciate what Ms. Rodriguez said about what

15  it feels like when that hard work has paid off.  Separate

16  and a part from all this deliberation that we're doing

17  today, and I think sometimes we miss some of

18  those nuances.

19           Now I know your brother since we going to be

20  talking.  I know your brother.  We went to school from

21  when I was 11.  We've been going to school the same Wayne

22  Aspinall Junior High School from 11, and we graduated in

23  the same class of the Charlotte Amalie High School.  And

24  then we knew you as Michael's little brother, right?

25           **MR. RODRIGUEZ:**  Yes.