1          **SENATOR ROACH:**  But I think I can say that

2    neither you nor Michael, none of you, I would call a

3    friend.  We're not friends.  We don't sit down and have

4    conversations.  Michael and I haven't spoken about

5    anything from when we graduated.  As a matter of fact, in

6    this campaign he got all my class members to come to your

7    headquarters, and he didn't come to mine, right?  They all

8    went there and buy food.  He had a African fashion show

9    and all of this, and he didn't have nothing to my

10   headquarters and bring no supports my way.  He just

11   focused on you, and that's okay.  You're his brother.

12          Now, you might not remember this, but I remember

13   that when I was sworn in in January of 2013, somewhere

14   within that month or two you came to the office.  And you

15   were working for HOPE, and you came because you all were

16   working on some grant, and you were looking a letter of

17   support to get this grant to support whatever the work of

18   HOPE was.  That was January of 2013, and I remember that

19   specifically.  I also remember that in February we were

20   celebrating a mutual friend's 50th birthday.  I can't call

21   his name, because he ain't going to want his age to be on

22   the record.  But we were celebrating that birthday, and I

23   was scrolling through my Facebook, because I wanted to be

24   sure of the date.  We had taken a picture with a third

25   friend and that picture I had posted in Facebook -- on

1    Facebook in 2013, and I know we had spoken about your

2    coming home and about your intending to stay.  So I had

3    personal knowledge of what I think your intent was in

4    coming to St. Thomas -- coming back to St. Thomas.

5           Now, I also know how difficult it is to get

6    people to understand something.  That's been my challenge

7    from January, and there's been a lot of talk about it,

8    acquisitions throwing back and forth, who looking credit

9    all kind of thing been said, right?

10          **THE TIMEKEEPER:**  One minute thirty seconds.

11          **SENATOR ROACH:**  At no time did I ever say that

12   the Legislature should automatically seat you.  That has

13   never been the position of anybody on this side of the

14   aisle.  This what I wrote in a letter to President

15   Jackson.  I am -- this is February -- January 26, 2017.

16          *"I am convinced by my own review of the matter*

17   *and by the Legal Counsel's detailed review, that the*

18   *matter is appropriately within the province of the 32nd*

19   *Legislature now that the body has been convened.  I am*

20   *further convinced that this matter would become even more*

21   *entangled by the several legal actions being maintained*

22   *before the local courts which may lead to conflicting and*

23   *contradictory outcomes"*, right.

24          I say that to say that I think what plagues this

25   scenario now --

1              **THE TIMEKEEPER:**  Thirty seconds.

2              **SENATOR ROACH:**  -- is you're saying or your

3    completing a document that said you were a resident of one

4    place at the same time you were saying you are a resident

5    of this place.  And so what everybody out there says how

6    can you seat a person who makes these representations or

7    who lies.  How do you know if what he's going to tell you

8    when you speak in this Legislature is the truth versus

9    what he said before.  And I think that's the challenge to

10   get to the criteria to determining residency versus what

11   some of us may take as a moral or ethical issue.  And so I

12   had to explain to people try to understand to separate the

13   two things.

14             **THE TIMEKEEPER:**  Time.

15             **SENATOR ROACH:**  And Mr. Chair if I could

16   conclude.  So for me my recollection, my personal

17   involvement and interaction with you going back to then,

18   and coupled with some other things satisfy for me that I

19   can make a determination whether I believe that you --

20   that this was your bona fide residence at the time that

21   you filed those nomination papers in 2013.  But I think

22   you need to just say something on record about the people

23   who believe that somehow this reputation or this

24   disinclination to speak the truth is what they are

25   focusing on.  Speak to that for me on the Chair's time.

1           MR. RODRIGUEZ:  Well, Senator one of the things

2      I think where I probably went wrong, you know, they say

3      sometimes you have to be ahead of the story, because if

4      you don't get your story out first whatever story comes

5      out people believe.  And one of the premise I always lived

6      on and actually I was raised by that is my father always

7      told us once you tell me the truth I know how to protect

8      you.  And there was no need for me to lie to anyone

9      especially -- and I wanted to acknowledge my brother,

10     because my brother retired in December.

11           I didn't want to go to the Third Circuit.  I did

12     not.  I said Michael we don't have the money.  He said

13     Kevin we going because you know what, what they're doing

14     to you is unfair, and you didn't do anything wrong.  And

15     if I have to go and find another job to pay your legal

16     fees then I am going to do it.  We're going to Third

17     Circuit, and that's what my brother did.  My brother

18     retired from the federal court, and everybody knows he's a

19     championship writer for 30 something years.  He went back

20     to work, and everyday my brother would call me at 8:00 how

21     are you doing?  I'm going to work today.  So one of things

22     I held on to, and I know I have to build my -- the

23     reputation, because, you know, you have to have

24     conversation.

25           Another example, I met a guy in Diamond Barrel,

1    and he said I'm not going to vote for you.  But I took an

2    hour and a half to explain to him my story.  And he said

3    you know if you get elected the first thing I want you to

4    do is take one month off, but start your campaign again,

5    because you need to build your reputation.  So I know it's

6    a conversation, but I felt it fit in that when you going

7    through legal situations you try not to say too much

8    because you don't want to incriminate yourself.  Or you

9    don't even know what to say unless you're advised.  And so

10   I wanted to yield on the caution of let the court decide.

11   I'm going to provide my evidence and which I went to the

12   Superior Court.  I produced my evidence which she stated

13   that it was unrebutted witness testimony, Rodriguez

14   social, family, and professional relationship then to show

15   that the Virgin Islands was Rodriguez's intended domicile.

16   And so I believe in your words speak.  And so I'm not

17   going out there challenging people, but I know there are

18   going to come a point where I have to get my story out and

19   at that time I will.

20            SENATOR ROACH:  All right.  Thank you for your

21   response.  Thank you, Mr. Chair.

22            SENATOR FORDE:  Thank you Senator Roach.

23            Senator James, you're recognized for your seven

24   minutes.

25            SENATOR JAMES: Thank you very much, Mr.

1    Chairman.  And good night to you and good night to the

2    senators, and definitely a special good night to the

3    testifiers in particular senator-elect, winning candidate,

4    Kevin Rodriguez and those supporters in the back, those

5    viewing and listening.

6              Senator.

7              **MR. RODRIGUEZ:**  Yes, Senator.

8              **SENATOR JAMES:**  The reaction of the Majority

9    when Senator Francis found out that Judge Mackay had ruled

10   in your favor, what was that reaction?

11             **MR. RODRIGUEZ:**  Yeah.  Actually it was Senator

12   Francis did say you won, and then you guys were happy.

13             **SENATOR JAMES:**  Thank you very much.  I just

14   want to put that on the record.

15             **MR. RODRIGUEZ:**  Yes.

16             **SENATOR JAMES:**  I don't want the public to think

17   that I was saying --

18             **MR. RODRIGUEZ:**  You congratulated me.

19             **SENATOR JAMES:**  I was saying something earlier

20   that was inconsistent.  We were happy because, you know,

21   we had already made the commitment to each other and to be

22   in the caucus, and then the rulings came down three days

23   later and that's what we're dealing with now.

24             Attorney Jackson, good night.

25             **MR. JACKSON:**  Good night.

1          **SENATOR JAMES:**  Thank you for your service on

2    the constitutional convention back in the day.  The most

3    recent one, right?

4          **MR. JACKSON:**  Yes.

5          **SENATOR JAMES:**  Appreciate that.  And of course

6    Tito Morales my good friend, good to see you tonight here

7    in the well.  And I want Mrs. Rodriguez to know that what

8    Kevin did in that time of need every man instinctively

9    should do for their children, and I just want to put that

10   on the record.

11         **MS. RODRIGUEZ:**  Thank you.

12         **SENATOR JAMES:**  And Ms. Penn I never met you

13   before, but it's good to see you're here supporting Kevin,

14   all right.  However, the matter before us has to do with

15   6(b)of the Revised Organic Act, specifically the residency

16   requirement.  When you filed for bankruptcy you were

17   eligible for a homestead exemption in Tennessee?

18         **MR. RODRIGUEZ:**  I believe so.  I believe so.

19         **SENATOR JAMES:**  Because, we had bankruptcy laws

20   that changed in 2005, and in reading the new language for

21   the bankruptcy laws they are consistent with why I believe

22   you checked off some of these boxes.  For example under

23   the old law when you declared bankruptcy, the amount of

24   your home equity that was protected from creditors was

25   determined by the state where you filed.  In Florida for

1  instance, your home would have been entirely exempted even

2  if you bought it soon before filing.  The new law,

3  however, is more stringent about the homestead exemption.

4         For instance, if filers having lived in a state

5  for at least two years, they may only take the state

6  exemption of the state where they lived for the majority

7  of the time for the hundred and eighty days before the

8  two-year period.  And if their home was acquired less than

9  40 months before filing or if the filer has violated

10  security laws or have been found guilty of certain

11  criminal conduct, filers my only exempt up to 125,000

12  regardless of a state's exemption allowance.

13         So the reason why you checked off the boxes for

14  the hundred and eight days and you actually put down you

15  resided in Tennessee was because of the benefits that you

16  may have lost had it -- had you not stated that you lived

17  in Tennessee?

18         MR. RODRIGUEZ:  That's incorrect.  As I stated

19  earlier in my testimony, Senator, the only information I

20  provided to the attorney, they wanted my tax return, my

21  three tax returns, which I produced.  They wanted the

22  bills for which Kimberly had and also proof of income.

23  That was the only communication that we -- information

24  that we gave to them.

25         SENATOR JAMES:  But this doesn't have nothing to

1   with your tax returns.  This has to do with where you put

2   down you live so you could be eligible for the homestead

3   exemption.

4           MR. RODRIGUEZ:  Yeah, but that discussion was

5   not -- in further research, I discovered that Tennessee

6   and I'm assuming that the attorney, because he never had

7   that conversation, Tennessee of 1 of 18 states that has

8   homestead exemption, but that was never even discussed

9   with us.

10          SENATOR JAMES:  No, but here's what I'm trying

11  to tell you, because it look like you misinterpreting what

12  I'm saying.  Had you not checked over the last a hundred

13  and eighty days before filing this petition, *"I have lived*

14  *in this district longer than in any other district"*, you

15  would not have been eligible for this homestead exemption.

16  I'm serious, Senator.

17          MR. RODRIGUEZ:  So it's a statement or you

18  asking me the question?

19          SENATOR JAMES:  No, no.  I'm telling you that

20  what you checked off on your bankruptcy --

21          MR. RODRIGUEZ:  Oh, okay.

22          SENATOR JAMES:  -- proceeding is consistent with

23  the benefit that you would get if you did it.  Had you not

24  done it --

25          MR. RODRIGUEZ:  Okay.

1          **SENATOR JAMES:**  -- then you would not have

2    benefited from this homestead exemption.

3          **MR. RODRIGUEZ:**  Oh, okay.  I got what you're

4    saying.  I thought it was a question.

5          **SENATOR JAMES:**  And then it goes further, and

6    that's the reason why you checked off the other part with

7    respect to the three years.  Because if you had put down

8    the Virgin Islands then at that point, the local

9    bankruptcy laws would come into play, because it

10   specifically says they may only take the state exemption

11   of the state where they lived for the majority of the

12   time.

13          So I have good news and I have bad news.  The

14   good news is we've started the process, but I really

15   believe the bad news is it ain't going done tonight.

16   Because in fairness to you and due process on your

17   counsel, ayo need to answer to this particular part right

18   here, because one thing the counsel said earlier tonight,

19   our Legal Counsel --

20          **THE TIMEKEEPER:**  One minute thirty seconds.

21          **SENATOR JAMES:**  -- the last thing the

22   Legislature wants is to do anything that going to question

23   due process.  And based on this and the new law, the 2005

24   Bankruptcy Abuse Protection Act and Consumer Protection

25   Act and what you checked off knowing that you stated

1    tonight you were really living here, and I know you were

2    living here, because Senator James was the senate

3    president in the last Legislature; and I was the one who

4    signed off on staffing request when worked for Senator

5    Blyden and Senator Graham.  So there's no way that you

6    could have stated in January in Tennessee that you's a

7    resident of Tennessee when you know that you been here,

8    and you told me you were here from January of 2013.  But

9    you signed those documents because you wanted the

10   exemption that comes under the Bankruptcy Abuse Prevention

11   Act and Consumer Protection Act.

12            THE TIMEKEEPER:  Thirty seconds.

13            SENATOR JAMES:  That's why you did it.  It's

14   obvious.  So I believe we owe it to you, Attorney Jackson

15   and all your counsels.  This thing about well we got to

16   done it tonight and all that.  I don't play that one.  Ayo

17   know me already.  I know senators going around here with

18   the sanctimonious holier than thou.  They're all that and

19   they never do nothing wrong.  Everybody know me.  I don't

20   like to wear suit.  I plain as day, but I try to be as

21   well read as possible.  And Senator Rodriguez you know we

22   talked a lot when they were coming after you.

23            THE TIMEKEEPER:  Time.

24            SENATOR JAMES:  I didn't know who they was, but

25   they were coming after you.  And once we got the

1    documentation and based on the things you signed, because

2    there's no way Kevin Rodriguez in his right mind running

3    for senator and win in St. Thomas could file a bankruptcy

4    statement and say he reside in Tennessee.  That don't make

5    no sense at all.  You let me down, and you let down your

6    supporters.  All you had to say was I have two residence

7    not one in Tennessee and Tennessee only, and that's the

8    reason why we deh here now.  And I feel bad about that

9    because I know you'd been a good senator had you been

10   working from January.  And none of us created this

11   problem.  This problem was created because of

12   documentation.  A lot of the other senators they ain't

13   going to call a spade a spade and tell you they really

14   feel.  They playing games because of what side of the

15   aisle we deh on.  But I telling you now, Neville James is

16   upset that Kevin Rodriguez create this problem, and I feel

17   bad about it.  This could um-hm all they want.  They can't

18   cow me, and they know that.

19            And finally, when they run to the newspaper in

20   October of 2015 because they were trying to remove me as

21   president, the same senator they hugging up now over there

22   tell them I ain't turning on that man, and they know who I

23   talking about.  Thank you very much Mr. Chairman.

24            **MR. RODRIGUEZ:**  Can I answer, sir.

25            **SENATOR JAMES:**  Of course.

1          MR. RODRIGUEZ:  Senator, the home was already

2    foreclosed is September of 2014.  There was no homestead

3    exemption to be had in 2016.  So the bank had already

4    owned the house.

5          SENATOR JAMES:  Senator, senator, listen to me

6    carefully.

7          SENATOR FORDE:  Through the Chair, Senator

8    James.

9          SENATOR JAMES:  Let me respond to that, right.

10   Senator, it t'ain about the foreclosure.  It's about the

11   benefit.  Listen carefully to what I'm telling you.  They

12   make it clear here that in order -- if the homestead

13   exemption you were still trying to keep your home right or

14   wrong?

15         MR. RODRIGUEZ:  Yeah, but Senator --

16         SENATOR JAMES:  Yes or no.  You were still

17   trying to keep home, correct?  And you file Chapter 13,

18   correct?

19         MR. RODRIGUEZ:  No.  The reason why I did that

20   is in order for my family not to be evicted the following

21   day.

22         SENATOR JAMES:  B, no you do right thing deh.

23         SENATOR FORDE:   Senator James, your time has

24   been called.

25         SENATOR JAMES:  Thank you very much Mr.

1   Chairman.  You're absolutely right.

2              **SENATOR FORDE:**  Thank you.

3              **SENATOR JAMES:**  Please let him respond, please.

4              **SENATOR FORDE:**  You may respond on the Chair's

5   time.

6              **MR. RODRIGUEZ:**  Senator, I know mentioned that I

7   know and I wanted to get the -- but that is far from the

8   information that -- now you mentioned that I wanted to get

9   the homestead exemption that was a statement to me or you

10  said I just wanted to get it clear because --

11             **SENATOR FORDE:**  Mr. Rodriguez, you can respond

12  with your understanding of what it is.  You're not allowed

13  to question the senator.

14             **MR. RODRIGUEZ:**  Okay.  My understanding,

15  Senator, when I went to Nashville, Tennessee I did provide

16  both addresses.  I said I have a home in St. Thomas,

17  Virgin Islands and a home in Nashville, Tennessee for

18  which my family live, and that's why I went to file

19  bankruptcy.

20             Now when you looked at in bankruptcy in my

21  reading my limited experience in that, because I'm not an

22  expert.  When you file for bankruptcy is where the largest

23  asset is that you would file for it.  Now I provided my

24  attorney with the information.  And as indicated, it

25  stated that I had a house in St. Thomas, Virgin Islands if

1  you look at the application.  So there was no intent to
2  hide any information.
3       **SENATOR FORDE:**  Very well.  Thank you very much
4  for responses.  Senator Jackson, you're recognized for
5  your -- you're recognized.
6       **SENATOR JACKSON:**  Good evening.  Good evening
7  senator-elect Rodriguez, Mrs. Rodriguez, Attorney Jackson,
8  Ms. Penn, and Mr. Morales.  Good evening.
9       **THE TESTIFIERS:**  Good evening.
10       **SENATOR JACKSON:**  The -- over the last six
11  months I would have to say to you that it has really been
12  an ordeal.  Mr. Rodriguez and his family and our families
13  are all interconnected, and I considered Kevin Rodriguez a
14  friend and a good supporter.  And as we campaigned, we had
15  good fraternal and support of our respective campaign
16  workers, as well as the Democratic Party.  And of course
17  some of that has eroded over this process as accusations
18  and the intent of the Democratic Caucus to not seat Kevin
19  Rodriguez took its toll on the Party and the people of
20  this Virgin Islands, the tax payers, and the residents,
21  and the voter in reference to what direction the courts
22  went with this particular matter.
23       Earlier this -- today, I showed the book or the
24  program for the swearing in ceremony, and I personally
25  took a lot of time and advocated for the inclusion of

1    senator-elect Rodriguez through the process even during

2    the court proceedings and ended up in court, and not

3    represented, sent with after speaking to in-house Legal

4    Counsel without any representation to the Superior Court

5    on January 10th, not knowing to what extent I was going.

6            We've all been damaged through the process.  So

7    when you say don't take it personal, I'm taking it

8    personally, but there are the impacts and the wounds that

9    go with governance.  And I want to also do a shout out to

10   the families, to my family, to the Rodriguez families and

11   others and senators in this room who have also had to bear

12   the public ridicule, and the misfortunate tongue lashings

13   that has resulted out of this series of court cases as it

14   relates to seating senator-elect Kevin Rodriguez.

15           In going through the hundreds of pages that we

16   have been provided and the various court cases in the

17   Superior Court, *Sarauw v. Fawkes*, in the motion for

18   preliminary injunction, I thought that the examples that

19   were given in terms of how you look at a bona fide

20   resident was informative to me.  And it speaks to our

21   various aspects social, family, professional relationship,

22   housing, it continues to look at employment and it makes

23   references to many of the facts that have been presented

24   here.  Physical presence that speaks to the individual and

25   their presence in a particular location and then it's

1    social, family, and professional relations.

2         The one area that really had a I would say a

3    profound impact on looking at this discussion this evening

4    was on Page 16 of 28.  It says, "*However, Rodriguez has*

5    *not consistently observed other formalities of residency*

6    *since November of 2013.  For example, after being legally*

7    *registered to vote in Tennessee, Rodriguez did not*

8    *register to vote in the Virgin Islands until May 8, 2014.*"

9    Then it goes on to say that "*still community social*

10   *relationships are not the only types of relationships that*

11   *factor into residency calculous, marital, and family*

12   *relationship matters as well.*"  And it says, "*Rodriguez is*

13   *not legally separated from his wife and instead testified*

14   *they are an intact family unit and he has an intention to*

15   *remain married.  Since 2013, his wife and two children*

16   *have lived in the couples' marital home*" and it gives the

17   quote, the amount.  He states that the primary reason for

18   the -- his family has not moved to the Virgin Islands is

19   because the Virgin Islands does not offer appropriate

20   schooling to meet his sons needs, and then it goes on and

21   some of that was discussed this evening.

22        There is no indication that Rodriguez's wife has

23   any intention to live in the Virgin Islands in this brief

24   .  And then goes on to say that, "*While Rodriguez's*

25   *community involvement supports his bona fide residency,*

1    *the fact that the vast majority of his family unit, which*

2    *is comprised of Rodriguez, and his two children and his*

3    *wife reside in Tennessee cuts against the finding of bona*

4    *fide residency.  Consequently, the court finds that the*

5    *evidence regarding Rodriguez's social, family, and*

6    *professional relationships cut against the findings of*

7    *bona fide residency at least in as so much as plaintiffs*

8    *have a reasonable probability of success of showing that*

9    *he was not a bona fide resident during the requisite*

10   *period of time."*  It then goes on to say that in

11   reference--

12             **MS. WHITE-AMARO:**  One minute thirty seconds.

13             **SENATOR JACKSON:**    -- to the boxes that were on

14   the form, he -- Rodriguez had a choice of two boxes.  One

15   box states over the hundred and eighty days before filing

16   the petition.  I have lived in the district longer than

17   any other district.  The second box states I have another

18   reason despite two options Rodriguez selected the box that

19   stated that over the last 180 days he last lived in the

20   district longer than any other.

21             So my task and that's why I stepped down from

22   the seat, and Senator O'Reilly has been doing an awesome

23   job so that we could have transparency, and I could remove

24   myself given the history and the relationship that I've

25   had with senator-elect Rodriguez and our family

1    connections.   That also as it relates to the matters at

2    hand and residency how it's defined, the court looks at

3    the relationship between wife, children and location, and

4    I think he has articulated as well as his wife --

5              **THE TIMEKEEPER:**  Time.

6              **SENATOR JACKSON:**  -- if I may conclude -- that

7    they -- even though they have had issues, they're still a

8    couple, and they're still married and that they have two

9    children that they love, and that basically in the time of

10   need he came forward; and thus we're this evening.  As my

11   colleague stated an error was made, and we have to live

12   with the consequences of the things that we do.

13             And in closing I just want to read this.

14   Because on January 9th those of us that were sworn in had

15   to take an oath.

16             *"I _____ do solemnly swear or affirm that I*

17   *will support, obey, and defend the Constitution and laws*

18   *of the United States applicable to the Virgin Islands and*

19   *the laws of the Virgin Islands, and that I take this*

20   *obligation freely without any mental reservation or*

21   *purposes or evasion and that I would faithfully and*

22   *impartially discharge the duties of senator with*

23   *fidelity."*

24             Thank you, Madam Chair.

25             **SENATOR RIVERA-O'REILLY:**  It is absolutely my

1   pleasure Mr. President.  Before we go to our last speaker,

2   Senator Forde, Mr. Rodriguez when you in response to the

3   Majority Leader's question regarding the application or

4   the petition for bankruptcy in Tennessee you listed a

5   number of items that you said you were required to submit

6   to your attorney, one of which is the tax returns.

7           Can you tell us what or which tax returns you

8   submitted to your attorney for in support of your petition

9   for bankruptcy?

10          MR. RODRIGUEZ:  The tax returns -- the tax

11  returns that were submit are included in the exhibit.

12  Those are the identical tax return that I submit to the

13  attorney.

14          SENATOR RIVERA-O'REILLY:  The tax returns for

15  what years, sir?

16          MR. RODRIGUEZ:  2013, '14, and '15.

17          SENATOR RIVERA-O'REILLY:  So you submitted the

18  2013, 2014, and 2015 tax returns --

19          SENATOR RODRIGUEZ:  Yes, Senator.

20          SENATOR RIVERA-O'REILLY:  -- to your attorney in

21  Tennessee as part of the petition process for bankruptcy?

22          MR. RODRIGUEZ:  Yes, Senator.

23          SENATOR RIVERA-O'REILLY:  Okay, and that was

24  done in January --

25          MR. RODRIGUEZ:  Yes, Senator.

1        **SENATOR RIVERA-O'REILLY:**  -- of 2016, okay.  And
2   the actual tax returns, the one that you said are part of
3   the exhibit, are tax returns that were filed in the Virgin
4   Islands.
5        **MR. RODRIGUEZ:**  That's right, Senator.
6        **SENATOR RIVERA-O'REILLY:**  And those were filed
7   in February?
8        **MR. RODRIGUEZ:**  No, Senator --
9        **SENATOR RIVERA-O'REILLY:**  -- of 2016.
10       **MR. RODRIGUEZ:**  -- they were all stamped and I
11  could see the date stamp January 25th of 2016.
12       **SENATOR RIVERA-O'REILLY:**  So the tax returns
13  that were filed with the local government are dated the
14  same date as the petition for bankruptcy?
15       **MR. RODRIGUEZ:**  I had to -- no, no.
16       **SENATOR RIVERA-O'REILLY:** January 25, 2016 --
17       **MR. RODRIGUEZ:**  Yes.
18       **SENATOR RIVERA-O'REILLY:**  -- was the petition
19  for bankruptcy.
20       **MR. RODRIGUEZ:**  January what?
21       **SENATOR RIVERA-O'REILLY:** January 25, 2016.
22       **MR. RODRIGUEZ:**  The taxes were January 25, 2016
23  also.
24       **SENATOR RIVERA-O'REILLY:**  On the same date?
25       MR. RODRIGUEZ:  I don't know what day -- no, it

1   was done -- what I did is my tax return I did it through

2   Turbo Tax, and so I sent it and had it date stamped for

3   me.

4           SENATOR RIVERA-O'REILLY:  Who date stamped it

5   for you?

6           MR. RODRIGUEZ:  Huh?

7           SENATOR RIVERA-O'REILLY:  Who date stamped it

8   for you?

9           MR. RODRIGUEZ:  No, it was turned in date

10  stamped.

11          SENATOR RIVERA-O'REILLY:  Turned in to who?

12          MR. RODRIGUEZ:  To IRB.  IRB.

13          SENATOR RIVERA-O'REILLY:  So when you turn in a

14  tax return to IRB, there is someone there that stamps

15  the --

16          MR. RODRIGUEZ:  Yeah, the receptionist.  So when

17  we went into law office, one of the things -- actually

18  when we called them because their office was closed, they

19  told us one of the things that they wanted us to do is to

20  complete -- to provide them with our three taxes.  So at

21  which time I went up on Turbo Tax completed my taxes, and

22  then had them filed at IRB.

23          SENATOR RIVERA-O'REILLY:  So you did that on St.

24  Thomas?

25          MR. RODRIGUEZ:  Yes, that was filed in St.

1    Thomas, yes.  Date stamped in St. Thomas.

2           SENATOR RIVERA-O'REILLY:  And then you submitted

3    them to your attorney in Tennessee --

4           MR. RODRIGUEZ:  That's correct, Senator.

5           SENATOR RIVERA-O'REILLY:  -- via e-mail, fax

6    whatever?

7           MR. RODRIGUEZ:  Yes, Senator.

8           SENATOR RIVERA-O'REILLY:  So the tax returns

9    that were filed with the petition for bankruptcy on

10   January 25, 2016 in Tennessee, the one petition where you

11   state that you reside in Tennessee, the documents, the tax

12   returns were in fact Virgin Islands tax returns filed in

13   the Virgin Islands?

14          MR. RODRIGUEZ:   That's correct.  As indicated

15   they have my P.O. Box number and it says St. Thomas,

16   Virgin Islands.

17          SENATOR RIVERA-O'REILLY:  Very well.  And all

18   three were stamped the same date --

19          MR. RODRIGUEZ:  Yes, Senator.

20          SENATOR RIVERA-O'REILLY:  -- by someone at the

21   IRB?

22          MR. RODRIGUEZ:  Yes, Senator.  And I wanted to

23   bring to your attention you mentioned about the 1099 with

24   my signature on it.  A 1099 is not filed out by the

25   employer -- I mean the employee.  It's filled out by the

1    employer.  So that in itself the employer filled it out
2    and included my Tennessee address.  It was not filled out
3    by me.
4              SENATOR RIVERA-O'REILLY:  Right.  That was a
5    question asked by another member.
6              MR. RODRIGUEZ:  You had asked me that earlier in
7    the question.
8              SENATOR RIVERA-O'REILLY:  No, I never asked you
9    if you signed the 1099.
10             MR. RODRIGUEZ:  Oh, signed it.  That's what I
11   meant.  That's what I meant I didn't sign it, because I
12   didn't have to sign it because it was filled out by the
13   employer.
14             SENATOR RIVERA-O'REILLY:  That question was
15   asked by another member.
16             MR. RODRIGUEZ:  Okay, okay.
17             SENATOR RIVERA-O'REILLY:  Very well.  I
18   recognized now Senator Forde for his seven minutes.
19             SENATOR FORDE:  Thank you, Madam Chair.  Mr.
20   Rodriguez.
21             MR. RODRIGUEZ:  Yes, Senator.
22             SENATOR FORDE:  Do you feel that you were
23   treated fairly here this evening?
24             MR. RODRIGUEZ:  Fairly uses a question as
25   relatively depends how the circumstances and the

1    surrounding --

2              SENATOR FORDE:   Do you feel you were treated

3    unfairly --

4              MR. RODRIGUEZ:   -- is cultivated --

5              SENATOR FORDE:   -- this evening?

6              MR. RODRIGUEZ:   Well, that's the same -- I mean

7    the process is the process.   I'm in your house.   I have to

8    abide by the process and so for which I abide by the

9    process.

10             SENATOR FORDE:   Do you feel that there is some

11   conspiracy move ahead to exclude you from this body?

12             MR. RODRIGUEZ:   Senator, I can't state one

13   specifically.   You have to look at the whole situation.

14   I've heard so many things on the radio.   I heard so many

15   things on the street.   I heard so many things and

16   sometimes, you know, you then start to think what the

17   situation is.   Now I don't want to pinpoint and say there

18   was a conspiracy against me.   However, you know, there

19   were circumstances that I may say hmm, but to judge I'm

20   not here to judge.

21             SENATOR FORDE:   Okay.

22             MR. RODRIGUEZ:   To judge.

23             SENATOR FORDE:   Do you take any responsibility

24   for being here today?

25             MR. RODRIGUEZ:   I accept a hundred percent

1   responsibility for being here today.

2          SENATOR FORDE:  So do you have an appreciation

3   for the challenge which is before us?

4          MR. RODRIGUEZ:  Yes, Senator.

5          SENATOR FORDE:  Very well.  And having that

6   appreciate for that challenge then you must recognize that

7   no question asked is an indication that there's any

8   conspiracy against you.  I mean this what we are here to

9   do.  We are here to evaluate the qualifications

10  particularly as it relates to residency of you to take a

11  seat, is that correct?

12         MR. RODRIGUEZ:  Yes.

13         SENATOR FORDE:  You're understanding?

14         MR. RODRIGUEZ:  Yes, Senator.

15         SENATOR FORDE:  Very well.  How would you

16  respond to an individual who says that having being a

17  former Director of Personnel, former businessman, now even

18  an aspirant for the Legislature, that indeed you must be

19  somewhat aware of what you did in fact sign or not sign?

20         MR. RODRIGUEZ:  Senator, that is absolutely

21  correct.  However, you know, and many of us could attest

22  that often times we're not aware of what we really sign or

23  even certain things we pay closer attention to than

24  others.  So it's an human error that was made at that

25  time.

1      **SENATOR FORDE:**  Would you say that every action
2  to include even errors have a consequence?
3      **MR. RODRIGUEZ:**  Absolutely correct.
4      **SENATOR FORDE:**  And you've taken responsibility
5  for that?
6      **MR. RODRIGUEZ:**  Absolutely correct, Senator.
7      **SENATOR FORDE:**  If you had it all over to do
8  again what would you do differently?
9      **MR. RODRIGUEZ:**  Well, I would have read the
10  documents much more clearly and pay attention to the
11  information that was submitted, you know, and that's
12  hindsight.  I think about that everyday.  Had I had paid a
13  little bit more attention, you know the saying Women is
14  Mars men are from -- Women are from Venus and Men are from
15  Mars.  I mean I think that everyday.  I should have read
16  that document in its entirety, and I should have been able
17  to caught -- because as I learned of that information, the
18  first thing I did is I jumped on the phone, and I called
19  my attorney and I said what can we do to correct this.
20  And he said the case has been dissolved.  So there's
21  nothing you could do.  And there's -- I mean do you want
22  me to call.  He said you know what I'm not going even
23  dignify that with an answer.  And I'm not going to call
24  them and give them an explanation, because you have not
25  done anything wrong.  That was his words.  And so I took

1   that as -- as, you know, he's up there; I'm here.  But

2   what's on the street is a different situation, because

3   people they painted a picture like I committed a cardinal

4   sin, and, you know, we all make mistakes.

5          SENATOR FORDE:  Well, you know, it comes back to

6   the question though when I asked you about taking any

7   responsibility.

8          MR. RODRIGUEZ:  And I accept that

9   responsibility.

10          SENATOR FORDE:  Because I hear you keep saying I

11   have not done anything wrong.  Maybe you weren't intended

12   to do something wrong, but that doesn't mean that

13   something wrong was not done.  I mean it's not a crime.

14   Maybe not be a crime, it's not rape, it's not murder, it's

15   not stealing or anything of that nature, but that is not

16   to imply that something done was certainly incorrect.

17          MR. RODRIGUEZ:  And you're absolutely correct.

18   But senator as I think one thing was lacking in this

19   proceeding which would have been my expert witness who

20   could have explained a bankruptcy and the procedure and

21   the intricacies of bankruptcy where even in discussion and

22   my research, people make errors on bankruptcy forms.  As

23   my brother mentioned when he worked for the federal court,

24   this man forgot to put $16 million of his assets.  And all

25   they did is they called him in and he had to make a

1   correction, and that was it and that was $16 million.

2          And so, you know, in hindsight I wish I had read

3   it.  This is something I think over and over and over

4   again.  Many people suffered, the people of the Virgin

5   Islands, Janelle Sarauw.  All those persons who ran for

6   office.  It was my mistake.  I accept responsibility, but

7   I feel strongly that the mistake that I made was not bad

8   intention or anything to deceive the people of the Virgin

9   Islands, because that is not my personality or character

10  make up.

11         **SENATOR FORDE:**  What seems to be have been the

12  difficulty with getting Ms. Moses to change your Tennessee

13  address?

14         **MR. RODRIGUEZ:**  When you -- I would like to

15  answer that question.  When you know the nature of Ms.

16  Moses, I've known Ms. Moses for several years.  I've known

17  Ms. Moses even when there was a legal proceeding, because

18  I advised her not to do it.  So I know the nature of the

19  beast.  I know how she is.  I know the conniving -- many

20  employees Ms. Penn all the former employees can attest to

21  Ms.  Moses, and I want to use an example.

22         In order for us to get annual leave, not annual

23  leave, holiday.  It's a holiday we had to submit to her by

24  3:00 or 10:00 all the names of presidents with a W.  You

25  know that mental -- so one of the things that her and I

1   fell out was that because I had an HR background I would

2   champion the cause for the employees that working there

3   because many of them that was their only job.  And so

4   although we had a friendship I had to balance that with

5   what you're doing is wrong.  You should not be in an

6   environment for no employees to be hostile.  And there

7   were other personal things I don't want to --

8           **THE TIMEKEEPER:**  One minute thirty seconds.

9           **MR. RODRIGUEZ:**  -- bring out right now that we

10  had discussions about that you know we fell out.

11          I want to make one note, you know, even the note

12  was you caused her to loose the grant.  That was not true.

13  The grant was lost because of lack of documentation

14  provided to CDC which it would require financial

15  statements, and that was the reason why HOPE lost its

16  grant.  It was not Kevin Rodriguez cause HOPE to loose the

17  grant, and the board -- the former board director can

18  attest to that.

19          **SENATOR FORDE:**  All right.  My time is going to

20  run out now so I hope I get a chance.

21          Mr. Morales.

22          **MR. MORALES:**  Yes, sir.

23          **SENATOR FORDE:**  You did make mention in your

24  testimony that in fact you know this day will come to

25  pass, and you answered that question what you meant by

1    that.

2              THE TIMEKEEPER:  Thirty seconds.

3              SENATOR FORDE:  However, you also made mention

4    that it was your advice not to hire Mr. Rodriguez, is that

5    accurate?

6              MR. MORALES:  Yes.

7              SENATOR FORDE:  Why if having given him such an

8    outstanding review, why would you have made such a

9    recommendation not to hire him.

10             MR. MORALES:  Because I know the person --

11             THE TIMEKEEPER:  Time.

12             MR. MORALES:  -- he was going to deal with.

13             SENATOR FORDE:  So you would have deprived him

14   of earning a living, because you knew who he was going to

15   deal with?  Weren't you a member of the Board?

16             MR. MORALES:  Yes and let me explain you that as

17   a member of the Board.  During my time as a member of the

18   Board, Ms. Moses demand the Board.  No other board member

19   than me ever question Ms. Moses of her actions, and what

20   she was doing with this thing.  All the others agreed.

21             SENATOR FORDE:  Thank you very much.  My time

22   has been called.  Thank you, Madam Chair.

23             SENATOR RIVERA-O'REILLY:  You're welcome Senator

24   Forde.  Mr. Rodriguez --

25             MR. RODRIGUEZ:  Yes, Senator.

1          **SENATOR RIVERA-O'REILLY:**  It's my turn but I'm

2    not really going to exhaust all seven minutes.  Earlier

3    during your testimony or during the question and answer

4    segment, you explained that you were up against a deadline

5    with respect to the petition for bankruptcy --

6          **MR. RODRIGUEZ:**  Yes, Senator.

7          **SENATOR RIVERA-O'REILLY:**  In order to prevent

8    the eviction of your family.

9          **MR. RODRIGUEZ:**  Yes, Senator.

10         **SENATOR RIVERA-O'REILLY:**  And one of my

11   colleagues reminded me we believe that what you said was

12   that you ended up getting on a plane, you caught a bus, it

13   was a four-hour drive to get there to meet the deadline.

14   When was that?  What date was that?

15         **MR. RODRIGUEZ:**  That was January -- around the

16   same time January 24th a little earlier than that.

17         **SENATOR RIVERA-O'REILLY:**  So if you were in

18   Tennessee on January 24th how could you have then gone

19   into Turbo Tax from St. Thomas and completed your tax

20   returns and e-mailed them to your attorney in Tennessee?

21   How could you have been in two places at the same time?

22         **MR. RODRIGUEZ:**  No.  You can -- on Turbo Tax you

23   can fill out your taxes, and you can sign them.  I sent

24   them express to St. Thomas.

25         **SENATOR RIVERA-O'REILLY:**  What you said earlier

1    when I asked you the question was that you were on St.

2    Thomas that you completed the forms on Turbo Tax --

3           MR. RODRIGUEZ:  No.  I didn't say I was in St.

4    Thomas.

5           SENATOR RIVERA-O'REILLY:  -- and that you filed

6    them and that you e-mailed them or faxed them to your

7    attorney in Tennessee.  That's what you said.

8           MR. RODRIGUEZ:  Oh no, no.  I never said that.

9           SENATOR RIVERA-O'REILLY:  I can have the

10   transcriber reverse the transcript so that we can clarify

11   the record, because currently what's on the record is that

12   you were somehow able to be in both -- in two places at

13   the same time.

14          MR. RODRIGUEZ:  Well, let me --

15          SENATOR RIVERA-O'REILLY:  One person at the time

16   and perhaps that is not what you meant to say but that's

17   what you said.

18          MR. RODRIGUEZ:  Okay.  Well, let me --

19          SENATOR RIVERA-O'REILLY:  It's important that we

20   clarify the record.

21          MR. RODRIGUEZ:  Okay.  When we went in -- we

22   actually we got snowed in, and we know that we had to do

23   the taxes because that's a requirement on bankruptcy.  And

24   so I can tell you exactly where I did my Turbo Tax.  I did

25   it at -- in Brentwood at -- what those places -- at FedEX

1   computer company, because I didn't have my laptop with me.

2   And I did my Turbo Tax there, and we then took it, and I

3   sent the signed copy because we had to -- both of us had

4   to sign, and we expressed it to my brother-in-law who then

5   took the copies in -- oh, I'm sorry -- my brother-in-law

6   who then took the copies in, had them date stamped and

7   then he then sent -- I mean not faxed -- he then faxed it

8   to me and that's what I turned into the attorney.  But I

9   was in Nashville, Tennessee at that time.

10          **SENATOR RIVERA-O'REILLY:**  For 2015, 2014, 2013.

11          **MR. RODRIGUEZ:**  Yes, I did.  They were on the

12   computer at Turbo Tax.

13          **SENATOR RIVERA-O'REILLY:**  At the same time?

14          **MR. RODRIGUEZ:**  Well, one after the other.

15   Yeah.

16          **SENATOR RIVERA-O'REILLY:**  The same day?

17          **MR. RODRIGUEZ:**  Yes.

18          **SENATOR RIVERA-O'REILLY:**  So 2015 is signed

19   March 8, 2016.  The other two are dated and signed January

20   24, 2016.  2014 was signed January 24th that K. A. R. 28

21   that would be -- the 2013 was signed January 20th.  So if

22   you were at a Turbo Tax in Brentwood, and you completed

23   these at the computer all at the same time and you sent

24   them to your brother express mail, and he filed them at

25   the same time in the IRB, the 2015 is date stamped March

1    18, 2016 by the IRB.  The 2014 and the 2013 are both date
2    stamped January 25, 2016.
3             MR. RODRIGUEZ:  Okay.  So he made -- and I
4    believe I can explain this 2015, because I believe this --
5    the 1099 I did not receive because I know that I was
6    speaking with Ms. Lindy Sewer who was the payroll person
7    for HOPE, and we were going back and forth, because I
8    needed my tax -- was it this one?  I know there was one of
9    them.  I know there was one of them that I was talking to
10   her as it relates to her providing me with my 1099, but I
11   don't believe it was the 2013.  I may have submitted this
12   late, and I didn't look at the date, but I know I was
13   doing Turbo Tax right there at Brentwood at the FedEX
14   computer.
15            SENATOR RIVERA-O'REILLY:  So since you express
16   mailed to your brother but the date of stamp -- one of
17   them was stamped two months later.  Who submitted the 2015
18   tax return?
19            MR. RODRIGUEZ:  I would have -- I would have
20   probably submit this one, because I was in St. Thomas at
21   that time.  Yeah, the other two I know I was in Nashville,
22   Tennessee, and I know I was on Turbo Tax, because that's
23   how I did it.  We sent it express in order to get it
24   completed.  And so in 2000 -- for the 2015, I would have
25   submitted this because I was in the Virgin Islands.

1          **SENATOR RIVERA-O'REILLY:**  So then you only had

2   to submit two years of tax returns to your bankruptcy --

3          **MR. RODRIGUEZ:**  I've --

4          **SENATOR RIVERA-O'REILLY:**  Let me finish.  So

5   instead of three tax returns to your bankruptcy attorney

6   you only had to submit two?

7          **MR. RODRIGUEZ:**  I don't even remember it was --

8          **SENATOR RIVERA-O'REILLY:**  You have to speak into

9   the mic, Kimberly.  I'm sorry.

10         **MS. RODRIGUEZ:**  Oh, he had to fill out three,

11  submit three, but he couldn't control when IRB stamped

12  theirs.  He filed them, and he had to have proof that he

13  filed them.  Turbo Tax provided that proof that we took to

14  the attorney, but the two were date stamped.  The all

15  three were overnighted.  Two were immediately looks like

16  because of the dates stamped by IRB, but the third one did

17  not get stamped by IRB until March.

18         **SENATOR RIVERA-O'REILLY:**  But it wasn't signed

19  by Mr. Rodriguez until March also.

20         **MR. RODRIGUEZ:**  And I had to probably done this

21  one when I was here, because the other two was done -- if

22  you look at the two, when I was in Nashville, Tennessee

23  they were date stamped.  The date stamp which would

24  correlate with my time in Tennessee, because we had it's

25  all correlate where the sequence is you do your taxes; you

1    went into the attorney by the 26th.  It had to be filed

2    that evening, because the eviction notice would have been

3    on the door on the 27th.  So those two correlate with that

4    timing.

5              This one had to have probably been when I was in

6    St. Thomas, because it's in March and I was here, and I

7    may have taken them -- well I took them in and got them

8    stamped, got it stamped.

9              SENATOR RIVERA-O'REILLY:  Okay.  Thanks for that

10   explanation.  I believe that all -- all senators have had

11   an opportunity to ask their questions.  And so I just have

12   three items that I'd like to make sure we address, and

13   that would be to Mr. Rodriguez.  There any documents that

14   you would like to enter into the record that you haven't

15   already done?  We have this.  Any other documents that you

16   desire to enter into the record as a result of tonight's

17   discussion?

18             MR. JACKSON:  If I may respond senator, I did

19   suggest earlier that I could give you the original as

20   opposed to the copy of the Board of Elections

21   certification results.  I don't know if that would be

22   better than just copy that's contained in the exhibits.

23   But it would be the same as in the exhibit.

24             SENATOR RIVERA-O'REILLY:  But you're not going

25   to leave the original with us would you?  Will you?

1          MR. RODRIGUEZ:  It's just a colored copy.

2          SENATOR RIVERA-O'REILLY:  Okay.

3          MR. JACKSON:  It's just a better copy.

4          SENATOR RIVERA-O'REILLY:  Very well.

5          MR. JACKSON:  I can present that.

6          SENATOR RIVERA-O'REILLY:  Very well.  That would

7    then be -- that would be entered into the record.  And

8    that takes care of that.  Someone will retrieve that from

9    you.  What is the status of the home now?  Are you still

10   in the home?

11         MS. RODRIGUEZ:  No, ma'am.  On February 15th we

12   had to relinquish possession of the home and --

13         SENATOR RIVERA-O'REILLY:  I'm sorry if that

14   question was asked and answered.  Did you ever submit any

15   -- any utility bills to the Supervisor of the Election as

16   through the transcript it appears that you did not.  Did

17   you ever submit any utility bills?

18         MR. RODRIGUEZ:  No.

19         SENATOR RIVERA-O'REILLY:  You don't have any?

20         MR. RODRIGUEZ:  It's submitted -- I submitted

21   the utility bills in court and also there in this packet

22   submitted to the Legislature.

23         SENATOR RIVERA-O'REILLY:  Do you know do you

24   have any utility bills that are dated back to May 2013 I

25   have not gone through this entire document.

1          **MR. RODRIGUEZ:**  Electric bill.  And then --

2          **SENATOR RIVERA-O'REILLY:**  Prior to 2013?

3          **MR. RODRIGUEZ:**  The utility bill would be the

4    electrical bill.

5          **SENATOR RIVERA-O'REILLY:**  From 2013.

6          **MR. RODRIGUEZ:**  I have a electrical bill on

7    2013, yes.

8          **SENATOR RIVERA-O'REILLY:**  Got you.  Okay, very

9    well.  And then the very last question is do you agree

10   that this body must take into consideration any and all

11   prior representations that you have made as to your place

12   of residency?

13         **MR. RODRIGUEZ:**  No.  According to the Revised

14   Organic Act as stated, a person shall be eligible to be a

15   member of the Legislature and those are the six

16   requirements.  And as stated by counsel, legislative

17   counsel, by my counsel the only thing is in front of this

18   body should be the requirement as set forth in the Organic

19   Act.

20         **SENATOR RIVERA-O'REILLY:**  So nothing else that

21   you have said or represented in any other institution in

22   whether it's the bankruptcy documents, whether it's the

23   testimony before any of the courts, the fact that you got

24   a driver's license in July of 2016, none of those we

25   should not consider, in your opinion, any of those?

1          **MR. RODRIGUEZ:**  You're correct, Senator.  And

2    the reason why I say that is the requirement for the Board

3    of Election is your U.S. citizenship.  It's not a driver's

4    license.  I didn't have a car in the Virgin Islands.  So

5    there was no need to even change -- I drove.  I mean I

6    would rent -- probably borrow a car here and there.  As

7    Ms. Scipio indicated she gave me a ride sometimes.  I may

8    have, you know, had to catch a ride or if I don't get a

9    ride I don't go anywhere, because I don't --

10         **SENATOR RIVERA-O'REILLY:**  So you used your

11   Tennessee driver's license as your form of identification?

12         **MR. RODRIGUEZ:**  Pardon me?

13         **SENATOR RIVERA-O'REILLY:**  You used your

14   Tennessee driver's license as your form of identification

15   while you were in the Virgin Islands without a driver's

16   license?

17         **MR. RODRIGUEZ:**  A passport.  I used passport.

18         **SENATOR RIVERA-O'REILLY:**  You walked with your

19   passport and used that as your ID everywhere you went?

20         **MR. RODRIGUEZ:**  No.  Well the only time you need

21   an ID if you're going to do business that requires an ID.

22   So then you would walk with a --

23         **SENATOR RIVERA-O'REILLY:**  Cash a check?

24         **MR. RODRIGUEZ:**  Well, I didn't cash a check.

25         **SENATOR RIVERA-O'REILLY:**  Okay.  Very well.  So

1  now that all of the members have had an opportunity to

2  query you, there is -- we have one more block remaining of

3  residents that have asked to testify, and we would take a

4  20-minute recess and return to conclude tonight

5  proceeding.

6            The Committee is in recess for ten minutes.

7

8            (Regular Session/Committee of the Whole stands

9  in recess.)

10            (WHEREUPON, I, Nataya A. M. Munoz, was relieved

11  by Verna Turnbull-Carty.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              TERRITORY OF THE VIRGIN ISLANDS)
                                             )Ss:
2              DIVISION OF ST. THOMAS/ST. JOHN)

3

4                   C-E-R-T-I-F-I-C-A-T-E

5              I, **NATAYA A. M. MUNOZ**, Legislative Reporter,

6    Division of St. Thomas/St. John hereby certify that I

7    reported, by machine shorthand, stenographically, the

8    proceedings given at the Earle B. Ottley Legislative Hall

9    held on June 27, 2017, on the island of St. Thomas.

10             I **FURTHER CERTIFY** that the foregoing 119 pages

11   constitute a true and accurate transcript of said

12   proceedings as taken by me from my stenographic notes and

13   thereafter transcribed.

14

15

16

17

18

19

20

21

22

23

24

25