# EXHIBIT Z 1

32ND LEGISLATURE OF THE UNITED STATES VIRGIN ISLANDS
Charlotte Amalie, St. Thomas


REGULAR SESSION
Part 5
June 27, 2017
Earle B. Ottley Legislative Hall
St. Thomas, U.S. Virgin Islands


SENATORS PRESENT:

SENATOR MYRON D. JACKSON - President
SENATOR NEREIDA RIVERA-O'REILLY - Vice President
SENATOR MARVIN BLYDEN
SENATOR DWAYNE DEGRAFF
SENATOR JEAN FORDE
SENATOR NOVELLE FRANCIS, JR.
SENATOR ALICIA HANSEN
SENATOR NEVILLE JAMES
SENATOR JANETTE MILLIN YOUNG
SENATOR POSITIVE T.A. NELSON
SENATOR TREGENZA ROACH
SENATOR SAMMUEL SANES
SENATOR BRIAN SMITH
SENATOR KURT VIALET

3                                                                    2

INDEX

Consideration of Block Number 4:
    Ms. Ivy Moses - Resident
    Ms. Janelle K. Sarauw - Resident
    Ms. Bridgette Berry - President
    Mr. Glen Smith - Resident

1.    Statement by Ms. Ivy Moses.................    4/5

2.    Statement by Ms. Janelle Sarauw...........    8

3.    Question/Answer Segment:

        Senator Roach..............................    15
        Senator Hansen.............................    19
        Senator Millin Young.......................    22
        Senator DeGraff............................    25
        Senator Nelson.............................    29
        Senator Sanes..............................    34
        Senator Smith..............................    37
        Senator Francis, Jr........................    41
        Senator Blyden.............................    45
        Senator Vialet.............................    48
        Senator James..............................    52
        Senator Forde..............................    55
        Senator Jackson............................    60

4.    Closing Remarks by Attorney Francis Jackson..    64

5.    Closing Remarks by Senator-Elect
      Kevin Rodriquez..............................    70

6.    Conclusion...................................    76

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ══════3

1       SENATOR RIVERA-O'REILLY CHAIRING MEETING...

2              SENATOR RIVERA-O'REILLY:  We are back on the

3    record.  Madam Clerk would you please read the last block of the

4    agenda into the record?

5              MS. WARNER:  Block 4. Invited testifiers:  Ms. Ivy

6    Moses - Resident; Ms. Bridgette Berry - Resident, Ms. Janelle K.

7    Sarauw - Resident; Mr. Glen Smith - Resident.

8              SENATOR RIVERA-O'REILLY:  Thank you Madam Clerk. In

9    addition to the testifiers that were just called, Mr. Kevin

10   Rodriquez as well as his counsel are also afforded the

11   opportunity to join us and remain in the well while the

12   testifiers offer their testimony.  This will allow also for Mr.

13   Rodriquez and his counsel to offer any closing remarks and offer

14   any statements to clarify any comments made by the testifiers

15   regarding the issue.

16              I am speaking very slowly because I am trying to

17   give Mr. Rodriquez and his counsel the time to walk into the

18   well and join us.  Mr. Glen Smith is not testifying?  Very well

19   then. Mr. Rodriquez is going to join us with his counsel.

20              Good evening ladies.  Welcome.  You have been here

21   a long time.  We appreciate your patience.  Attorney Jackson

22   will you be joining your client?

23              ATTORNEY JACKSON: Yes.

24              SENATOR RIVERA-O'REILLY:  As we promised earlier

25   you will be given an opportunity to offer closing remarks in

═══════VERNA TURNBULL-CARTY - Legislative Reporter ═══════

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ════4═

1   response to anything that is said by the testifiers.  Okay?

2              ATTORNEY JACKSON: Thank you.

3              SENATOR RIVERA-O'REILLY:  So we will ask the

4   testifiers before they begin to state their name and title for

5   the record.  And we will begin with Ms. Ivy Moses.

6              MS. MOSES: Ivy Moses. Founder and CEO of HOPE Inc.

7              MS. SARAUW: Janelle Sarauw - Resident.

8              SENATOR RIVERA-O'REILLY: Ms. Moses you can proceed

9   with your testimony please.

10             MS. MOSES:  This is the testimony of IVY Moses.

11  LMSWRN.  Founder and CEO of Helping Others in a Positive

12  Environment Incorporated.  To the 32nd Legislature of the Virgin

13  Islands of the United States meeting in Committee of the Whole

14  June 27th, 2017. And I'll read verbatim.

15             Good afternoon Honorable Senate President Myron

16  Jackson, Honorable Senators of the St. Thomas St. John District

17  and the District of St. Croix --

18             TESTIFIERS SWORN.......

19             SENATOR RIVERA-O'REILLY:  I'm sorry Ms. Moses it's

20  getting late. I'm going to need both of you; both Ms. Sarauw and

21  you to please stand and raise your right hand.  Do you solemnly

22  affirm that the testimony that you are about to present here

23  tonight is the truth, the whole truth and nothing but the truth

24  so help you God?

25             TESTIFIERS RESPOND:

═══════VERNA TURNBULL-CARTY - Legislative Reporter ═══

1        MS. MOSES:  Yes.

2        MS. SARAUW:  I do.

3        SENATOR RIVERA-O'REILLY: You may be seated.  And

4   you can resume Ms. Moses. I apologize.

5        MS. MOSES:  Good afternoon Honorable Senate

6   President Myron Jackson, Honorable Senators of the St.

7   Thomas/St. John District and the District of St. Croix, Attorney

8   General Claude Walker, State Chair of the Democratic Party and

9   former congresswoman Donna M. Christensen, invited testifiers,

10  the listening audience and the viewing audience.

11       My name is Ivy Moses. I am a native St. Johnian who

12  have had the pleasure of wearing several hats in the Virgin

13  Islands community.  Each of them I wear with pride as each hold

14  a semblance of responsibility focused on moving the Virgin

15  Islands community forward and to a better place.

16       I am a social worker, a registered nurse, District

17  Chair of the St. Thomas -- sorry.  District Chair of the St.

18  John District Democrat Committee, sitting member of the St.

19  Thomas/St. John District board of Elections and founder and CEO

20  of Helping Others in a Positive Environment better known as HOPE

21  Inc or the HOPE Clinic -  a non-profit clinic that has provided

22  primarily free and sometimes reduced cost to HIV, heart disease,

23  hypertension, diabetes and obesity prevention services

24  throughout the Territory to over thirty thousand individuals

25  within the past 17 years.   This year alone HOPE has had the

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ═══6═

1  pleasure of providing services, educating and managing health

2  services to more than eight hundred individuals at risk for

3  preventable chronic diseases on the islands of St. Thomas, St.

4  John and St. Croix.

5          Unfortunately due to concerns related to funding

6  caused by an inability to receive funding for a grant that was

7  approved but not funded by the Centers for Disease Control and

8  Prevention as well as overhead cost, the HOPE Clinic was forced

9  to take an unfortunate hiatus on May 31st 2017, causing

10  interruption to much needed chronic disease prevention services

11  to include testing for HIV, blood pressure screenings and

12  glucose screenings territorial wide.

13          I was invited and accepted the invitation to speak

14  to the members of the 27th (sic) Legislature specific to the

15  role of Mr. Kevin Rodriquez and his affiliation or in this case,

16  past affiliation with HOPE Inc.  Specifically the personal

17  address -- to personally address that Mr. Rodriquez used --

18  specifically the personal address that Mr. Rodriquez used as a

19  contractual worker with HOPE Inc.  I will only be available for

20  a short period of time after today's testimony to answer

21  questions as a close family member after just under a week in

22  the intensive care unit was released to the medical unit at the

23  Roy L. Schneider Hospital where he received and continues to

24  receive excellent care and services from the dedicated and

25  committed staff members of the Myrah Keating Smith Health

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017━━━━7━

1  Center, the Roy L. Schneider Hospital emergency room staff as

2  well as the intensive care unit.

3           In 2004/2005 bonded as friends and remained friends

4  through many hurdles that Mr. Kevin Rodriquez went through until

5  2014.  In 2012, I agreed to employ Mr. Rodriquez at HOPE Inc to

6  set up a much needed men's health program in a temporary

7  contractual position as the men's health coordinator.  Mr.

8  Rodriquez' initial contract was specific to one year: January to

9  December 2013. The contract was specific to setting up a men's

10 men health program for men at risk, for HIV, diabetes,

11 hypertension and obesity.

12          After twelve months of paying Mr. Rodriquez sixty

13 thousand dollars as a contractor, Mr. Rodriquez requested an

14 extension of the contract.  The extension was for one additional

15 year. At the end of the second year, HOPE still did not have a

16 viable men's health program.  In 2015 Mr. Rodriquez requested an

17 additional three-month contract with HOPE with the promise that

18 he would conduct four men's health sessions at UVI and in the

19 community.  Despite the fact that after two years his

20 performance was minimum, I allowed Mr. Rodriquez under the

21 supervision of the Prevention Program Director to try to do as

22 he promised.  Needless to say, Mr. Rodriquez had to be

23 terminated in April 2015.

24          While I will not be able to release tax

25 documentation, I can and have released the 2013 contract

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ===8 ==

1  agreement that specifies Mr. Rodriquez' role at HOPE Inc, the

2  2014 Extension of Contract and Final Check Notice, all of which

3  were addressed to Nashville, Tennessee.

4       I hope that what I have said today will assist in

5  making the decision right.  Please feel free to ask me any

6  question that you may wish as it pertains to this issue at hand.

7  I will be more than happy to answer all questions.

8       SENATOR RIVERA-O'REILLY:  Thank you Ms. Moses.

9  Ms. Sarauw?

10       MS. SARAUW: Good evening to the Senate Body, those

11  in the chambers and those listening and viewing. I am Janelle K.

12  Sarauw.  On November 21st, 2016, the Forward Movement Team

13  received an anonymous email that contained Mr. Kevin Rodriquez'

14  bankruptcy documents.   The attachment contained detailed

15  reports of the four bankruptcy filings over a six-year period.

16  It was only a matter of hours in which the information and the

17  reports were validated and a challenge of his residency claim

18  was hand-delivered to the Board of Elections that very same day

19  with a copy mailed and emailed to Ms. Caroline Fawkes.  The

20  Forward Movement Team maintains that Mr. Rodriquez does not meet

21  the eligibility requirements detailed in the Revised Organic Act

22  as it pertains to one being a bona fide resident of the Virgin

23  Islands for three years preceding the date of the election.

24       Contrary to what propaganda would have you believe,

25  this challenge was submitted to the board prior to the

VERNA TURNBULL-CARTY - Legislative Reporter

1  certification of the general election. Per Title 18, Chapter 3,

2  Subsection 47, Item 8. "After the challenge the board must

3  investigate irregularities".  And this was not done.

4         On November 22nd, 2016, with the challenge in hand,

5  Mr. Watlington's response was a resounding dismissal of the

6  challenge. He threw the paper on the side and said take it to

7  court.  And we did.

8         On November 22nd, 2016, the Board of Election with

9  a valid challenge in hand voted to certify the general election.

10 Later during the court proceedings Mr. Fawkes proclaimed to not

11 have addressed the challenge due to timeliness. However in the

12 Bryan case the Supreme Court wrote:   "Notably the Superior

13 Court in the well reasoned decision issued more than three

14 decades ago previously explained that Section 411B authorized

15 the Supervisor of Elections to continue to view a candidate's

16 qualifications notwithstanding the deemed to be valid provisions

17 of Section 412".

18        One cannot determine new information or when it

19 will be received as supported in the Bryan case.  Furthermore,

20 does the concern of timeliness supercede adhering to the laws of

21 the Virgin Islands as described in the Revised Organic Act?  The

22 ROA provides that the Board of Elections is charged with the

23 duty of directing the administration of the electoral system of

24 the Virgin Islands.  At the outset of the election process, the

25 Board of Elections a popularly elected and independent entity is

1  in power to determine a candidate's qualifications.

2  Title 18 says that the board is authorized to
3  determine that a candidate for election or nomination does not
4  meet the qualifications established by law for the office and
5  disqualifies such candidate from an election.  Bryan v. Fawkes
6  also state that the power to determine whether a candidate meets
7  the minimum qualifications for office so as to appear on a
8  general election ballot is clearly not exclusive to the
9  Legislature.  Once the election occurs the Board of Elections
10  has the power to certify the results.

11  Between the certification of the election and the
12  time the Legislature convenes, a court may review election
13  challenges that may change the results of the election which may
14  occur.  For example if there has been fraud.

15  Needless to say, after months of legal wrangling, a
16  Special Election was called. The very same Board of Election
17  came before this Body requesting an appropriation of funds to
18  carry out the Special Election.  Where were their concerns of
19  certifying a new election then?  Where were the concerns from
20  the board about decertifying Mr. Rodriquez when they sanctioned
21  14 candidates to run in the Special Election.

22  Ninety thousand was appropriated by this Body and
23  on April 8th, 2017, a Special Election was held and a winner
24  declared.  But of course the legal wrangling will continue
25  shifting the issue from that of residency to jurisdiction.  And

1    now here we are at this juncture.

2            What we face at this moment is truly a threat to

3    our democracy.  The truth of the matter is that at some point

4    each agency or branch had jurisdiction over this matter.  The

5    Democratic Party disenfranchised other party members when they

6    allowed someone ineligible to run in their Party's Primary.

7    The Board of Election failed miserably at the task at hand.

8    The Superior Court was asked by the Supreme Court to apply the

9    proper test and that was not done prior to the removal of the

10   case at the District Court.  This Body also had a duty.  And the

11   candidate in question was also not truthful in his statements

12   before the courts.

13           As unpopular as the position my team and I took, it

14   was a necessary one.  It is and always has been a position for

15   transparency and accountability.  A position for a Virgin

16   Islands our generation will undoubtedly inherit, a position for

17   a fair and honest Virgin Islands. And so on this position we

18   could not be silent.

19           From the pulpit Dr. King stated there comes a time

20   when silence is not an option. There comes a time when silence

21   is betrayal. It is in this faith we spoke up.  Despite the

22   naysayers, slanderers and threats, the Forward Movement Team

23   exhibited the courage to act, pursuing justice regardless of how

24   difficult, for the endearing benefit of a better Virgin Islands.

25           We cannot fail to identify that despite what is

1  best for the people of the Virgin Islands on a whole, Party

2  leaders and loyalists continue to deflect the root cause of the

3  problem. They have conveniently switched the topic of the

4  argument to who should decide the fate of Mr. Rodriquez, not at

5  all addressing the crux of the matter which is that Mr.

6  Rodriquez, under oath, claimed he was a resident of the state of

7  Tennessee in order to receive the full benefits the laws of that

8  state affords. We cannot omit such a crucial detail; for it is

9  the reason why we are caught up in this election debacle in the

10  first place.

11          In making your decision today, there are key

12  questions one must ask.  One. When Mr. Rodriquez during his

13  financial hardship returned to the Territory to work at HOPE

14  Inc, what address did he list on file?  No matter how many

15  people tetify in this chamber that Ms. Rodriquez was seen living

16  and working here, it does not mean he was a resident.

17          To give an example.  Is a travelling nurse a

18  resident?  A travelling nurse would live and work here, but are

19  they a resident?  Many locals in the jewelry industry leave to

20  work seasonally in Alaska during the Summer. Are they now

21  residents of the state of Alaska?  The answer is no.

22  Contracted employees are deployed to various corners of the

23  earth to work.  What determines their residency and the benefits

24  associated with such?

25          Mr. Rodriquez as he testified in court came here to

1  work because he was experiencing financial hardships in

2  Tennessee.  His domicile was in Tennessee.  Per Section 18 262

3  of the Code, there can be but one domicile or residence which is

4  the place a person habitually resides when not called elsewhere

5  for work or for some other temporary purpose.

6           In addition it states: Domicile cannot be lost

7  until a new one has been acquired.  When did Mr. Rodriquez

8  reestablish his domicile or residence in the Virgin Islands?

9  Two.  When were his tax returns filed?  Three.  When did Mr.

10  Rodriquez obtain a V.I. Driver's License?  Do you know that

11  according to Tennessee law, possession of a driver's license

12  among other documents indicate proof of residency.  Is it safe

13  to assume that his Tennessee license was not switched out until

14  last July because he needed it as as one of the documents during

15  his bankruptcy proceedings in Tennessee?  Four.  On his

16  bankruptcy documents, where are 90 percent of his creditors

17  located? They are not in the Virgin Islands. They are in the

18  state of Tennessee.  Five. Are you aware that in May of 2016,

19  another case was filed by Mr. Rodriquez and he won a settlement

20  in Tennessee where he swore again that he was a resident of the

21  state and then just two weeks later filed nomination papers here

22  in the Board of Elections alleging that he was a resident of

23  this Territory.

24           The questions posed are not personal.  They are not

25  an attack on Mr. Rodriquez. I am not celebrating or rejoicing on

1   the many hard times he fell on because we all endure financial

2   tribulations. This case is not about that.  It's about the law.

3   Do we bend and twist the law to suit us? Do we abrogate the

4   tenants of the Revised Organic Act for our personal gain?

5   Despite Party politics, fourteen of you are here representing

6   one hundred and ten thousand people. And it's incumbent for you

7   as the lawmaking Body to make the best decision that will not

8   lead to further ramifications.  It is unbelievable that I am

9   here in this hall giving testimony regarding someone's sworn

10  statements.  Not mine, but his.

11          Every time Mr. Rodriquez was asked where do you

12  live?  Where have you lived in the past three years?  Where

13  have you resided in the past 180 days?  What is your address?

14  It was always Tennessee.  The only time, the only time -- the

15  Virgin Islands was claimed as a place of residence was for

16  election purposes, to run for office.  This precedential vote

17  today dares to raise the question, some of the most fundamental

18  of our time. Is one nation under God with liberty and justice

19  for all still possible?  Is the Virgin Islands with the motto

20  "United in Pride and Hope" still possible?  Do the laws of the

21  land as described in the Revised Organic Act apply to all of us

22  or just the rest of us?  This is not a complicated matter at

23  all. Smoke screens and a series of inconsistent testimonies have

24  been laid to make this seem unclear.

25          Now we the people are left to ask, what would really

1  prevent our representatives from making a sound judgment in

2  regards to upholding the laws of these U.S. Virgin Islands?  It

3  is my fervent hope that Party politics do not prevail over

4  territorial health.  I'm open for any questions.  Thank you.

5          SENATOR RIVERA-O'REILLY:  Thank you Ms. Sarauw.  We

6  will begin with a five-minute round.  And we will start with

7  Senator Roach.  We're going to work our way down all the way

8  around.  And once we have completed that round we will allow for

9  Attorney Jackson and his client Mr. Rodriquez to place their

10  closing comments on the record.  Is that fair enough?

11          ATTORNEY JACKSON:  Yes thank you.

12          SENATOR RIVERA-O'REILLY:  Very well.  Attorney

13  Roach.  Senator Roach, Attorney Roach.

14          SENATOR ROACH: Thank you Madam Chair.  Good evening

15  to the last round of testifiers.  Ms. Sarauw?

16          MS. SARAUW: Good evening.

17          SENATOR ROACH: How are you?

18          MS. SARAUW: I'm well. How are you?

19          SENATOR ROACH:  Good. Good thanks. I want to say as

20  I have said to you and on the record that I commend both you and

21  Mr. Rodriquez because I believe that if you believe in

22  something, you ought to go the length.  You ought to go the

23  distance. And so you believe that a violation of law has taken

24  place and you have turned every stone to come to a resolution.

25  And Mr. Rodriquez has done the same.

```
 1              Ms. Moses, how are you?

 2              MS. MOSES:  I am excellent.

 3              SENATOR ROACH: Good.  Now you indicated that you

 4    are a member of the St. Thomas/St. John Board - District Board

 5    of Election, correct?

 6              MS. MOSES: Correct.

 7              SENATOR ROACH:  When were you elected to the board?

 8              MS. MOSES: 2014.

 9              SENATOR ROACH: 2014.  And you were the Director of

10    HOPE --

11              MS. MOSES:  Correct.

12              SENATOR ROACH:   -- in January of 2013 when Mr.

13    Rodriquez began working there, correct?

14              MS. MOSES:  Correct.

15              SENATOR ROACH:  Okay.  Now you say at the end of

16    your testimony, you addressed an issue that we've been talking

17    about consistently throughout the proceeding and that is whether

18    Mr. Rodriquez was a contractor or an employee at HOPE.  And your

19    from your knowledge he was a consultant and not a permanent

20    employee, correct?

21              MS. MOSES: Every document that I have and I believe

22    that it should have been --

23              SENATOR ROACH:  Hold the microphone up a little.  I

24    don't think you're being picked up.

25              MS. MOSES:  All documents that I have and I have
```

1   Mr. Rodriquez' personnel file here on hand, every document that

2   I have on hand states very clearly that Mr. Rodriquez was hired

3   and remained a contractor until the termination date.  There was

4   one lapse in the contract.  And that is when Mr. Rodriquez I

5   believe went to work for the Attorney General's Office where he

6   was shortly terminated in January.

7               SENATOR ROACH:  Okay.  So you believe that when he

8   was working for you and he began working for HOPE in 2013 and

9   for that year, you do not believe that he was a resident of the

10  Virgin Islands; is that correct?

11              MS. MOSES: He was not.

12              SENATOR ROACH:  Okay. So then I have to ask you

13  this question.  As a member of the Board of Elections who has

14  the responsibility I believe with the Supervisor of Elections

15  and I think most persons would agree, to be sure.  I think all

16  of us as Senators we get blame for one another, right?  And so

17  my only question to you would be, if you believed that Mr.

18  Rodriquez was not a resident for the requisite period and that

19  he was in fact misrepresenting that to the Board of Elections,

20  do you think it was your duty to bring that information to the

21  board and have that addressed at that time?

22              MS. MOSES: I think that as a St. Thomas/St. John

23  District board member and a representative from St. John at

24  that, that had the information that I now have been questioned,

25  then indeed I would have been able to go back to my files and

1   make a decision to bring that information to the board.  It was

2   never thought about on my behalf until after the fact.

3               SENATOR ROACH:  Were you aware of the filing in the

4   bankruptcy case?

5               MS. MOSES:  No.  I learned of that the day of the

6   certification.

7               SENATOR ROACH:  The day of the certification.

8   What date would that be?

9               MS. MOSES:  I am not 100 percent sure of the date.

10  But whatever date we certified the general election, that is the

11  date that I received an email from the administrative assistant

12  from the Board of Elections and that was the first notification

13  of the bankruptcy.

14              SENATOR ROACH: I have to tell you; I just have a

15  limited amount of time left, but I have to tell you, your

16  response is troubling to me.  And you and I know each other.

17  Just like, it's a small island where all of us know one another.

18  But it's troubling to me that something so important as to

19  whether a person who is seeking an elected office meets an

20  important criterion --

21              TIMEKEEPER:  Time.

22              SENATOR ROACH: -- under the Organic Act, that, that

23     wouldn't be brought to the membership.  It just troubles me

24     and I have to put that on the record.

25              MS. MOSES: And that's fine.

1        SENATOR ROACH: Thank you both for your testimony.

2    Thank you Madam Chair.

3        SENATOR RIVERA-O'REILLY:  You're welcome Senator

4    Roach.  Senator Hansen you're recognized for five minutes.

5    Young.

6        SENATOR HANSEN: Greetings Ms. Moses.

7        MS. MOSES:  Good evening.

8        SENATOR HANSEN: Ms. Sarauw, Kevin Rodriquez and

9    Attorney Jackson.  Boy you look like you aint custom to

10    work at night or you worked too many nights already.  Let me

11    just begin by asking this question.

12        Ms. Moses you said that Mr. Rodriquez, in your

13    testimony, had some kind of relationship with your agency in

14    2014?

15        MS. MOSES:  Yes. He was the men's health

16    coordinator.

17        SENATOR HANSEN: Okay. So in 2014 then it's safe to

18    say he was a resident of St. Thomas.

19        MS. MOSES:  He was a contracted employee.  So I

20    cannot say.

21        SENATOR HANSEN: I know you aint going to want to

22    say that. But you said that you had some relationship; he

23    had one with your agency in 2014.

24        MS. MOSES:  Correct.

25        SENATOR HANSEN: You have this agency extended

1    somewhere in the states or Tennessee?

2        MS. MOSES:  No.

3        SENATOR HANSEN: Okay.  So then it is safe to say

4    that in 2014, at least in 2014 based on your testimony, your

5    personal knowledge that he was a resident of St. Thomas.

6        MS. MOSES:  I can honestly say that he lived on St.

7    Thomas.  I cannot say that he was a resident of St. Thomas.

8        SENATOR HANSEN:  He lived you said?

9        MS. MOSES:  Excuse me?

10       SENATOR HANSEN:  You said you can honestly say that

11   he lived on St. Thomas?

12       MS. MOSES: That he lived on St. Thomas at that

13   time.

14       SENATOR HANSEN: Okay that's cool enough. I born in

15   Puerto Rico and I live on St. Croix for a long time.  And I

16   still go Puerto Rico.

17       You all were here Ms. Janelle Sarauw and Ms. Moses

18   when testimonies were taken place where I asked some

19   questions of our Chief Legal Counsel?  I know Ms.  Sarauw

20   you were here, right?  For the record.

21       MS. SARAUW:  Yes I was.

22       SENATOR HANSEN:  And what about you Ms. Moses?

23       MS. MOSES:  I came late.  And I've between here --

24       SENATOR HANSEN:  So you may have missed it.

25       MS. MOSES:   -- and the hospital, so I'm not sure.

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017════21

1   SENATOR HANSEN:  Okay no problem.  At least Ms.

2   Janelle was here.  And I raised the question about a member

3   of Congress, of the 89th Congress, where he was accused of

4   committing a crime.  And the 90th Congress refused to seat

5   the member.  And the Supreme Court said you can't use that

6   to stop the member from being seated.   Ms. Sarauw was here

7   at the time, correct, when the legal counsel described it?

8   MS. SARAUW:  I was.

9   SENATOR HANSEN:  And supported my knowledge of

10  that.  So I bring that to say that if we are going to be

11  fair to everybody and I'm sure you all have heard me on my

12  own show say 'cause nobody don't miss that. You could

13  pretend like you miss it, but I know you all does listen.

14  That it's not fair to Kevin Rodriquez.  And what took place

15  with Ms. Sarauw, it's not fair to her either.

16  The system caused both to be in this demise.  And

17  it's not a comfortable situation; but it didn't had to be

18  that way.  If we are fair we are only to look at what's in

19  the Organic Act specifically.  And then we had brought the

20  case -- the Powell case, Adam Powell I think it is Chief?

21  Adam Clinton Powell to be even more specific where the

22  Supreme Court of the United States said ah, ah, you can't

23  stop somebody from getting seated because they committed a

24  crime.

25  Right now all day I've been asking because then we

VERNA TURNBULL-CARTY - Legislative Reporter

1    could start evaluating certain things. What is the charge in

2    the Senate against Kevin Rodriquez?  Now we are in the last

3    round and we still don't have a charge against Kevin

4    Rodriquez.   What is the charge?  Oh it's under advisement,

5    that's correct, since this morning.

6            Don't worry that's Judge Judy. No, but seriously.

7    What is the charge so we could work on that charge.  A

8    letter that somebody sent to somebody is not a charge.

9            TIMEKEEPER:   Time.

10           SENATOR HANSEN:   And then there was no cross

11   examination?  None of us would like to be treated that way.

12   And I supported you, you know, when they were talking a

13   bunch of nonsense, Ms. Ivy  Moses.

14           TIMEKEEPER: Time.

15           MS. MOSES:   Thank you very much for that.

16           SENATOR HANSEN:   Yeah I supported you and I kick

17   some hell on your behalf too.

18           MS. MOSES:   I appreciate it.

19           SENATOR HANSEN: And you know about it.

20           MS. MOSES; I really do.

21           SENATOR HANSEN:   Thank you.   Thank you Madam Chair.

22           SENATOR RIVERA-O'REILLY:   You're welcome Senator

23   Hansen.   Senator Millin Young?

24           SENATOR MILLIN YOUNG: Thank you Judge Nellie.

25   Everyone it has been quite a time today and it culminates

1  with these two rising stars in politics.  Ivy I know you

2  aint a little girl, but you're still a rising star.  Ivy

3  Moses for transparency sake is one of my very, very good

4  friends and Soror and I really appreciate all that she does

5  in this community. And as I noted earlier, I don't know

6  Janelle as well.  I know you, but we never had deep

7  conversations; so I can't speak to know you.  But of course

8  you come of the Levron Sarauw stock so I have to love you

9  for that.  And I know that you have quite a future before

10  you.

11       But today we were here about process.  And if it

12  you were Ms. Sarauw or you Ms. Moses who was sitting in Mr.

13  Rodriquez' seat, I would defend you as hard as I'm defending

14  him because it's not about him; it's about the process.

15       As the ranking member of this district after only

16  serving four terms, I can tell you that I am highly

17  disturbed regarding the direction we are taking.  Again that

18  seat at the end here should not be vacant this long. We are

19  cheating the residents of this district.  And I don't take

20  that lightly.

21       But I don't want to get bogged down on other

22  matters other than residency. Whatever issues took place at

23  HOPE.  Of course I have my love for Ivy so I don't want to

24  get into whether Ivy did something wrong or Kevin did

25  something wrong, I don't want to get into all of that.

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ═══24═

1      All I want to do tonight and I heard some words

2    said that we will not be deciding this here tonight and yet

3    another wasted day, wasted taxpayers money and here we are

4    still.  But residency is at the core. And it seems to me

5    that I've heard many people, including Senators, noting that

6    Mr. Rodriquez was a resident the whole time.  So once again

7    I ask, why are we still here?

8          As my Colleague stated and I stated four times

9    previously, the Colleague got a name. Her name is "Chucky"

10   Hansen. And as I've stated at least four times already,

11   where is the charge?  You wouldn't want it to be you.  And I

12   wouldn't want it to be me.  So I don't have other questions

13   for any of you because you've already stated on the record

14   what you had to say.  And I don't question what you said.

15   I'm just questioning the process.  And it's not fair.

16          I know the question was asked of Mr. Rodriquez like

17   really?  He suppose to say oh yes you're being unfair to me.

18   Yes you're being unfair.  And he answered it politically

19   correct.  I don't need the rest of my time because I'm only

20   going to reiterate time and again the process is flawed.

21   And I'm speaking behalf of anyone who would be in this

22   position because I know when I won and anybody had come and

23   told me mmm, mmm, you aint getting sworn in.  That would

24   have been hell.

25          So everyone thank you for coming - Ms. Sarauw.  Ms.

═══VERNA TURNBULL-CARTY - Legislative Reporter ═══

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ━━━25 ━

1  Moses thank you for stepping up to the process and opening

2  yourself up for any questions, but I don't have any

3  pertinent questions for you.  I want the process to be fair.

4  Thank you so much Madam Chair.

5           SENATOR RIVERA-O'REILLY:  You are welcome Senator

6  Millin Young.  Senator DeGraff you are recognized.

7           SENATOR DEGRAFF:  Thank you Madam Chair.  Good

8  evening testifiers.  Question.  Ms. Moses, you stated in

9  your testimony that you made the contract with Mr. Rodriquez

10  for one year - January to December 2013.

11           MS. MOSES:  Correct.

12           SENATOR DEGRAFF:  He worked everyday?  Monday to

13  Friday, 365 in 2013?

14           MS. MOSES: He was contracted to work between

15  January and December of 2013.

16           SENATOR DEGRAFF:   Right. And did he fulfill that?

17  Did he work everyday?

18           MS. MOSES: I cannot say that he worked everyday.

19           SENATOR DEGRAFF: That's what I  trying to figure

20  out.

21           MS. MOSES: No I can't say that he worked everyday.

22           SENATOR DEGRAFF: But you say you have his personnel

23  files.

24           MS. MOSES: I does have his personnel file. And I

25  have the contract in the file.  The contract is specific to

1  providing a service not meeting a time mandate as far as how

2  many hours you come in, don't come in. It is specific to

3  meeting the responsibilities of getting this program up and

4  running.

5  SENATOR DEGRAFF: Okay. So you paid him sixty

6  thousand dollars and you don't know whether he worked --

7  MS. MOSES:  To build a program.

8  SENATOR DEGRAFF: So it didn't have to do with

9  coming in and punching a clock Monday to Friday?

10  MS MOSES:  No. There was no clock to be punched.

11  SENATOR DEGRAFF:  Did he call by phone?  Did you

12  ever see him physically there?

13  MS. MOSES:  Yes.

14  SENATOR DEGRAFF:  A week straight at a time?

15  MS. MOSES:  Yes.  Most times.

16  SENATOR DEGRAFF:  So for the full year he worked.

17  You decided to renew his contract.  Another sixty thousand

18  dollars?

19  MS. MOSES: No. The second contract was --

20  SENAOR DEGRAFF:  That's for 2014 now.

21  MS. MOSES: The extension was for thirty five

22  thousand.

23  SENATOR DEGRAFF: Okay. So he worked 2013 according

24  to your testimony, January to December, but you sent his

25  document, his information to Tennessee. Okay. He stated he

1    lived in Tennessee before. But from 2013 -- the years in

2    question for me as I asked Mr. Rodriquez straight point

3    blank, 2013, '14, '15.  He worked 2013 for you on a contract

4    sixty thousand.

5              MS. MOSES: Right.

6              SENATOR DEGRAFF: He lived here.  He worked 2014 on

7    a contract for you, then he worked three months extension

8    into 2015?

9              MS. MOSES:  In 2015 he worked I think it was

10   February to April.

11             SENATOR DEGRAFF:  Okay.  And then also as a board

12   member --  are you aware that the board could have

13   investigated this issue?

14             MS. MOSES: Right.  For me at this point in time,

15   everything is in hindsight. What could have been done,

16   should have been done, wasn't done; everything is in

17   hindsight.

18             SENATOR DEGRAFF:  But it is factual at the time

19   that in 2013 he had a contract for sixty thousand dollars

20   that he worked.

21             MS. MOSES: Right.

22             SENATOR DEGRAFF:  2014 he had a contract extension

23   for thirty five thousand dollars that he worked.  2015 he

24   worked --  how much did you pay him for that three months?

25             MS. MOSES: In 2015 he got one hundred and fifty

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 =28

1    dollars daily for the days that he did work.

2        SENATOR DEGRAFF:  Okay. And he was there to collect

3    that hundred and fifty dollars everyday? Or did you have to

4    document --

5        MS. MOSES:  No it wasn't everyday. But for the days

6    that he did work he did receive the one fifty.

7        SENATOR DEGRAFF:  Okay.  It was just a little

8    confusing to me. Basically the only issue I'm addressing

9    like I told Mr. Rodriquez is the residency issue - according

10   to the Revised Organic Act Section 6B.  I'm not getting

11   personal, straight forward to the question.  To me you came

12   and you solidified his residency, bona fide resident here in

13   your testimony.  If I'm wrong I could be corrected and then

14   we could go from there.

15       MS. MOSES:  I never said he was a resident.  I said

16   that he lived here and I said that he had contracts.

17       SENATOR DEGRAFF: Right, right.

18       MS. MOSES:  As far as residency I can't determine

19   whether or not he was a resident or not.  I think that

20   that's something that the Body has to determine.

21       SENATOR DEGRAFF: I agree.  We are determining his

22   residency the best we can based on the testimonies given by

23   the individuals, the individuals that come here.  Everybody

24   has been sworn.  I take everybody for their face value as

25   being respectable and going to give the truth.

VERNA TURNBULL-CARTY - Legislative Reporter

1    So therefore I'm asking strictly questions in

2    regards to 6B of the Revised Organic Act. From what you

3    stated he worked based on your contract -- sixty thousand

4    dollar contract.  I would assume you would want to make sure

5    he's showing up to work everyday.  A thirty five thousand

6    dollar contract, I would also assume you're making sure he

7    report to work everyday.

8         TIMEKEEPER:  Time.

9         SENATOR DEGRAFF: And even for a hundred and fifty

10   dollars a day, I would hope that you make sure he is showing

11   up to work everyday.  So thank you very much for your

12   testimony.  And thank you very much for the time Madam

13   Chair.

14        SENATOR RIVERA-O'REILLY:  You are very welcome

15   Senator DeGraff.  Senator "Positive" Nelson you are

16   recognized.

17        SENATOR NELSON:  Thank you very much Madam Chair.

18   Good night once again to everyone.  Good night to Ms.

19   Sarauw, Ms. Moses and those paying attention.

20        First of all let me tell you Ms. Sarauw I like your

21   campaign.  I think it was very effective. Some of the things

22   you were saying were very I think forward thinking. And I'm

23   not just talking about your support for Cannabis. I just

24   think you ran a very good campaign, a strong campaign.  I

25   think you said a lot of things that people re interested in.

1   It is quite unfortunate that we are in this fix.  No way at

2   all that we should excuse the Board of Elections for causing

3   all this mess.  That's where it is.

4           Ms. Ivy - Ms. Moses, I admire you.  I've seen you

5   in hearings in St. John. I have often commented to you on

6   the side several things including perhaps seeking a seat in

7   this office because I like strong women.  Okay?  And I think

8   that you've demonstrated strong will.

9           I don't like what's happening here tonight though.

10  It seems like there's some personal matters and it's playing

11  out.  A lot of these things that's being said -- I mean if

12  he worked for you in 2013 and 2014 and when you calling out

13  these numbers here, sixty thousand dollars aint no chump

14  change. So I'm wondering like, what is HOPE?  HOPE really

15  seems to have some funds because you paying Mr. Rodriquez

16  sixty thousand and thirty five thousand and one hundred

17  fifty dollars a day; that's no chump change. How many

18  employees you have there?

19          MS. MOSES:  At the time we had approximately ten

20  individuals.

21          SENATOR NELSON: Ten employees.  The board members

22  get paid too?

23          MS. MOSES: No.

24          SENATOR NELSON: Okay. That's just a side question.

25  Do you agree Ms. Sarauw that the time of the filing of a

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ════31

1    complaint or a challenge, that the timeline is five days

2    after nomination papers are filed?

3            MS. SARAUW: It's not what I agree on; it's what the

4    Supreme court ruling Bryan v Fawkes.

5            SENATOR NELSON: Well I don't think that's the

6    Supreme Court ruling. That's just what the regulations for

7    the Board of Elections says.

8            MS. SARAUW:  They deemed the time slot invalid and

9    there's no timeframe on when new evidence is discovered. So

10   it's not what I agree on; it's what's stated.

11           SENATOR NELSON: Look, let's not get in semantics.

12   The timeline allowed for filing a complaint is five days

13   after the nomination papers are filed. We got that extracted

14   from earlier when the Board of Elections was here.  It's not

15   a Supreme Court ruling.  That's in the rules of the board.

16   That's there.  Okay?

17           So my thing is -- that I'm saying is, they're

18   saying that it was late. The courts also said that it was

19   late.  The Board of Elections said that it was late.  Why

20   was it late?  Had you not known prior to?

21           MS. SARAUW: Let me correct you.  It's in the court

22   transcripts. The court never agreed that the filing or the

23   allegation was late.  That was already established because

24   we had to prove that we never sat on the information.

25           SENATOR NELSON: Okay. So where was that established

1   that it was late?

2           MS. SARAUW:  Where was it established?  The only

3   person that said it was late was Ms. Fawkes and Mr.

4   Watlington.

5           SENATOR NELSON:  And isn't that the regulatory

6   board for elections?

7           MS. SARAUW: Yes.

8           SENATOR NELSON: Okay good. So we don't have to

9   dispute that. I'm not here to fight you, you know.

10          MS. SARAUW: I'm not either.

11          SENATOR NELSON: And this case here is not against

12  you.

13          MS. SARAUW: No I'm not either.

14          SENATOR NELSON: So just take it easy. I mean you

15  correcting and correcting. Just hold tight. We're trying to

16  correct a confusion that was created here and it's none of

17  our fault.  The board drop the ball.  Neither am I trying to

18  get caught up in the mess.  However we have to adjudicate

19  over the matter and that's what I'm trying to.

20          Ms. Moses, did you recently post some emails, some

21  correspondences between you and Mr. Rodriquez?

22          MS. MOSES: I did.

23          SENATOR NELSON:  Why?

24          MS. MOSES:  Because of comments being made about me

25  here in the Senate. Would you like me to read it?

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ====33=

1       SENATOR NELSON:  That's alright. Do you think the

2   filings were late?

3       MS. MOSES:  To the board?

4       SENATOR NELSON: Yes.

5       MS. MOSES:  I think that they were outside of the

6   time period that is allowed, but I think that they were

7   submitted in time to mandate an investigation.

8       SENATOR NELSON:  The complaint was submitted when,

9   in November?  In November.  According to Ms. Fawkes when

10  those things should have been submitted should have been

11  like May 22nd, May 23rd, five days after the nomination

12  papers were filed.  So unless I'm missing something else.

13  That's where she said the timeline should have been.  So

14  that's what deems it late.

15      Now again all of this is quite unfortunate because

16  we're just caught in the middle.  So I don't really have

17  many more questions for you all.  I just feel that it seems

18  like some personal stuff spilled over and now we're here

19  dealing with some of this.

20      And just to throw back at my little Dems who over

21  there saying that they on the only game in town.

22      TIMEKEEPER: Time.

23      SENATOR NELSON: Well I guess I must be some kind of

24  game because you all keep lobbying me to come on board.  So

25  I must be playing a good game too. Whatever it is, you sure

1   want this ICMer on board with you team to try to remove your

2   blemishes.  So whatever that means I take it as a flatter.

3   I'm flattered by it.  Thank you very much accordingly.

4        Ms. Sarauw and Ms. Moses, you know, nothing

5   personal. This whole thing is a mess.  And unfortunately we

6   have to deal with what's in front of us.  And what seems to

7   be in front of us is the matter regarding his residency.

8   And there's nothing to date that says that he was not a

9   resident here in the Territory.  Everything else I guess

10   we'll have to deal with when it comes up.  Thank you.

11        SENATOR RIVERA-O'REILLY: Thank you for your

12   contribution Senator Nelson.  Senator Sanes you're

13   recognized for your five minutes.

14        SENATOR SANES:  I remember when we used to play

15   marbles and there was that little kid on the side, "Nah I

16   don't want to play", but he was always there wanting to jump

17   in the game.  I just had a flashback I don't know why.  But

18   let me go back to the statement at hand, the issue at hand.

19   That's alright we're going to talk later.

20        First of all I want to make a statement here.  I

21   want to say that I don't feel that today was a waste.  I

22   feel today some testimony was given from all Parties, some

23   good testimony.  We had some good response from the

24   attorneys that came here.  And I have to say that overall it

25   shows the future leadership of the Virgin Islands from both

1    Parties.  I have to say that for the record.   So to me it

2    wasn't a waste.  I think maybe we could have done and when I

3    say we, all of us, the whole system; overall there are many

4    balls dropped and we keep saying that.  But I look forward

5    to seeing some type of legislation to rectify the issue

6    instead of saying over and over again that the ball dropped.

7         So Ms. Sarauw in saying that, you did stated though

8    and you made a comment and I need you to clarify something

9    in terms of new evidence is found, new evidence found. Can

10   you expound on that statement?  Because I believe it was --

11   and by the way Ms. Sarauw next time you bring testimony, put

12   numbers on the page, no?

13        MS. SARAUW: I received the correspondence late from

14   the office.

15        SENATOR SANES: You know which one I'm talking

16   about. The second page, right? You saw it?  It starts with

17   "Later during the court proceedings Ms. Fawkes will claim to

18   have not addressed the challenge".  But you did mention the

19   Bryan case. I need you to expound on that statement.

20        MS. SARAUW:  About the information?

21        SENATOR SANES:  Yes.

22        MS. SARAUW:  We received the information on

23   November 21st and within hours we acted on it. That was the

24   new information.  And in every court case in Bryan it

25   addresses the fact that the board has the responsibility to

1   look into a matter beyond the period that it deems valid.

2   And then Title 18, Chapter 3, Subsection 47 also says, it

3   lists I think it's between one to fourteen where the board

4   has the duty to investigate any irregularities. And that

5   wasn't done.

6          SENATOR SANES:  So according to what you just

7   stated for the record, even though the deadline passed, the

8   five-day deadline that we're talking about.  If there is

9   evidence or if there's new evidence that is presented, the

10  board has a duty to come and investigate. Is that correct?

11         MS. SARAUW: Yes.  The court specifically outlines

12  that.  I think it's item Number 8. It's equivalent to saying

13  that okay, five days passed by and you learn that someone is

14  really under the age of 21, do you let it go by because five

15  days has passed?

16         SENATOR SANES:  Okay.  And it is your opinion and

17  the paragraph before which starts on November 22nd, the

18  response that you received from a member of the board was

19  just take it to court.  That's basically what was stated?

20         MS. SARAUW: To put it on the record.  Mr.

21  Watlington addressed the team and myself like pions. And

22  he's never referred to me by my legal name.  And when we

23  gave the challenge he tossed the paper on the side and he

24  said take it to court.

25         SENATOR SANES:  So I just want to say as the last

1    statement here that at this junction, at this timeframe,

2    there was an opportunity for the Board of Election to

3    actually clarify this issue at that time. Is that a correct

4    statement to make?

5         MS. SARAUW:  That is correct.

6         SENATOR SANES: I want to thank you for your

7    testimony.  I have no further questions.  Thank you Madam

8    Chair for your time.

9         SENATOR RIVERA-O'REILLY: You are very welcome

10   Senator Sanes.  Senator Brian Smith are you ready?  Five

11   minutes.

12        SENATOR SMITH:  Good evening.  I want to say good

13   evening to Ms. Sarauw, Ms. Moses and Senator-Elect Rodriquez

14   and Attorney Jackson.  As it looks to me, this here is just

15   a classic case of bellyaching gone too far.  That's what it

16   look like bellyaching gone way too far.

17        I want to ask Ms. Sarauw. How much votes you had

18   gotten in the last election, in the general election?

19        MS. SARAUW: Three thousand something.  I really

20   can't remember.

21        SENATOR SMITH: Okay. Were you in the top seven?

22        MS. SARAUW: No.

23        SENATOR SMITH: Okay.  Did you win a Primary

24   election?

25        MS. SARAUW: I'm an Independent candidate so I would

1    never be in a Primary election.

2              SENATOR SMITH: Okay.  The question is no right?

3    For this one.

4              MS. SARAUW:  Precisely.

5              SENATOR SMITH: No. Did you win the general

6    election?

7              MS. SARAUW:  No I did not.

8              SENATOR SMITH: Okay.  Were you ever certified?

9              MS. SARAUW: No.

10             SENATOR SMITH:  Okay.  That's all I'm trying to

11   say.  It appears to me like a classic case of bellyaching.

12   Let's take a look at the reason why we're here.  The reason

13   why we're here is to determine residency, to determine

14   residency. That's why we're here.  So if we analyze and

15   watch what's being exemplified as far as the question with

16   Ms. Moses, it could almost appear that there was some degree

17   of conflict that spilled over into this election process.

18             I want to know right now, is there a chance that

19   everyone knew that -- when I say everyone I mean say

20   possibly you, possibly Ms. Moses, that the situation

21   regarding Mr. Rodriquez' file for bankruptcy was known well

22   in advance to the conclusion of the general election?

23             MS. SARAUW:  I had no idea that Mr. Rodriquez filed

24   bankruptcy in any court in Tennessee until November 21st,

25   when I received the email.  There were talks on the radio of

1   course that he didn't live here, but I had no idea of any of

2   Mr. Rodriquez' personal business.

3        SENATOR SMITH:  Well I'm glad to know that because

4   what I was thinking in the back of my mind is this.

5   Everyone anticipate or possibly anticipated that

6   Senator-Elect was going to lose the election.  So when they

7   figure he was going to lose the election, there was no real

8   reason to want to drop this thing here or pull out this

9   card. But at the end of the day what happened was this.

10  Senator-Elect Rodriquez he won the election.  He actually

11  came in 6th. So people just got disgruntled; whether it was

12  former employer or whether it was competitors and that's

13  where all of this situation stemmed from.

14        But the thing what's bothering me the most is this.

15  A former employer just said that Mr. Rodriquez been a full

16  employee from 2013, the whole of 2013. I heard also that one

17  employee, one board member was saying that he was constantly

18  asking can I get my residency changed and was constantly

19  being denied.  So I wonder, was this a setup for down the

20  road?  That's all I'm trying to get at.  Was this a set up?

21  Okay let's leave that alone now.

22        One more question I want to ask.  What's your

23  opinion to why your relationship Ms. Moses and the candidate

24  or Senator-Elect Rodriquez went sour?  Why it went sour and

25  what's causing this tension up to current?  What is it; tell

1    me please.

2            MS. MOSES:  Senator Smith, Mr.  Rodriquez'

3    testimony I did not hear.  I was at the hospital.  There was

4    a fire alarm.  I was locked out.  I did not see or hear his

5    testimony. I received a text message -- actually several

6    text messages about the testimony, most of which I was very

7    shocked to learn.  So I honestly cannot tell you where what

8    went sour and what didn't go sour; nor do I think that the

9    purpose of me being here is to discuss what went sour or

10   didn't go sour.  I was asked to present on behalf of the

11   agency the address and information specific.

12           SENATOR SMITH: Okay thank you; thank you. Hold up.

13   That's good.

14           MS. MOSES:   -- to Mr. Rodriquez at HOPE.

15           TIMEKEEPER: Time.

16           SENATOR SMITH:  Let me finish up.

17           SENATOR RIVERA-O'REILLY: You may proceed.

18           SENATOR SMITH: I just want to thank you very much

19   for disclosing that Mr. Rodriquez did work for you back in

20   2013 and he earned sixty thousand dollars and the subsequent

21   year he worked for you and he earned thirty five thousand

22   dollars.   That testimony of yours was extremely helpful. I

23   really appreciate you sharing that to the whole entire Body

24   here this evening. I want to thank you again.

25           SENATOR RIVERA-O'REILLY:   You're so very welcome

1    Senator Smith.  Senator Francis you're recognized for your

2    five minutes.

3          SENATOR FRANCIS, JR: Thank you. Thank you very much

4    Madam Chair.  Good evening to the latest round of

5    testifiers.  Ms. Sarauw and Ms. Moses I want to thank you

6    for your testimony this evening. Again I appreciate your

7    candor in the testimony that you provided to us.  I want to

8    say Ms. Sarauw that I've been impressed as well with your

9    campaign as a young individual in this community as well as

10   a young gentleman Mr. Emanuel on St. Croix.  And I truly

11   believe that you guys are the future and we need to

12   certainly support getting those new breed of senators into

13   the senate.

14         I also like the fact that you have a Forward

15   Movement. Focus Forward is my motto and I like your forward

16   movement. And I hate the fact that again you are faced with

17   this situation similar to what Mr. Kevin Rodriquez the

18   Senator-Elect is facing as well.  So I'm hoping that at some

19   point there would be some resolution to these matters and we

20   could start to proceed.

21         I wanted to ask you, in this whole situation with

22   the back and forth with the courts in the matter of trying

23   to decide the fifteenth member, have you had an opportunity

24   to meet with Senator-Elect Kevin Rodriquez and had a

25   discussion, mediation, any discussion at all in respect to

1    this whole matter?

2           MS. SARAUW: We haven't had a discussion. We talked

3    on the campaign trail a few times, sharing ideas.  There was

4    no animosity.  And there still is no animosity.  But at

5    Virgin Haven I remember one night a similar discussion and

6    him telling me he'll sue for every penny we have and his

7    money long and a few things he said that weren't really in a

8    positive tone.  But I assured him that nothing about what is

9    being done or what was done was personal.  It was a matter

10   of the law, what I felt was right.  Up to now I haven't

11   launched any personal attacks against Mr. Rodriquez.

12          SENATOR FRANCIS, JR:  And obviously you felt that

13   he had the same vigor and tenacity to see this case through

14   as you did and that's the reason you continue to pursue it

15   as well as he has pursued it as well, correct?

16          MS. SARAUW:  Yeah. He has the right to seek legal

17   redress in any court.  He's a citizen too so he has that

18   right.

19          SENATOR FRANCIS, JR: Thank you for that. Ms. Moses.

20          MS. MOSES:  Good evening sir.

21          SENATOR FRANCIS, JR: Good evening. Were you a board

22   member of the Board of Election that certified Kevin

23   Rodriquez?  Were you a board member on November 22nd of

24   2016?

25          MS. MOSES: Yes I was.