COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ====43

1    SENATOR FRANCIS, JR:. Were you a signatory to the

2    certification of the November election of 2016?

3    MS. MOSES:  Yes I was.

4    SENATOR FRANCIS, JR: How do you now reconcile your

5    concerns about the fact that you believe that there was some

6    question as it pertains to Kevin Rodriquez' residency; how

7    do you reconcile that now that you have already certified

8    it?

9    MS. MOSES: Right. During the 2016 election it was

10   never brought to my attention that there were concerns about

11   Mr. Rodriquez' residency.  The Board of Elections does not

12   vet candidates. We do not vet candidates at all.  We

13   received the candidate list after vetting has been completed

14   by the election system which is headed by the Supervisor of

15   Elections.

16   When the document came to the Board of Elections I

17   had at that time no thoughts about whether or not Mr.

18   Rodriquez was eligible or not eligible.  It wasn't until

19   certification and thereafter when questions started being

20   raised and things in hindsight started coming up including

21   the fact that he worked for HOPE and that he was on contract

22   for HOPE.  So it wasn't until after the fact that I thought

23   about residency issues with Mr. Rodriquez.

24   SENATOR FRANCIS, JR: Let me ask you another

25   question before my time run out.  In respect to your

VERNA TURNBULL-CARTY - Legislative Reporter

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ===44=

1    testimony that all along you felt that he was living on St.

2    Thomas, but he was not a resident of St. Thomas; the fact

3    that you had sent his checks as well as the documents that

4    you have in terms of his address was always a Nashville

5    address, you still don't believe that he was a resident?  He

6    had a residence of Nashville and not the Virgin Islands

7    based on your testimony.

8         MS. MOSES: The conversations, the thoughts leading

9    up to that did not come up until after the election.

10        TIMEKEEPER: Time.

11        SENATOR FRANCIS, JR:  In conclusion Madam Chair.

12   What do you truly say this evening in terms of whether or

13   not you believe that Kevin Rodriquez have residency here in

14   St. Thomas and not Tennessee?

15        MS. MOSES:  I believe that at the time his

16   residence was Tennessee and not the Virgin Islands.  He was

17   here specific to a contract, to provide services. He was not

18   here as a resident bona fide in the Virgin Islands or in the

19   Territory.

20        SENATOR FRANCIS, JR:  And still you certified the

21   elections on November 22nd --

22        MS. MOSES:  I was a part of the body that did

23   certify that election.  And I take full responsibility for

24   what occurred at that time.

25        SENATOR FRANCIS, JR: Thank you very much.  Thank

=VERNA TURNBULL-CARTY - Legislative Reporter =

1    you Madam Chair.  Thank you for your responses.

2              SENATOR RIVERA-O'REILLY:  You're welcome Senator

3    Francis. I'd like to ask the testifiers to please keep your

4    microphone in front of you.  It's a very sensitive and also

5    very expensive piece.  So if you break it, you'll have to

6    replace it.

7              I would now recognize Senator Blyden for his five

8    minutes.

9              SENATOR BLYDEN:  Thank you Madam President.  And

10   good evening Ms. Moses, Ms. Sarauw. Thank you for your

11   testimonies.  Ms. Moses in your testimony you spoke in

12   reference to you not believing he was a resident while he

13   was working for you in the first year.  Why would you say

14   that?  I understand he was a contracted employee, yes.  And

15   in the contract it was based on performance and a task,

16   correct?  Not hourly in terms of punching a clock but, why

17   did you say, you would say he's not a resident?  What gave

18   you that point of view, per se?

19             MS. MOSES:  In 2012 I asked Mr. Rodriquez to come

20   back to St. Thomas to provide a service at HOPE Inc.  Mr.

21   Rodriquez was not on St. Thomas when the request was being

22   made.  He was in Tennessee. The contract was specific to

23   duties specific to building a men's health program very

24   similar to a women's health program.  Once the task was

25   completed and the contract was over, then his duties and

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017═══46═

1  time at HOPE would have been over as well.

2  SENATOR BLYDEN:  Okay very well.  Also what was put

3  on record earlier is Mr. Rodriquez and the other young lady

4  Sepio who worked for HOPE stated you refused to change the

5  address on his checks from Tennessee to the Virgin Islands.

6  Is that an accurate statement?

7  MS. MOSES: I don't believe so.  Mr. Rodriquez was

8  never a full-time employee; so we don't have documents that

9  would change an address for a contractor.  You're a

10  contractor and whatever address you give, that's what on the

11  contract.  The documents that are front of you which is the

12  Final Check Notice clearly states Mr. Rodriquez' address as

13  Tennessee.  It has Mr. Rodriquez' signature on the page as

14  well as witnesses.  I am not one of the signatories on this

15  page that Mr. Rodriquez, his attorney at the time, Mr.

16  Morales and other folks signed.  And this was in 2015.

17  In 2014, there was an extension of contract between

18  HOPE Inc and Mr. Rodriquez again on this document.  Mr.

19  Rodriquez signed stating that his address was Nashville,

20  Tennessee.  So I don't know -- Mr. Rodriquez hovers over me.

21  I cannot force somebody to sign a document that is not true.

22  And I know that I am not going to sign a document with the

23  wrong address on it regardless of what the document is.  If

24  it has my name, it needs the correct address.

25  SENATOR BLYDEN:  So clarification.  So you're

VERNA TURNBULL-CARTY - Legislative Reporter

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ━━47━

1    stating on the record that when his contract was renewed the

2    second time, his address was Tennessee?

3            MS. MOSES:  On the extension of contract which I

4    submitted as part of my testimony it states by and between

5    Helping Others in a Positive Environment - HOPE Inc - Number

6    57 Dronningens Gade, St. Thomas V.I. 00802 and Kevin

7    Rodriquez 4956 Indian Summer Drive, Nashville Tennessee

8    37207.   This was dated January 6th, 2014.

9            SENATOR BLYDEN:  Very well.  Thanks for your

10   responses.  And I guess Mr. Rodriquez will respond I guess

11   when he's given an opportunity to do so along with his

12   attorney.

13           Ms. Sarauw your treatment by the Board of Elections

14   I'm glad you put that on the record.  It needs to be noted

15   when folks are elected or have a duty to fulfill especially

16   when you're a public servant, you should do everything in

17   your power to make sure you serve the public and do it with

18   dignity and with respect.  So I'm glad you put that on the

19   record.

20           You made a statement in your testimony in terms of

21   smoking mirrors, et cetera.  Can you expound on that for me

22   please, what you meant by that?

23           MS. SARAUW:  Really and truly when the challenge

24   was filed, the issue was really residency and we've

25   deflected to things that are emotional; we've deflected to

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 — 48

1    jurisdiction.  And the real matter of why we're here is

2    because under penalty of perjury --

3              TIMEKEEPER: Time.

4              MS. SARAUW:  -- a document was signed in January

5    2016, again in May of 2016 that I have lived nowhere else

6    but in the state of Tennessee.  So that's what I meant by

7    smoking mirrors.

8              SENATOR BLYDEN: Very well.  Thank you very much

9    Madam President for the time.

10             SENATOR RIVERA-O'REILLY:  You are welcome Senator

11   Blyden.  Senator Hansen, point of information.

12             SENATOR HANSEN: Thank you.  Through the Chair to

13   Ms. Moses.  Ms. Moses wasn't your testimony earlier today or

14   tonight that you knew as a fact that Mr. Kevin Rodriquez

15   lived on St. Thomas?

16             MS. MOSES: Correct.

17             SENATOR HANSEN:  Thank you.  Thank you Madam

18   Chair.

19             SENATOR RIVERA-O'REILLY:  You're welcome.  Senator

20   Vialet you're recognized.

21             SENATOR VIALET: Thank you and good night once

22   again.  Ms. Moses how much hours was Kevin working every two

23   weeks, 80 hours?

24             MS. MOSES:  I would say close to --  I would say he

25   definitely was in the office more times than not. So I would

1   say close to 80 hours yes, or more.

2           SENATOR VIALET:   So then he was a full-time

3   contractual worker?

4           MS. MOSES: He was on contract with HOPE.

5           SENATOR VIALET: He was a full-time contractual -- a

6   full-time employee is deemed as somebody that works 80

7   hours. If he's working close to 80 or more than 80, then he

8   was a full-time contractual worker.  However, it seems like

9   the more testimony you get, the more confusing everything

10  is.  Because you are a member of the board.  You knew that

11  he was a resident of Tennessee yet you did nothing.  You

12  certified the election.  You didn't let them know that you

13  had documentation in which he had filled out a 1099 form, in

14  which he had signed a contract stating that his address was

15  Tennessee.  So it is clear that you are part of the problem;

16  very very clear.  Because you did not go to the board and

17  say I have documentation that show that he is using a

18  Tennessee address.

19          Then we have a situation where Mr. Rodriquez came

20  down, he got a job for sixty thousand dollars.  Within two

21  years he's bad mouthing HOPE that gave him the job for sixty

22  thousand dollars when he didn't have any job. Tito Morales

23  is on the board. He said HOPE is a waste of time. Somebody

24  else is working for the company; they say they don't know

25  what goes on there; the person is mean. That's total

1    dysfunction from everything that I'm hearing.  I'm just like

2    in awe as to what is going on.

3              And then he say I filed my taxes in Tennessee.  No

4    I file it in St. Thomas.  I filed three taxes at the same

5    time.  No I filed two at one time.  I filed it in March. I

6    really don't remember when I filed it. I did Turbo tax.  I

7    express it down; I email it; I fax it.  What is going on?

8              And then we reach to the point where we then say,

9    well perhaps the Chair of the Board Mr. Watlington is

10   causing issues.  But if Mr. Watlington run tomorrow for the

11   Board of Election, he's going to run first on the St. Thomas

12   District.  And he runs well every single time. So something

13   wrong. Something is wrong.  There have been so much

14   conflicting testimony that to really sit here and say I know

15   for sure what went on.  You can't get a straight story from

16   yourself Mr. Rodriquez.  You can't get a straight story from

17   Ms. Moses.  You can't get a straight story from your wife

18   that testified. She's telling you, you sent all three the

19   same time. The dates are different.  So you did three tax on

20   Turbo tax and then you put three different dates. You put

21   one January 20th. You put one January 24th.  You put the

22   next one March 18th.   I don't remember for sure if I filed

23   it. What do you remember?  You say you barely remember your

24   name.  Why do you remember? You don't remember if you filed

25   it in March or January?  You don't remember where you sent

1    the document?  I am just totally perplexed as to the

2    answers.  And it seem like answers are forthcoming by

3    convenience.  And convenience don't work.  The issue is

4    whether or not you perjured yourself with the statements

5    that you made.

6         And I know my good ICM partner from St. Croix know

7    that you can't sign something under penalty of perjury and

8    then change and say it was a mistake. But you know what?

9    Everything going to be resolved, you know, because the

10   decision that is made by this Body is going to set

11   precedence.  And when it does nobody don't quarrel.  Don't

12   come back and quarrel after because we're making a decision

13   in reference to what took place not what who like or who

14   don't like this or who running around.  No.  You're making

15   it on the facts.  And if you stray away from that, that's

16   alright.  It's going to be in the annals of history as to

17   the decision that was made. I know what I"m going to make.

18        Ms. Sarauw, so you filed a petition and the Chair

19   of the board throw your petition on the side?

20        MS. SARAUW: That's correct.

21        SENATOR VIALET: He said he referred to you as a

22   Pion?

23        MS. SARAUW:  He speaks to us as Pions, but he calls

24   me the beauty queen, never by my name.  So I'm not sure what

25   to think of that.

1    SENATOR VIALET: You know a lot of times we want

2  change in the Virgin Islands, but change is so hard because

3  of the players.  And we continue to revert back to a lot of

4  old practices.  Thank you Madam Chair.

5    SENATOR RIVERA-O'REILLY:  You are very welcome.  I

6  totally agree with your sentiments.  Change is hard. But my

7  favorite is that change is in fact possible.  And change

8  happens unfortunately or maybe fortunately one funeral at a

9  time.

10    Senator Neville James you're now recognized for

11  your five minutes.

12    SENATOR JAMES:  Thank very much Madam Chair and I

13  want to reiterate, you did a tremendous job in the chair

14  today.  And tomorrow we will put on the record why that was

15  and the public is deserving of that.  I want to say a late

16  good night to Ms. Moses and Senator-Elect Sarauw.  Good

17  night.

18    MS. SARAUW: Good evening.

19    SENATOR JAMES: It late. "Cause we got two

20  Senator-Elect there.  According to the board, it got two

21  Senator-Elect.  That's what the board say. That's the reason

22  why they can't certify the second election.  That's what

23  they said.  I dare anybody to refute what I just said. The

24  board say we can't certify Senator-Elect Sarauw because we

25  already have another Senator-Elect in Kevin Rodriquez.

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ═══53═

1    That's what the board said.

2             I aint refuting ah you position that ah you believe

3    in ah you heart Kevin Rodriquez is the true Senator-Elect.

4    You're entitled to believe that. I aint fighting with ah

5    you. I just telling you what the board said; that's all.

6    Okay?

7             I know it's our job to be politically correct.

8    But I'm going to be politically incorrect now.  If Janelle

9    Sarauw had not won the Special Election and a Democrat had

10   won the Special Election, they would have certified the

11   election.  That's my opinion.  That's what I believe.  I

12   could be wrong.  And the reason why I believe that, is

13   because when we gave the appropriation, we made the

14   appropriation available, at no time did the board say we are

15   conducting the election under protest.  Think about that.

16   Because you could do that.  We were asked, suggested by our

17   legal counsel that we conditionally seat Kevin Rodriquez

18   which is the same thing like as a protest. You're doing

19   something with a condition and we didn't do it.

20             Now I want to correct something that been going on

21   here all day.  They've been asking where are the charges?

22   The charges are on Page 12, 13, 14 and 15 of the Third

23   Circuit court ruling.  It say on Page 12, "After the

24   Legislature convenes, however, the power to determine a

25   winning candidate's eligibility to serve shifts to the

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017━━54━

1  Legislature".

2          Page 13.  "This prevents courts from  interfering

3  with the Virgin Islands Legislature's determination of the

4  qualifications of its members including whether they meet

5  the residency requirement".   Determination again.

6          Page 14. This under plain language of 6G, "Once the

7  32nd Legislature convene, it alone had the authority to --

8  the operative word, "determine whether Rodriquez possess the

9  qualifications to be a member and was thereby entitled to

10  take the oath and be seated.

11          Page 15.  "Only the 32nd Legislature may judge

12  whether Rodriquez satisfies the requirements set forth in 6B

13  including the residency requirement.  But now that the 32nd

14  Legislature has convened, only that Body can determine the

15  qualification of its members".

16          You know who the charge was given to? The charge

17  was given to the Legislature by the Third Circuit.  So this

18  thing 'bout how we aint charge Kevin with nothing so Kevin

19  -- no.   The Third Circuit said in its closing statement; it

20  look like a lot of people didn't want to read it.   "With

21  this ruling the 32nd Legislature should fulfill its

22  statutory obligation to judge Rodriquez' qualification for

23  membership in the Legislature". The charge was given to the

24  Legislature. I know it's not pronounced that way because

25  it's supposed to be Legislature.

1    We were given a charge and we're dealing with it.

2  So this notion that aint get no charge and all that. I mean

3  please, please.  And then we're selective about who we want

4  to be - acting like when they say something it's gospel now.

5  They going to turn on them in a month and a half.  It's

6  historical here.  I love you today.  Don't tell me nothing

7  tomorrow.  You know.  You're got to use history. Let history

8  be your guide.

9    So I just want to let both, apparently winning

10 candidates, know that the biggest loss is the fact that the

11 District of St. Thomas/St. John has been with six senators

12 instead of seven since Monday January 9th, 2017. I thank you

13 very much Madam Chair.  I signing off.  Good night.

14    SENATOR RIVERA-O'REILLY:  Thank you Senator James.

15 Senator Forde?

16    SENATOR FORDE:  Thank you Madam Chair.  It's been a

17 long day.  But as my Colleague would say the wounds of

18 governance.  Anyway today has certainly not been a waste.

19 This is a learning experience for all of us.  And I share in

20 my Colleague's sentiments when he had said that this problem

21 got even more and more compounded because there are times

22 that we are certainly getting conflicting stories.  And the

23 more we dig into things is the more is being revealed.  And

24 so it's an awesome task and I don't know if we will ever get

25 a winner out of this when we do have to come and make the

1       decision. But one way or the other a decision we will have

2       to come to.

3              We have to make sure that individuals particularly

4       in the St. Thomas/St. John District are not disenfranchised.

5       And the process is certainly not easy. And I want to differ

6       a little with one of my Colleagues when they talk about the

7       process being a waste of time or when they talked or

8       questioned the process which we are engaging in.  I think

9       that the fact that the process is being questioned it

10      certainly implies that there is an issue that needs to be

11      addressed.   And I think that it's a legitimate concern.

12             Now I will put a couple of questions, however

13      though.  Ms. Moses you engaged in a contract with Mr.

14      Rodriquez for one year - sixty thousand dollars.

15             MS. MOSES:  Correct.

16             SENATOR FORDE:  You extended that for another year

17      and then had a further extension?

18             MS. MOSES:  Yes.

19             SENATOR FORDE:  This really sounds to me like a

20      relationship went bad.  Why did you extend the relationship?

21      If he was charged with performing a duty and you were

22      specific; it's implementing a men's health program.  If he

23      had not done so, why would you extend his contract for yet

24      another year and even months after that?

25             MS. MOSES:  I would like to read into testimony a

1   text message that I received from Mr. Rodriquez on Friday

2   January 16th.

3           SENATOR FORDE:  Is this going to be -- Ms. Moses my

4   time is limited so I want to make sure. Is this going to be

5   an answer to my question?

6           MS. MOSES:  It is. It is. It is.  And it will

7   answer Senator Smith's question.

8           SENATOR FORDE: Well no I don't want you answer

9   Senator Smith question.

10          MS. MOSES:  It will answer three Senators'

11  questions.

12          SENATOR FORDE:   Go ahead.

13          MS. MOSES:  Friday January 16, 2015 Mr. Rodriquez

14  text me and this is what the text read.  "I would like for

15  you to find compassion in your heart and grant me three

16  months employment at HOPE.  I have always been loyal and

17  committed to HOPE's mission. The three months should be

18  realistic goals relative to developing a program similar to

19  "Sister".  One, the name should be "Brother".  Two.  Conduct

20  four men's health sessions: Two sessions at UVI and two

21  sessions in the community.

22          SENATOR FORDE: But Ms. Moses I got to cut you off.

23  My time is running. That's not answering my question. I

24  wanted to know why did you extend his contract if he did not

25  fulfill it the first year?

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ====58

1      MS. MOSES:  The end of this will tell you.

2      SENATOR FORDE: I don't have enough time for that.

3  Let me move on.  Did Mr. Rodriquez not make a request of you

4  to change his address on his 1099 forms?

5      MS. MOSES: I do not handle 1099 forms. So let me

6  just clarify that.

7      SENATOR FORDE:  But you are his boss.

8      MS. MOSES: The fiscal officer is who deals with the

9  1099 forms.

10      SENATOR FORDE:  Who does the fiscal officer report

11  to?

12      MS. MOSES:  The fiscal officer reports to me.

13      SENATOR FORDE:  So if you comes directly to you,

14  why couldn't you have said --

15      MS. MOSES: It would have been changed. If he had

16  come to me for the change --

17      SENATOR FORDE: You're saying he did not come to

18  you?

19      SENATOR RIVERA-O'REILLY: One at a time please.

20      MS. MOSES: If he had come to me for the change --

21  had he come to me for the change, it would have been changed

22  just just like everybody else's.  They would have been sent

23  to the fiscal officer for the change to be made.

24      SENATOR FORDE:  So he did not come to you.

25      MS. MOSES:  Not that I know of. And in addition to

1    that I would like to say in the file that I have, I have no

2    fiscal documents for Mr. Rodriquez.

3            TIMEKEEPER:  Time.

4            MS. MOSES:  All financial documents are handled by

5    the fiscal officer and the auditors.

6            SENATOR FORDE:  My time has been called.

7            SENATOR RIVERA-O'REILLY: Thank you Senator Forde.

8    I think that we should allow Ms. Ivy Moses to continue to

9    reading the text into the record since she began.

10           MS. MOSES:  Okay. And the text further states,

11   "This will be a win/win for both of us.  You can be tough at

12   times; however there a compassionate side in you that would

13   allow my request to be granted. I would like to be paid

14   retro from January 6.  I am swallowing my pride as a man and

15   asking for your consideration. God Bless. KRod. God is good.

16           My response to Mr. Rodriquez was, "Huh"?  You

17   didn't work from January 6.  How could you ask me to pay you

18   from January 6.   He goes and states.  Does mean I'm

19   quoting. "Does mean you will sleep on it? KRod God is good.

20   "Does it mean you will sleep on it"?  KRod God is good.

21           This is the request that was being fulfilled.  And

22   it's also stated in the -- or should have been stated in

23   the extension of the contract.

24           SENATOR RIVERA-O'REILLY: You said on the record

25   that you considered his employment a contract; that he was a

1    contract, a person providing a service under a contract.

2            MS. MOSES: Correct.

3            SENATOR RIVERA-O'REILLY: Did you require Mr.

4    Rodriquez to have a business license to engage in consulting

5    services?

6            MS. MOSES:  No.  We had several contractors at the

7    agency and we gave all of them the 1099 forms.

8            SENATOR RIVERA-O'REILLY:  Very well.  We will now

9    proceed with.  Senator Hansen we're going to proceed now

10   with the Senate President for his five minutes. Mr.

11   President --  Go ahead Senator Hansen.

12           SENATOR HANSEN:  Thank you Mr.  President.

13   You know what? Proceed.  If she wants a kangaroo court let

14   her go ahead. Thank you Mr.  President, the real President.

15   Thank you.

16           SENATOR JACKSON:  Good evening testifiers:  Ms.

17   Moses, Ms. Sarauw. The testimony that you provided this

18   evening Ms. Moses is most disturbing in that the issue

19   relating to the documents from HOPE that did list or did

20   inscribe that Mr. Kevin Rodriquez address was a Tennessee

21   address while employed at HOPE, when did that surface within

22   the litigation or the Board of Elections deliberation, if

23   any?

24           MS. MOSES: It never came up with the Board of

25   Elections. I was subpoena to court. I brought the documents.

1  And I read the documents I believe into record.  I have not

2  withheld --

3  　　　　　SENATOR JACKSON:  Which court?

4  　　　　　MS. MOSES:  District. I have never withheld

5  information asked to me about documents of Mr. Rodriquez at

6  HOPE.

7  　　　　　SENATOR JACKSON:  So when you --

8  　　　　　MS. MOSES:  Oh Superior Court I apologize. Superior

9  Court.

10 　　　　　SENATOR JACKSON: Okay. So the Superior Court. Were

11 you requested to bring documents from HOPE at that time?

12 　　　　　MS. MOSES: I was subpoenaed, yes.

13 　　　　　SENATOR JACKSON:  And during the vetting of the

14 issues relating to Ms. Berry's inquiry to the Board of

15 Election, were you part of that discussion?

16 　　　　　MS. MOSES:  When the documents were delivered to

17 Attorney Watlington that Ms. Sarauw is making reference to,

18 I don't believe that I was present. I don't believe that I

19 was present at that time.

20 　　　　　SENATOR JACKSON:  Okay. The documents arriving is

21 one.

22 　　　　　MS. MOSES: Right.

23 　　　　　SENATOR JACKSON: The documents being reviewed by

24 the board, were you part of that process?

25 　　　　　MS. MOSES: I was.

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ════62

1   SENATOR JACKSON:  And at no time did you make
2   mention that you were in possession of a document or
3   documents that did note or did have an inscription that
4   Senator-Elect Rodriquez' address was a Tennessee address
5   during his employment?

6   MS. MOSES:  When the discussion came up at that
7   point it had become a court issue.  And it was brought up.
8   I have never hid the fact that Mr. Rodriquez was on contract
9   with HOPE.

10  SENATOR JACKSON: But did you bring it to the
11  attention of any of the board members in any discussion?

12  MS. MOSES: I have.

13  SENATOR JACKSON: And what was their response?

14  MS. MOSES:  I don't believe that -- I can't
15  remember exactly what whose response was. At the time of
16  bringing the information up it was in discussion specific to
17  the court case.  And I was subpoenaed to the court case.  I
18  delivered the information that I had. I wasn't subpoenaed
19  as a board member. I was subpoenaed as I was invited here
20  today as a representative of HOPE.

21  SENATOR JACKSON:  Madam Chair and Colleagues I
22  think we should subpoena the entire board and bring them to
23  this Body. Because it's very evident that the discussions
24  that we've had this evening, the inconsistencies, the
25  irregularities, the discrepancies, deserves a response.  And

VERNA TURNBULL-CARTY - Legislative Reporter

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017 ═══63 ═

1    the letter that we received from Attorney Watlington is most

2    disgusting in that the disrespect for this Body as a former

3    member of this institution and likewise his position that

4    this was an issue that should be heard by the 32nd

5    Legislature in determining its member requires that the

6    Board of Election had also an opportunity to resolve an

7    issue that we're here for this evening.

8         As a result of that, we're here.  Both the actions

9    of the board and both the actions of Mr. Kevin Rodriquez in

10   Tennessee and likewise your implications that even during

11   his tenure here in St. Thomas at HOPE that the documents

12   that he presented or provided for his address had a

13   Tennessee address that speaks to residency.

14        TIMEKEEPER: Time.

15        SENATOR JACKSON:  So thank you very much Madam

16   Chair.

17        SENATOR RIVERA-O'REILLY:  Yes you may Senator

18   Hansen.  Proceed.

19        SENATOR HANSEN: I'm just trying to get a

20   clarification on what we are trying to accomplish here all

21   day and particularly tonight; so I can know what to follow.

22   I still believe there has not been a charge, in other words

23   an accusation.

24        SENATOR RIVERA-O'REILLY: What is your point of

25   information directed to?

═══════VERNA TURNBULL-CARTY - Legislative Reporter  ═══

1    SENATOR HANSEN:  My point of information relates to

2    are we trying to find the Board of Election as a reason for

3    us not acting?  First it was the Court.  Now it's the board.

4    It is the Legislature's responsibility. I don't know why are

5    we trying to find a reason, another layer to avoid acting.

6    So I'm trying to figure out. You know, I need to know. You

7    see what time it is?  I need to know what it is we doing.

8    If we're trying to hide behind something; the Attorney

9    General done been here and he run gone.  Okay?  Now you're

10   trying to use the Board of Election.

11    SENATOR RIVERA-O'REILLY: Okay Senator I think

12   you've made your point.

13    SENATOR HANSEN:  All the courts say it's the

14   Legislature including our legal counsel.

15    SENATOR RIVERA-O'REILLY: Okay you've made your

16   point Senator.  You've made your point. Thank you very much.

17   We are now going to allow for Senator-Elect Kevin Rodriquez

18   and his counsel Attorney Jackson to address the Body by

19   placing on the record any closing comments that they desire,

20   as they desire.

21    ATTORNEY JACKSON: If I may I'd like to speak at

22   this time and allow Senator-Elect Rodriquez to close the

23   session.

24    I'd like to thank the Legislature for allowing us

25   to have this opportunity to address the qualifications of

1   Senator-Elect Rodriquez to be a member of the 32nd

2   Legislature.  We submit that the testimony and evidence

3   submitted here today is overwhelming. There's no question

4   about it.  He clearly met the qualifications including the

5   residency qualification as set forth in the Revised Organic

6   Act Section 6B.

7          He lived here.  He voted here.  He worked here.

8   He paid his taxes here.  He registered his children in

9   school here.  He filed a custody action here. Even the

10  persons who submit that he is not a bona fide resident of

11  the Virgin Islands during the applicable time submitted

12  testimony to prove that he was here.  There's no question

13  about that.

14         The real question is what do we do with the

15  bankruptcy petition and the related lawsuit that was filed

16  in Tennessee during the applicable period of time.

17         The only court that has addressed this issue of

18  Senator-Elect Rodriquez' qualifications is the Superior

19  Court of the Virgin Islands -  Judge Mackay.  She dealt with

20  all these issues.  She dealt with the bankruptcy petition,

21  the related lawsuit and all of the evidence that was

22  submitted to show that Kevin Rodriquez met the requirements

23  of residency for the the Virgin Islands.  She dealt with all

24  of it.  And she ultimately ruled that the evidence was

25  overwhelming or she ruled that he met the qualifications of

1    residency here in the Virgin Islands.

2            We find ourselves grappling with the question of

3    judicial estoppel. I would submit that very few legislatures

4    ever even heard that term before it came up in this court

5    case. I would submit that very few lawyers even knew about

6    judicial estoppel. It's a doctrine that exist but it's not

7    used very often. It's a doctrine that's applicable binding

8    on the courts.  It's a doctrine that has not been used

9    within legislatures. I don't know that if it's been used at

10   all and if it's been used at all, it's been used very

11   sparingly.

12           The Legislature has other concerns other than the

13   hyper-technicalities of the law. That's what the courts are

14   for.  The Legislature has to consider other aspects beyond

15   just hyper-technicalities of the law.  That's not to say you

16   cannot consider it; you should consider it.  It is one

17   factor to be considered along with all the other factors

18   that go into addressing the question of residency.

19           But we submit the main issue before the Legislature

20   is the same issue that was before the Superior Court - the

21   only court that dealt directly with the qualifications of

22   Senator-Elect Kevin Rodriquez to be a member of the 32nd

23   Legislature.

24           The Supreme Court did not deal with those

25   qualifications directly.  They took a legal position as they

1  were obligated to do and had a right to do, to compare legal

2  documents filed in two separate matters, legal matters,

3  compared them and made a determination for legal purposes

4  that to the extent they seemed to be inconsistent to the

5  court, Kevin Rodriquez should not be able to say one thing

6  in one court system and then say another thing in another

7  legal setting.

8        We understand why they did it, but that's not the

9  factors, all the factors, that this Legislature should

10  consider. What we submit is consider the evidence that was

11  presented here today and the documents presented here today.

12  Consider fairness.  That is also a part of the Legislature's

13  duties and responsibilities.  Consider the four thousand

14  plus voters that voted for Kevin Rodriquez to become a

15  member of the 32nd Legislature. It is their will, the will

16  of the people, the voters that should prevail not the hyper-

17  technicalities of a legal doctrine that is very little used

18  and not binding on this Legislature.

19        We submit if you use those factors of fairness and

20  the will of the four thousand plus voters who voted for

21  Senator-Elect Kevin Rodriquez, we submit you have only one

22  choice and that is to give him a seat in the 32nd

23  Legislature to which he was elected. Thank you.

24        SENATOR RIVERA-O'REILLY: Point of inquiry -

25  Majority Leader?

1          SENATOR JAMES:  Thank you very Madam Chair.

2   Attorney Jackson good morning.

3          ATTORNEY JACKSON: Good night.

4          SENATOR JAMES: Well it's after 12:00.

5          ATTORNEY JACKSON: Oh excuse me.  Good morning.

6          SENATOR JAMES: I noticed that we acted as if there

7   wasn't a hearing in the Superior Court where Judge Mackay

8   stated that she couldn't address judicial estoppel because

9   your client took the case to the Federal Court.  You forget

10   that hearing?

11          ATTORNEY JACKSON:  No I didn't forget that hearing.

12   It was myself on behalf of Senator-Elect Rodriquez who

13   removed the case to the District Court.

14          SENATOR JAMES: And that hearing that was supposed

15   to be in the Superior Court was about what?

16          ATTORNEY JACKSON: It was about addressing a number

17   of issues.  Number one was jurisdiction. The other one was

18   whether or not at the convening of the 32nd Legislature

19   whether the Superior Court even had jurisdiction to continue

20   to make a determination once the 32nd Legislature came into

21   effect.

22          SENATOR JAMES:  It had nothing to do with the

23   Supreme Court remand to the Superior Court as it relates to

24   judicial estoppel?

25          ATTORNEY JACKSON:  Well that was the third issue

COMMITTEE OF THE WHOLE - Part 5 - June 27, 2017————69

1    they dealt with. But the court also gave the other issues

2    that had to be addressed as well.

3        SENATOR JAMES: I see that you just conveniently

4    left it out. The primary purpose of that hearing; I believe

5    it was on Wednesday January 11th, was to address what was

6    remanded back from the Supreme Court to the Superior Court.

7    And Judge Mackay based on what we read 'cause I wasn't

8    there. She stated well I can't deal with it now because

9    Senator Rodriquez -- Senator-Elect Rodriquez and his counsel

10   have taken the case over on the Federal side.  I think

11   that's what she said.

12       ATTORNEY JACKSON:  Yes I did. And we did that for a

13   very specific reason. The Revised Organic Act is a Federal

14   statute and it should be addressed, we felt, by a Federal

15   court as opposed to a territorial court.  And the court

16   agreed with us.

17       SENATOR JAMES:  And Judge Gomez at no point

18   addressed judicial estoppel.

19       ATTORNEY JACKSON:  I believe there might have been

20   something in the opinion where he -- I thought he said

21   something about a well written opinion, but he didn't rule

22   on it.

23       SENATOR JAMES:  At no point did he address judicial

24   estoppel. He spoke strictly about jurisdiction. I just want

25   to place that on the record. If I am incorrect, I stand

1    corrected. I thank you very much Madam Chair for the point

2    of inquiry.

3            SENATOR RIVERA-O'REILLY:  You are welcome.

4    Senator-Elect Kevin Rodriquez, you're recognized.

5            SENATOR-ELECT RODRIQUEZ:  Good morning again

6    Senators. I'd like to take this opportunity to thank Senate

7    President Myron Jackson and the members of the 32nd

8    Legislature to offer my testimony today on behalf of my

9    residency. I know there has been a lot said, but I just

10   wanted to clear up a few misinformation.

11           I believe one of the Senators talked about my

12   relationship with Ivy Moses in which we had a friendship.

13   Even prior to me coming to HOPE, I provided HR consultation

14   to HOPE. As a matter of fact there were one or two times

15   when you do free service you get a letter at the end of the

16   year where you can file with your taxes that would say you

17   provide x, y, z hours to allow you to get that tax break and

18   for which I did.

19           Now Ivy Moses was aware of my financial situation

20   because we are very good friends.  We talked about

21   everything.  We talked about her problems. We talked about

22   my problems. I gave her guidance on her problems and she

23   gave me guidance on mine.

24           In our discussion as it relates to my finances,

25   there was an opportunity.  She did say, you know what; I can

1    help you. You can move to the Virgin Islands and you can

2    work for me.  And forever I was grateful for that.

3         And I know we talked about why -- our problems

4    stemmed from even the beginning when I started. And I always

5    say and even employees of HOPE can say; one of the things

6    that I will always be grateful for and that's why I never

7    lashed out or really had a conversation about my concerns is

8    because I was forever grateful for the opportunity because I

9    was down and out. I was down and out.

10        In 2010 everything got crashed.  I lost my

11   business. I lost my marriage.  Everything just started to

12   propel, but she came at a time, a friend. She was a friend.

13   And she came at a time when I needed the assistance. So she

14   offered me the position.

15        When you talked about 1099.  A 1099 is not filled

16   out by an employee.  It's filled out by an employer. And if

17   in fact that I had a conversation in which I had two

18   witnesses who can attest that I in fact informed Ms. Moses

19   to change my address.  That should have been done. It was

20   Ms. Moses responsibility to change the address.  And now Ms.

21   Moses went to court and she held the document up and I

22   should have thought and probably my legal defense should

23   have brought to the court's attention a 1099 is not filled

24   out by an employee; it's filled out by employer.  We failed

25   to do that.

1   But I want to go one step further.  I came to work

2   at the Legislature and if I was living or residing in

3   Nashville, Tennessee, my Nashville Tennessee would have been

4   in my personnel documents at the Legislature of the Virgin

5   Islands.

6   I know Ms. Sarauw talked about a conversation at

7   Virgin Haven and that's in fact that's what happened. We did

8   have a conversation.  We talked about -- she showed me an

9   email, some anonymous email that was sent to her.  We even

10  took a picture.  We had a picture. I believe I still have it

11  in my phone. A few pictures.

12  I don't have any animosity against Ms. Sarauw.

13  However I believe then and now that Ms. Sarauw is not

14  forthcoming relative to the knowledge of the question of my

15  residency. Had Ms. Sarauw had won, Ms. Sarauw would not have

16  brought this forward.

17  Now there's a case. I want to bring a case for your

18  review or edification.  Daniel versus Board of Election.

19  That's a very good case. You cannot -- if you knowingly know

20  of a situation, refuse to bring it because you may think you

21  win and then you don't win and you want to bring it, I want

22  you to review that case because that is case law that

23  address that issue.

24  Ms. Moses also knew that I filed for custody of my

25  children because she allowed me to go to Tennessee. I flew

1  into Tennessee one day, went to the vital statistic office

2  because as a requirement to request custody, I have to prove

3  that I am the father so I needed original birth

4  certificates.  And my sister could attest because I do have

5  copies and they did not want copies.  They said well keep

6  this copy, but you have to come back with an original.  So

7  Ms. Moses gave me permission. I went to Tennessee. I flew

8  in. I got the birth certificate and I returned.   Then I

9  produced them to the court.

10       Every week and I wish Ms. Penn was here, but every

11  week I filled out a timesheet.  I wish I had my laptop -- at

12  HOPE Inc working from 8 to 5. I filled out a timesheet

13  signed by my supervisor, then given to the payroll person to

14  do -- to provide me with a check, biweekly.  It wasn't

15  biweekly; it was a monthly check. And then we went biweekly

16  because of the months it was tough to be without a check for

17  a whole month. So then we decided to do, I think it was

18  weekly. So I went in the same schedule as the regular

19  full-time employees.  I received all the benefits as a

20  full-time employee with the exception of insurance.

21       Ms. Moses talked about my lack of not fulfilling my

22  obligation. It is quite ironic because if you ask the

23  community, people thought that I was the CEO of HOPE because

24  I was the one that was out there promoting HOPE.  I was the

25  one when HOPE was failing in making fundraisers, I was the

1   one that brought some credibility to HOPE. And like I

2   mentioned to Ivy I said when we had our confrontation; no

3   one likes you. If it is wasn't for myself and Ms. Penn we

4   would not move forward and no one would contribute to this

5   organization because of your cantankerous and disrespectful

6   behavior.  We had that conversation and I hope she can

7   confirm that because that was the conversation I had with

8   Ms. Hope -- I mean with Ivy Moses.

9            SENATOR HANSEN:  Mr. President --

10           SENATOR JACKSON:  Let him finish.

11           SENATOR HANSEN:  May I be recognized?

12           SENATOR JACKSON:  After he is completed.

13           SENATOR-ELECT RODRIQUEZ: Ms. Moses also know about

14   my bankruptcy because we had a friendship and she know my

15   intricacies of my personal life.  And I know her intricacies

16   of her personal life.

17           Also with my taxes she knew. She knew.  And I want

18   to clarify with my taxes.  Yes I did file taxes in

19   Nashville, Tennessee; not Nashville Tennessee  in St. Thomas

20   Virgin Islands bearing my address, but I needed it for the

21   court.  And I was up there and that transaction was done and

22   then in 2013 -- I just wanted to say that yes I did file my

23   taxes in the Virgin Islands. I needed those taxes to be

24   given to the  bankruptcy attorney as a condition because

25   that is one of the things that they needed to file my taxes

1    in Nashville,  Tennessee. And so they had my 2013, '14 and

2    '15 taxes.

3           Now one of the things the methodology that Judge

4    Mackay used was the totality of the circumstance. And the

5    reason why she deem that I was a resident is when you look

6    at the circumstance, one action where there's overwhelming

7    indication that my intention living, working, paying my

8    taxes here, voting here overweigh one action and that's why

9    she indicated that I was a resident of the Virgin Islands.

10           I know this is a lot. And I know we've been down a

11    long road.  And many feelings have gotten hurt and many

12    families have gotten hurt.  But I say today to this Body

13    that Ms. Moses knew of my intricacies and therefore she

14    should have informed the Board of Election if she wanted to.

15    And she did not.  My bankruptcy was not an issue.  That

16    anonymous email transcended because even when you look at

17    the information from the Daily News it said -- from Ms.

18    Berry's information that Ivy Moses can provide 1099 which

19    she can produce and testify of.  So therefore there had to

20    have been a conversation to be had prior to us moving

21    forward with any case.

22           MS. MOSES:  For the record --

23           SENATOR JACKSON:  Ms. Moses?

24           MS. MOSES: I'm very happy that Mr. Rodriquez is

25    putting on the record how wonderful of a person Ivy Moses

1    is, after trying to slander Ivy Moses' name earlier.  One.

2    Number Two. Before, oh my gosh, I don't even know when, way

3    after the elections, was the first I ever had a conversation

4    with Ms. Berry.  Number Three.  I never sent anybody an

5    email about bankruptcies from Mr. Kevin Rodriquez. So I

6    would really appreciate it if he would stop trying to

7    slander my name in the Territory of the United States Virgin

8    Islands just to try to get ahead and get into the fifteenth

9    seat of the St. Thomas/St. John District.

10         SENATOR JACKSON:  Ms. Moses thank you very much.

11   The testifiers have provided their final words. I want to

12   thank all the testifiers that have come before us this

13   evening.  I know that it was short order for many of you and

14   the testimonies that you've provided.

15         Colleagues I want to thank all of you for the

16   process; that we made it through this process.  We did not

17   agree, but this is a deliberative Body.  And we will

18   continue our deliberations tomorrow. So this committee is in

19   recess until tomorrow.

20

21

22

23

24

25

77

## CERTIFICATE

I, VERNA TURNBULL-CARTY, Legislative Reporter do hereby certify that proceedings of the Regular Session (Committee of the Whole) - Part 5 held on June 27, 2017 at the Earle B. Ottley Legislative Hall, St. Thomas, U.S. Virgin Islands is a true and accurate transcription by me.

IN WITNESS WHEREOF, I have subscribed my hand this 7th, day of July, 2017.

_____

Verna Turnbull-Carty