THE DEMOCRATIC PARTY OF THE            )
VIRGIN ISLANDS, EDGAR PHILLIPS,        )
GLEN J. SMITH, LUIS MORALES,           )
KEVIN A. RODRIQUEZ,                    )
                                       )            Civil No. 2017-44
            Plaintiffs,                )
                                       )
            v.                         )
                                       )
THE ST. THOMAS—ST. JOHN BOARD OF       )
ELECTIONS, THE JOINT BOARD OF          )
ELECTIONS, SENATOR MYRON D.            )
JACKSON IN HIS CAPACITY AS             )
PRESIDENT OF THE 32ND                  )
LEGISLATURE, THE 32ND                  )
LEGISLATURE OF THE VIRGIN              )
ISLANDS, THE GOVERNMENT OF THE         )
U.S. VIRGIN ISLANDS,                   )
                                       )
            Defendants.                )
_____)

**APPEARANCES:**

**Daniel M. Press**
Chung & Press, P.C.
McLean, VA
    *For the Democratic Party of the Virgin Islands, Edgar
    Phillips, Glen J. Smith, Luis Morales, and Kevin A.
    Rodriquez,*

**Pedro K. Williams**
Law Office of Pedro K. Williams
St. Thomas, U.S.V.I.
    *For the Democratic Party of the Virgin Islands, Edgar
    Phillips, Glen J. Smith, Luis Morales, and Kevin A.
    Rodriquez,*

**Julita K. De Leon**
St. Thomas, U.S.V.I.
    *For the Virgin Islands Joint Board of Elections and the
    Board of  Elections St. Thomas & St. John,*

**Kye Walker**
Christiansted, U.S.V.I.
       *For 32nd Legislature of the Virgin Islands and Senator Myron D. Jackson in his capacity as President of the 32nd Legislature of the Virgin Islands,*

**Claude E. Walker, AG**
**Ariel Marie Smith-Francois, AAG**
**Carol Thomas-Jacobs, AAG**
**Sheena Conway, AAG**
V.I. Department of Justice
St. Thomas, U.S.V.I.
       *For the Government of the Virgin Islands.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court is the complaint of Kevin A. Rodriquez, Edgar Phillips, Glen J. Smith, Luis Morales, and the Democratic Party of the Virgin Islands. The Court, having considered the parties' various pleadings, witness testimony, exhibits, and the arguments of counsel, now enters Judgment pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I.    FACTUAL AND PROCEDURAL HISTORY

On January 25, 2016, Kevin A. Rodriquez filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee. In his bankruptcy petition, Rodriquez swore under penalty of perjury that he lived in Tennessee and had not lived in another state anytime during the preceding three years.

On November 8, 2016, the Virgin Islands held an election to choose senators to serve in the 32nd Legislature of the Virgin Islands. The District of St. Thomas-St. John was allotted seven seats to be filled by the top seven vote-getters. Among those running for the seats were Rodriquez and Janelle K. Sarauw ("Sarauw"). After the election, Rodriquez placed sixth while Sarauw placed eighth. The Board of Elections certified the election results on November 22, 2016.

On December 9, 2016, Sarauw filed a complaint in the Superior Court of the Virgin Islands alleging that Rodriquez was not qualified to serve in the Virgin Islands Legislature because he has not been "a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election." *See* 48 U.S.C. § 1572.

On January 4, 2017, the Superior Court held that Rodriquez was a bona fide resident of the Virgin Islands. Sarauw appealed. On January 8, 2017, the Virgin Islands Supreme Court held that Rodriquez was "bound to his prior representations" to the Bankruptcy Court for the Middle District of Tennessee under the doctrine of judicial estoppel. *Sarauw v. Fawkes*, No. CV 2017-0005, 2017 WL 77123, *12 (V.I. Jan. 8, 2017). As such, the Virgin Islands Supreme Court held that Rodriquez "cannot claim in this proceeding to have been a bona fide resident of the

Virgin Islands during the same time period." *Id.* The Virgin Islands Supreme Court vacated the Superior Court's January 4, 2017, opinion and order and remanded the case for further proceedings.

On January 10, 2017, Rodriquez, pursuant to 28 U.S.C. § 1441, removed Sarauw's complaint (the "Removed Action") to this Court. Also on January 10, 2017, Rodriquez filed a complaint in this Court (the "Federal Action"). Rodriquez sought, among other things, an injunction directing the 32nd Legislature to seat Rodriquez as a senator.

On February 7, 2017, the Court entered a memorandum opinion and order dismissing both the Removed Action and Rodriquez's Federal Action. Rodriquez appealed.

On February 7, 2017, the Governor of the Virgin Islands called for a special election to fill Rodriquez's seat in the Legislature. The special election was held on April 8, 2017. Sarauw received the highest number of votes. The results of the special election were not immediately certified by the Board of Elections. The 32nd Legislature also made no immediate move to seat Sarauw as a senator.

On June 9, 2017, the United States Court of Appeals for the Third Circuit affirmed this Court's opinion and order and dismissed Rodriquez's appeal.

On June 27 and 28, 2017, the 32nd Legislature held a hearing to determine whether to seat Rodriquez as a senator. At the conclusion of the hearing, the 32nd Legislature declined to give Rodriquez the oath of office and seat him as a senator.

On July 3, 2017, four of the plaintiffs in the instant matter--Edgar Phillips ("Phillips"), Glen J. Smith ("Smith"), Luis Morales ("Morales"), and the Democratic Party of the Virgin Islands--filed a complaint against the St. Thomas—St. John Board of Elections, the Joint Board of Elections, Senator Myron D. Jackson in his capacity as President of the 32nd Legislature, the 32nd Legislature of the Virgin Islands, and the Government of the Virgin Islands. Also on July 3, 2017, the plaintiffs filed a motion for a temporary restraining order and preliminary injunction. The same day, the Court denied the motion for a temporary restraining order. In its July 3, 2017, order, the Court noted that the plaintiffs had failed to comply with Federal Rule of Civil Procedure 65.

On July 7, 2017, the plaintiffs filed an amended complaint. In addition to the four original plaintiffs, the complaint added Rodriquez as a plaintiff. The amended complaint alleges that (1) the 32nd Legislature's June 27 and 28, 2017, hearing did not afford Rodriquez due process; (2) the 32nd Legislature excluded Rodriquez for a reason other than the standing qualifications

enumerated in the Revised Organic Act; (3) the Board of Elections had no authority to certify Sarauw as the winner of the special election; and (4) the 32nd Legislature violated 11 U.S.C. § 525 by considering his bankruptcy petition.

On July 7, 2017, the plaintiffs filed a second motion for a temporary restraining order and preliminary injunction. The same day, the Court scheduled a hearing on the motion for a temporary restraining order to commence later that day. At the July 7, 2017, hearing, the plaintiffs indicated that they were unprepared to present evidence or otherwise argue their motion for a temporary restraining order. Accordingly, the plaintiffs withdrew their motion for a temporary restraining order. Acknowledging the urgent nature of their claims and the plaintiffs' wish to be heard in an expeditious manner, the Court ordered that the motion for a preliminary injunction and a trial on the merits would be collapsed into a single hearing (the "consolidated hearing"). The Court scheduled the consolidated hearing to commence promptly at 2:30 P.M. on July 12, 2017. Subsequently, at Rodriquez's request, the Court rescheduled the hearing for July 19, 2017.

On July 10, 2017, the Board of Elections certified Sarauw as the winner of the April 8, 2017, special election. On July

14, 2017, Sarauw took the oath of office, and the 32nd

Legislature seated her as a senator.

At the July 19, 2017, hearing for the instant matter, the

plaintiffs voluntarily dismissed the Government of the Virgin

Islands, the St. Thomas—St. John Board of Elections, and the

Joint Board of Elections from this action under Federal Rule of

Civil Procedure 41(a)(1).

## II.   DISCUSSION

### A. 11 U.S.C. § 525 Claim

Section 525, title 11, ("Section 525") of the United States

Code provides, in relevant part:

> a governmental unit may not . . . deny employment
> to, terminate the employment of, or discriminate
> with respect to employment against, a person that is
> or has been a debtor under this title or a bankrupt
> or a debtor under the Bankruptcy Act . . . solely
> because such bankrupt or debtor is or has been a
> debtor under this title or a bankrupt or debtor under
> the Bankruptcy Act, has been insolvent before the
> commencement of the case under this title, or during
> the case but before the debtor is granted or denied
> a discharge, or has not paid a debt that is
> dischargeable in the case under this title or that
> was discharged under the Bankruptcy Act.

11 U.S.C. § 525(a). To prevail on a claim under this provision,

"[t]he plaintiff has the burden to prove a discriminatory

purpose." *Devon Enterprises, L.L.C. v. Arlington Indep. Sch.*

*Dist.*, 541 Fed. App'x 439, 442 (5th Cir. 2013). This is a high

bar. The plain language of Section 525 requires that a

plaintiff's involvement in bankruptcy proceedings be the "sole" reason for the adverse employment decision. *See* 11 U.S.C. § 525(a); *see also Devon Enterprises, L.L.C.*, 541 Fed. App'x at 442 ("To defend against a summary judgment, the plaintiff must produce some evidence that a decision was made and that the filing of a bankruptcy was the sole reason for the decision"); *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1269 (9th Cir. 1990) ("In order to maintain a cause of action under section 525(b), a plaintiff must show that one of the reasons for discharge enumerated in section 525(b) provided the *sole* reason for termination."). As such, Section 525 "does not extend so far as to prohibit examination of the factors surrounding the bankruptcy." *In re Exquisito Servs., Inc.*, 823 F.2d 151, 154 (5th Cir. 1987) (internal quotation marks omitted).

In declining to seat Rodriquez, the 32nd Legislature considered Rodriquez's petition for bankruptcy. The plaintiffs have offered no evidence, however, that the 32nd Legislature denied employment to Rodriquez "*solely because*" of his bankruptcy petition. *See* 11 U.S.C. § 525(a) (emphasis added); *see also Costantini v. Med. Bd. of California*, 34 F.3d 1071 (9th Cir. 1994) ("It was not raised by Costantini in the revocation proceedings and nothing in the administrative proceedings suggests that defendants instituted their license revocation

proceedings against Costantini on account of CMG's bankruptcy."). Rather, the petition was permissibly considered as evidence of Rodriquez's residency. Accordingly, the Court holds that the 32nd Legislature did not violate 11 U.S.C. § 525(a) in refusing to seat Rodriquez as a member.

## B. Rodriquez's Due Process Rights in a Senate Seat and the Revised Organic Act's Standing Qualifications

"[I]t is well established that the federal courts will not adjudicate political questions." *Powell v. McCormack*, 395 U.S. 486, 518 (1969). However, "[t]he political question doctrine does not deprive courts of jurisdiction." *Brown v. Hansen*, 973 F.2d 1118, 1121 (3d Cir. 1992). Rather, under the political question doctrine, courts refrain from adjudicating "political questions reserved for the executive or legislative branches." *Rodriquez v. 32nd Legislature of the Virgin Islands*, 859 F.3d 199, 206 (3d Cir. 2017). More specifically,

> [a]n issue presents a nonjusticiable political question when one of the following characteristics is "inextricable from the case":
> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for

> unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*N.L.R.B. v. New Vista Nursing & Rehab.*, 719 F.3d 203, 215 (3d Cir. 2013) (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)).

Generally, "the political question doctrine applies only to the federal courts' review of questions reserved for the federal political branches." *Rodriquez*, 859 F.3d at 206. Nevertheless, because the Virgin Islands' de facto constitution, the Revised Organic Act (the "ROA"), "'implicitly incorporates the principle of separation of powers into the law of the territory,'" the Third Circuit has held that the "the analysis embodied in the political question doctrine" should be "applied . . . to requests to review actions of the Virgin Islands Legislature." *Id.* (alterations in original omitted) (quoting *Kendall v. Russell*, 572 F.3d 126, 135 (3d Cir. 2009).

Section 6(g) of the ROA provides that "[t]he legislature shall be the sole judge of the elections and qualifications of its members." 48 U.S.C. § 1572(g). In *Rodriquez v. 32nd Legislature of the Virgin Islands*, 859 F.3d 199 (3d Cir. 2017), the Third Circuit held that this provision of the ROA constitutes "a 'textually demonstrable constitutional commitment' of power to the Legislature to determine the

qualifications of its members," which "prevents courts from interfering with the Virgin Islands Legislature's determination of the qualifications of its members, including whether they meet the residency requirement of § 6(b)." *Id.* Accordingly, after a body of the Virgin Islands Legislature convenes, "it alone ha[s] the authority to determine whether [an individual] possesses the qualifications to be a member and was thereby entitled to take the oath and be seated." *Id.*

In a footnote, the Third Circuit recognized that this commitment does not "immunize[] all of the Legislature's exclusion or expulsion decisions from judicial review." *Id.* at 206 n.5. Nevertheless, the Third Circuit cautioned, "a high bar must be met for a court to opine on such issues." *Id.* (citing *Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 248 (3d Cir. 1998); *Morgan v. United States*, 801 F.2d 445, 451 (D.C. Cir. 1986)).

The Third Circuit has previously discussed this "high bar" in the context of a sitting senator's exclusion from the Virgin Islands Legislature. In *Mapp v. Lawaetz*, 882 F.2d 49 (3d Cir. 1989), Kenneth Mapp ("Mapp") was expelled from the Legislature by a majority vote. *Id.* at 52. Mapp brought suit, arguing that his expulsion required a two-thirds vote and that, by expelling him with a simple majority vote, the legislature violated his

due process rights. *Id.* at 54 n.6. The Third Circuit observed that the ROA "does not have a provision which requires a two-thirds vote to remove." *Id.* In fact, the ROA included no "express procedural limitations relating to the exclusion of members from the Legislature." *Id.* Moreover, the ROA designated the Legislature "as the 'sole judge' of its member's qualifications." *Id.* (quoting 48 U.S.C. § 1572(g)). As a result, it was clear that "the framers of the Revised Organic Act intended to leave those procedures exclusively to the discretion of the Legislature." *Id.*

In *Mapp v. Lawaetz*, the Third Circuit acknowledged that courts were not "powerless to consider a removal said to be based on a member's lack of standing qualifications." *Id.* The Third Circuit noted that the exercise of that authority was limited to circumstances where a procedure "is a mere sham or fraud without any basis in fact." *Id.* Applying that standard in *Mapp v. Lawaetz*, the Third Circuit concluded that "the record show[ed] that Mapp's removal was based on evidence that he was ineligible for legislative office." *Id.* Thus, the *Mapp* court did not have to undertake its own inquiry as the Virgin Islands legislature's removal procedure was a valid evidence-based inquiry. *Id.*

On its face, the ROA includes no express procedural limitations with respect to exclusion from the Legislature. Applying *Mapp*'s reasoning to the procedures for excluding a senator-elect, it would appear that "the framers of the Revised Organic Act intended to leave those procedures exclusively to the discretion of the Legislature" as well. *See Mapp*, 882 F.2d at 54 n.6. Accordingly, the Court will determine whether Rodriquez's exclusion "was based on evidence that he was ineligible for legislative office." *See id.*

Even when an issue is committed to another branch, that issue is nonjusticiable only to the extent that the branch acts within the scope of the commitment. In *Powell v. McCormack*, 395 U.S. 486 (1969), Adam Clayton Powell, Jr., ("Powell") was a member of the House of Representatives during the 89th Congress. *Id.* at 490. During that term, an investigation of Powell uncovered evidence that Powell had misused funds during his service. *Id.* at 490-91. Though a report was issued concluding as much, no formal action was taken during that term. *Id.* at 490. Powell was subsequently elected to serve during the next term. *Id.* "When the 90th Congress met to organize," however, "Powell was asked to step aside while the oath was administered to the other members-elect." *Id.* A Select Committee was appointed "to determine Powell's eligibility" and Powell was prohibited from

taking his seat. *Id.* After several hearings and debate, a resolution was passed excluding Powell from the House. *Id.* at 491-93. Powell brought suit seeking injunctive relief preventing the enforcement of the resolution excluding him from office and a declaration that his exclusion was unconstitutional. *Id.* at 493-94.

Article I, section 5, of the United States Constitution provides that "[e]ach House shall be the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const., art. I, § 5, cl. 1. Article I, section 2, lists three requirements members of the House of Representatives must satisfy: "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen." U.S. Const., art. I, § 2, cl. 2. The Court held that these enumerated standing qualifications are exhaustive.[1] *Id.* at 547-48. "[A]t most," the Court explained, "Article I, section 5, is

---

[1] In addition to the requirements in Article I, section 3, the Court suggested that several other constitutional provisions could possibly be counted among the enumerated standing qualifications. *See id.* at 521 n. 41 (discussing Article I, section 3, clause 7; Article I, section 6, clause 2; section 3 of the Fourteenth Amendment; the Guarantee Clause of Article IV; and the oath requirement of Article VI, clause 3). The Court declined to "reach this question, however, since both sides agree[d] that Powell was not ineligible under any of these provisions." *Id.*

a 'textually demonstrable constitutional commitment' to Congress to judge only the qualifications expressly set forth in the Constitution." *Id.* at 548. Because the parties conceded that Powell was excluded for reasons other than failing to meet those qualifications, Congress had clearly exceeded the scope of any commitment of authority it had. *Id.* at 550. Thus, the matter was justiciable. *Id.*

In determining that the Constitutional standing qualifications were exhaustive, the Court extensively reviewed the pre-convention precedent, the convention debates, and the post-convention precedent. *See id.* at 521-47. These authorities supported the Court's conclusion. *See id.* Nevertheless, absent such clear support, the Court would "have been compelled to resolve any ambiguity in favor of a narrow construction of Congress' power to exclude members-elect." *Id.* at 547. As the Court explained:

> A fundamental principle of our representative democracy is, in Hamilton's words, 'that the people should choose whom they please to govern them.' 2 Elliot's Debates 257. As Madison pointed out at the Convention, this principle is undermined as much by limiting whom the people can select as by limiting the franchise itself. In apparent agreement with this basic philosophy, the Convention adopted his suggestion limiting the power to expel. To allow essentially that same power to be exercised under the guise of judging qualifications, would be to ignore Madison's warning, borne out in the Wilkes case and some of Congress' own post-Civil War

exclusion cases, against 'vesting an improper & dangerous power in the Legislature.' 2 Farrand 249.

*Id.* at 547–48.

Similar to the United States Constitution, the ROA enumerates the standing qualifications required for members of the Virgin Islands Legislature. Section 6(b) of the ROA, titled "Qualifications of members," provides:

> No person shall be eligible to be a member of the legislature who is not a citizen of the United States, who has not attained the age of twenty-one years, who is not a qualified voter in the Virgin Islands, who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election, or who has been convicted of a felony or of a crime involving moral turpitude and has not received a pardon restoring his civil rights. Federal employees and persons employed in the legislative, executive or judicial branches of the government of the Virgin Islands shall not be eligible for membership in the legislature.

48 U.S.C. § 1572(b). As discussed above, mirroring the United States Constitution, Section 6(g) of the ROA also provides that "[t]he legislature shall be the sole judge of the . . . qualifications of its members." 48 U.S.C. § 1572(g). Given the similarity of these respective provisions of the ROA and the United States Constitution, along with the Supreme Court's warning against "undermin[ing]" the right of "'the people [to] choose whom they please to govern them,'" *Powell*, 395 U.S. at

547, the Court is persuaded that the standing qualifications in the ROA are exhaustive.

As with the "mere sham or fraud" analysis, the Court believes the appropriate inquiry here is whether the 32nd Legislature's decision to exclude Rodriguez "was based on evidence that he was ineligible for legislative office" for failure to satisfy a standing qualification in Section 6(b) of the ROA. *See Mapp*, 882 F.2d at 54 n.6

In *Powell*, the House conceded that Powell was excluded for an extra-Constitutional reason. *See Powell*, 395 U.S. at 550. The 32nd Legislature has made no such concession. Thus, in making its determination, the Court will assess the kind and species of evidence that informed the basis for the legislature's exclusion of Rodriguez. The Court will also consider the proceedings generally, including the various utterances of the members of the legislature.

Rodriquez points to several statements made by individual legislators and argues that these statements show that several of the senators excluded Rodriguez for impermissible reasons. The Court is not persuaded that this is an appropriate inquiry. Individual senators have no power to judge the qualifications of other senators. Rather, "the *legislature*," as a distinct collective legal entity, is "the sole judge of the . . .

qualifications of its members." *See* 48 U.S.C. § 1572; *see also Rodriquez*, 859 F.3d at 206 (explaining that, "once the 32nd Legislature convened, *it alone* had authority to determine whether Rodriquez possessed the qualifications to be a member" (emphasis added)).

In this respect, these "cherry-picked" statements do little to illuminate the intent of the 32nd Legislature. *See OFC Comm Baseball v. Markell*, 579 F.3d 293, 302 n.5 (3d Cir. 2009) ("When we view [the legislative history and statements from legislators] in their entirety rather than focusing on 'cherry-picked' snippets, they offer no consistent insight into Congressional intent."). Instead, the Court must examine the proceedings in the 32nd Legislature in their entirety and in the appropriate context. *See id.*

Prior to the 32nd Legislature's exclusion of Rodriquez, Rodriquez was involved in extensive litigation in this Court, the Virgin Islands Superior Court, the Virgin Islands Supreme Court, and the Court of Appeals for the Third Circuit. See *Rodriquez*, 859 F.3d 199; *Sarauw v. Fawkes*, No. CV 2017-0005, 2017 WL 77123 (V.I. Jan. 8, 2017); *In re Rodriquez*, No. 2017-0003, 2017 WL 80181 (V.I. Jan. 4, 2017); *Fawkes v. Sarauw*, No. S.CT.CIV. 2016-0106, 2017 WL 36299 (V.I. Jan. 4, 2017); *Sarauw v. Rodriquez*, No. CV 2017-3, 2017 WL 510054 (D.V.I. Feb. 7,

2017); *Sarauw v. Fawkes*, No. ST-16-CV-734, 2016 WL 8730600 (V.I. Super. Dec. 29, 2016); *Sarauw v. Fawkes*, No. ST-16-CV-734, 2016 WL 7635518 (V.I. Super. Dec. 29, 2016). At each step of this litigation, the primary issue on the merits was Rodriquez's residency.

The Third Circuit affirmed this Court's dismissal of those matters, explaining that "[o]nly the 32nd Legislature may judge whether Rodriquez satisfies the requirements set forth in § 6(b) [of the ROA], including the residency requirement." *Rodriquez*, 859 F.3d at 206. Shortly thereafter, the 32nd Legislature scheduled a hearing on Rodriquez's eligibility. On June 20, 2017, the 32nd Legislature sent Rodriquez a letter indicating that a hearing would commence at 10:00 A.M. on June 27, 2017, to ""consider [his] credential and qualifications" as "set forth in section 6(b) . . . including, but not limited to whether [he] was a bona fide resident." ECF No. 25, Exh. 9.

On June 27, 2017, the 32nd Legislature convened "to judge the qualifications of Senator-elect Kevin A. Rodriquez to serve in the 32nd Legislature of the Virgin Islands" "[p]ursuant to Section 6(g) of the Revised Organic Act." ECF no. 27, Exh. 15-1 at 7:9-14. Reading from the June 20, 2017, letter to Rodriquez, the 32nd Legislature explained that it would be "judging whether [Rodriquez] meet[s] the qualifications set forth in Section 6(b)

of the Revised Organic Act." *Id.* at 9:18-20. In doing so, the 32nd Legislature would "consider all pertinent factors that deomonstrate whether [Rodriques] [is] qualified to be sworn in and seated, including but not limited to whether [he] [is] a bona fide resident of the Virgin Islands." *Id.* at 10:21-24.

Over the next two days, the 32nd Legislature heard arguments from various parties and testimony from several witnesses. The great bulk of the testimony and argument centered around Rodriquez's residency. The Court acknowledges that several senators discussed matters that do not appear directly relevant to Rodriquez's residency. Yet, for every "cherry-picked" statement Rodriquez identifies, the Court can identify several other statements indicating that the only issue before the 32nd Legislature was Rodriquez's residency. *See, e.g.*, ECF No. 27, Exh. 15-36 at 41:18-42:1 ("And I hearing a who heap of talk here today, and I want the public to know that Senator Rodriguez's criteria as it relates him being a U.S. citizen . . . is not an issue. Him being 21 years old is not an issue. Him being a qualified voter may[ be] an issue. Him being a bona fide resident is definetly an issue, and being convicted of a felony and a crime involving moral turpitude at this point is not an issue."); *id.* at 44:23-45:4 ("It is my understanding that the reason why we are here is to determine whether Mr. Rodriguez was

domiciled in the Virgin Islands at the time for which he ran and won for office. And so therefore, if he was domiciled here it will qualify him to be seated here as a member, and if he was not domiciled then he will not be able to take a seat as a member."); *id.* at 47:16-19 ("The question before me today is whether or not Kevin Rodriguez was a bona fide resident of the Virgin Islands at the time he filed his nomination papers.").

Viewing the proceedings in the 32nd Legislature as a whole, and against the backdrop of the extensive litigation around Rodriquez's residency that preceded those proceedings, the Court is satisfied that Rodriquez was excluded for failing to satisfy the residency requirement in Section 6(b) of the ROA. The Court is further satisfied that Rodriquez's exclusion "was based on evidence" that he failed to meet that requirement. *See Mapp*, 882 F.2d 54 n.6.

### III. CONCLUSION

For the reasons explained above, the Court will enter judgment in favor of the defendants on all counts. An appropriate judgment accompanies this memorandum opinion.

S\_____
**CURTIS V. GÓMEZ**
**District Judge**